IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00668-REB-MJW

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

      Plaintiff,

v.

ST. ANSELM EXPLORATION CO.,
MICHAEL A. ZAKROFF,
MARK S. PALMER,
ANNA M.R. WELLS, and
STEVEN S. ETKIND,

      Defendants.

_____

**BRIEF IN SUPPORT OF MOTION TO DISMISS**
_____

Defendants, St. Anselm Exploration Co., Michael A. Zakroff, Mark S. Palmer, and Anna M.R. Wells (collectively, the "St.Anselm Defendants"), through their attorneys, Birge & Minckley, P.C., submit this brief in support of their Motion to Dismiss.

## INTRODUCTION

St. Anselm Exploration Co. is a privately owned natural resources company which finances its exploration activities through the issuance of promissory notes to individuals.  The Company has been in existence for more than 20 years. The Company did not publish its financial statements or publicize its results of operations.   The Company's promissory notes do not trade on any market.  St. Anselm is an S-corporation under the terms of the Internal Revenue Code, meaning that its owners pay any income tax on the income made by the Company.

Defendants Anna Wells and Mark Palmer are the Company's geologists. Defendant Michael Zakroff is an officer of the Company.

The Company continues to operate its oil and gas and geothermal businesses. In 2010, it restructured its debt with 95% of its note holders and is current on its obligations under the terms of the restructured notes.

## ARGUMENT

The allegations of false statements in the Complaint are based upon several letters (and one email) allegedly sent to investors and one meeting of existing investors which, according to Plaintiff's allegations, included some prospective investors. The oral statements at the investor meeting are not alleged with sufficient particularity and are attributed to all defendants and therefore are not made with sufficient particularity. The written statements are either (1) clear statements of management's opinion about future events and therefore not false or material; (2) taken out of context and when read in context are not false or (3) inaccurate quotations of actual statements which if accurately quoted are not false.

The Complaint also fails to properly allege any material omissions in the statements alleged to have been made. The omissions section of the Complaint fails because (1) it is in part based upon opinions of management which are as a matter of law not material and do not give rise to a duty to disclose; (2) it is in part based upon statements about the projected economics of the Company's oil and gas operations which did not give rise to an obligation to disclose the entire financial condition of the Company; (3) it is in part based upon an inaccurate quotation of an actual statement and

(4) it alleges the falsity of certain statements about the Company's geothermal business

upon information and belief which is insufficient under Rule 9(b).

Finally, the Complaint fails to allege a "fraudulent scheme" liability.  Because of

these pleading deficiencies, the Complaint must be dismissed.

## STANDARDS OF REVIEW

### RULE 12(b)(6)

The Court is well aware of the applicable standard of review.  *Mishkin v. Zynex*

*Inc,* 2011 WL 1158715 (D. Colo. 2011). The Court need accept only the well-pleaded

allegations of fact as true while conclusory allegations, unsupported allegations "on

information and belief," and legal argument should not be accepted as true.  *County of*

*Santa Fe, New Mexico v. Public Service Company of New Mexico*, 311 F.3d 1031, 1034-

35 (10th Cir. 2002). A complaint must contain enough allegations of fact to state a claim

for relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  Specifically, "[f]actual allegations must be enough to raise a right to relief above

the speculative level, *id.*, 550 U.S. at 555, so that "[t]he allegations must be enough that,

if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for

relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).[1]  Determining

whether a complaint states a plausible claim for relief is a context specific task requiring

the court to draw on its judicial experience and common sense.  *South Cherry St. LLC v*

*Hennessee Group LLC,* 573 F. 3d 98, 110 (2d Cir. 2009).  In assessing compliance with

this standard, the court may consider statements or documents incorporated into the

---

[1] The complexity of federal antitrust claims is similar to the complexity of federal
securities fraud claims, making the *Twombly* articulation of the Rule 12(b)(6) standard
especially applicable to the instant Motion to Dismiss.

complaint by reference.  *ATSI Commc'ns, Inc. v Shaar Fund, Ltd.,* 493 F. 3d 87, 98 (2d Cir 2007).

A trial court is not bound to accept a plaintiff's characterization of a document referred to in the complaint as accurate without the court seeing the actual document or, at a minimum,  pertinent quotations from the document.  *County of Santa Fe*, 311 F.3d 1031, 1035 (10th Cir. 2002); *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002) ("the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity").  Consideration of such documents supplied by a defendant does not convert the Rule 12(b)(6) motion to a Rule 56 motion.  *Id.*

In this case, the Plaintiff relies upon several specific documents discussed at length in the Complaint, but does not attach them for the Court's independent review. The referenced documents are attached to this Brief so that the statements can be read in the context in which they were made and, in one case, to point out an inaccurate quotation.

## RULE 9(b)

Rule 9(b) requires averments of fraud to be pleaded with specificity.  "The courts have strictly enforced Rule 9(b) in claims under the securities law, requiring detailed statements of the specific conduct which allegedly violated the statutes in question." *Farlow,* 956 F. 2d at 988-89 (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990) (plaintiffs must plead "the who, what, when, where, and how:  the first paragraph of any newspaper story")).

## THE ALLEGED ORAL MISREPRESENTATIONS

The Complaint alleges that Defendants Zakroff, Palmer and Wells all attended a note holder meeting in December of 2008 where potential investors were present and gave presentations.  (¶ 65)  There are two allegations about what was said or disclosed at the meeting, neither of which is sufficient.

The Complaint alleges that "all of the defendants represented to investors and prospective investors that St. Anselm's business was successful and that its financial condition was sound.  (¶ 66) This alleged representation of "success" and soundness are so general and vague as to be immaterial as a matter of law.  See e.g. *San Leandro Emergency Medical Group Profit Sharing Plan v. Phillip Morris Cos.,* 75 F. 3d 801, 811 (2d Cir. 1996) [statement that company expects another year of strong growth not actionable] and *Sequel Capital LLC v. Rothman, et al,* 2003 WL 22757758 at 12 (N.D. Ill 2003) [statement that company "highly profitable" with great prospects" not actionable] The generality also suggests that there is no true evidence of any specific statements attributable to a specific defendant.  The Complaint also improperly lumps all three individuals together as if they made exactly the same statement at the same time to the same group of persons.

With respect to the "St. Anselm Exploration Company, Kansas Oil & Gas Project Economics," the Complaint only alleges that the document dealt with the Company's oil and gas business.  This, of course, is not surprising given the title of the document.  The Complaint fails to allege any statement in the document which is false.

## THE ALLEGED WRITTEN MATERIAL MISREPRESENTATIONS

The Complaint must allege with specificity the time, place and content of the alleged false or fraudulent representation.  *Arruda v. Sears, Roebuck & co.,* 310 F. 3d 13,

19 (1st Cir 2002).   In paragraph 86, the Plaintiff attempts to allege 11 separate

misrepresentations.  The Plaintiff fails to meet the requirements of Rules 12(b)(6) and

9(b) with respect to each allegation.

> 1.  St. Anselm's business was profitable (¶ 86a)

The Complaint is completely void of any reference to a specific statement by any

of the defendants that St. Anselm was profitable.  None of the "Activity Update Letters"

(¶ 68-76) [Exhibits B-D] or the "Note Holder Letters" (¶ 72-84) [Exhibits E-G] quoted in

the Complaint state that St. Anselm is or was profitable.[2]  Without allegations of fact that

a defendant actually made such a statement on a particular day to an investor, the

allegation is insufficient.

The allegation that any of the defendants made a false statement about the

profitability of St. Anselm is strictly a conclusion that the Court is not bound to accept as

a well pled fact in considering whether the Complaint complies with 9(b ).  *Fantini v.*

*Salem State College,*  557 F. 3d 22, 26 (1st Cir. 2009).  The fact that the documents

quoted in the Complaint do not support the generalized allegation in paragraph 86

demonstrates that the allegation is merely a legal conclusion.

> 2.  St. Anselm's business revenues were sufficient to pay its expenses and timely
>     service its debts. (¶ 86b)

This is another conclusory allegation in the Complaint which is unsupported by

any specific allegations.  There are no specific statements alleged in the Complaint that

any of the defendants represented that the Company's revenues were sufficient to pay

---

[2] Plaintiff may rely upon a cautionary statement in some of the Activity Letters that "While we are confident that the overall economics of the Kansas/Nebraska program will prove to be sound and profitable (generate sufficient cash to service debt and provide a Return on Investment for the St. Anselm shareholders), any extended period of slow drilling, whether due to bad weather or other factors, could adversely impact future cash flow."  This is strictly an opinion of management about a future event and not a statement of a past of present fact.

expenses and timely service its debt.  Plaintiff inaccurately characterizes the Activity

Update Letters as statements of historical fact that St. Anselm's revenues, profits and

cash are and would be sufficient to service debt and provide returns to shareholders.   The

three update letters (Exhibits B, C and D) are a combination of a description of the

growth in drilling in the Kansas/Nebraska program, and management's opinion, clearly

stated as such that the Kansas/Nebraska project is growing.  The quoted sentence that

"Our project economics remain very robust" is  pulled out of context.  When read in its

entirety (Exhibits B and C), it is clear that the reference is to the increased drilling

activity in Kansas and how costs of certain services have gone down.  The SEC has not

alleged that either costs of drilling did not go down or that the drilling activity did not

increase.

        The only identified statement that even mentions revenues and debt service is

again quoted out of context.  (Compare Complaint ¶ 71g with Exhibit D, February 2010

St. Anselm Exploration Company Activity Update.)  The actual statement as opposed to

the quotation merely states (i) management's *belief* that the Kansas/Nebraska program

has enough *equity* to support the company's debt and (ii) management's *belief*  that the

overall economics of the Kansas/Nebraska program will prove ( at some time in the

future) to be sound and profitable.  These statements are merely statements of

management's opinion that the value of the property (based upon management's opinion)

is more than the amount of debt and a forward looking opinion of management that the

Kansas/Nebraska project in the future will generate enough money to pay interest and

principal on the debt.  These types of opinions, as a matter of law, are not material and

therefore not actionable.  *Grossman v. Novell, Inc.*  120 F. 3d 1112, 1119 and 1120 (10th

Cir. 1997); *In re Midway Games, Inc. Sec. Litig.,* 332 F. Supp 2d 1152, 1164 (N.D. Ill 2004) and cases cited therein.  They are loosely optimistic statements that are clearly the opinion of management and no reasonable investor would find them material.  Earlier in the letter, management explains the basis of its opinion about valuation.

> St. Anselm values its current and potential inventory of production, #D seismic data and leasehold on an ongoing basis at approximately $60-75MM.
> That valuation is an internally generated opinion of management and has not been certified by an external third party.  That certification only takes place when taken to market; therefore there is no way to certify (sic) on an ongoing basis.
> (Exhibit D page 029607)

The statement about the Kansas/Nebraska project ultimately being "sound and profitable" is also clearly an opinion of management regarding the possible future economic performance of the project not the past historical performance of the *company*. Taken in context, the writer is telling the recipient that St. Anselm is going to continue to finance its participation in the project through debt financing and, although management believes that the project will eventually generate enough cash to service debt and provide a return to the shareholders, it is not at that point yet and there are many things that could happen that could result in the project not achieving that goal.  In addition to the qualifications stated in the letter, each investor received a written disclosure stating that management's opinions were forward looking and that the officers of the Company don't know if the expectations will prove to be correct.[3]  These statements, made in the context of the additional qualifying language, are not material under the "bespeaks caution" doctrine.  *Grosman* at 1120  All of the Plaintiff's claims asserted in paragraph 86b are

---

[3] As part of the entire package of investing in St. Anselm notes, the investor received a written disclosure acknowledging that statements of opinion of management were forward looking and that the officers of the Company don't know if the expectations will prove to be correct.  The investors were also told "forward looking statements are subject to risks and uncertainties and actual results may differ materially from what is stated, projected or implied by these forward looking statements. (Exhibit A pages 002491 -2)

immaterial as a matter of law and must be dismissed at this stage of the proceedings.

*Shaw v. Digital Equipment Corp., et al,* 82 F. 3d 1194, 1217 (1st Cir. 1996).

> 3. St. Anselm's oil and gas activities produced sufficient revenue to pay St.
>    Anselm's expenses and timely service all of its debt. (¶ 86c)

For the same reasons stated above, the Complaint fails to allege an actual false

representation of a past or present fact.  The statements are merely statements of opinion

and the Plaintiff does not challenge the reasonableness of those opinions.

> 4. In some investor communications St. Anselm represented that its business
>    consisted entirely or primarily of oil and gas exploration and production when
>    in  fact St. Anselm was investing heavily in geothermal activities as well.  (¶
>    86 d)

The Complaint does not identify any specific statement that St. Anselm was only

involved in the oil and gas business. None of the cited communications contain any such

statement.

Similarly, the Complaint does not identify any communications that state that oil

and gas is the primary business of the company.  The cited communications simply

describe the oil and gas business until approximately March of 2009 when the Company

describes its geothermal activity.  These are not false statements, especially given the

consistent disclosure in the subscription agreements that the Company can use the money

for any purpose that its board determines.

> 5. St. Anselm planned to use the proceeds of promissory note sales primarily to
>    expand its operations, when in fact it planned to use the proceeds to pay
>    interest and principal on existing promissory notes (¶ 86e)

Plaintiff apparently relies upon two Note Holder Letters for the basis of this

conclusion: the March 2009 and the June 22, 2009 letters.  Read in the context of the

letters, there is no statement that the primary use of the note proceeds will be expansion

of the Company's operations.  Both letters are directed to existing note holders who have already loaned money to the Company.  In other words, the proceeds have already been spent and the Company is just offering to renew and extend the obligation at a higher interest rate.

> For us to maximize the value of these assets, we need to spend the next couple of years drilling and developing our identified resource areas.  To help us reach our goal, we are offering more attractive terms on your *present notes* with us and on your *renewals of existing notes*. (emphasis added)
> (Exhibit F page 029599)

Rather than telling new investors that the company is going to use their money to expand, this statement is telling the existing note holders that the Company needs to hold on to their money longer and is willing to pay them a higher rate of interest to do so.

The June 22, 2009 letter has a similar but not identical statement to existing note holders offering to pay a higher interest rate on existing notes (money already spent).  However, the letter also states that the offer is made for all new funds.  Still, when viewed in the context of the letter, there is no statement that new proceeds will be used to expand operations.  The letter merely states that the activities are capital intensive and that the Company is projecting rates of return that are high enough to justify the cost of the money.  The SEC has not alleged that the projections are not reasonable or that they were made in bad faith.[4]

  6.  <u>Investment risks with St. Anselm were the disclosed risks associated with purchasing St. Anselm's notes not the undisclosed risks ( ¶ 86f)</u>

This claim is merely an omissions claim recast as a false statement claim.  Plaintiff cannot point to a single statement in which the defendants represented that the only risk of investing with St. Anselm was the risk typically associated with the oil and

gas business.  The defendants did properly qualify their opinion about the ultimate

profitability of the Kansas/Nebraksa project by pointing out the future events over which

defendants had no control.  See Exhibit D page 029608).  This, however, cannot be

twisted into an affirmative statement that the investment is only subject to the risks of the

oil and gas business.

     7.   Interest bonus offered to invest in geothermal projects when in fact St.
           Anselm needed the money to pay interest and principal (¶ 86g )

This allegation is substantively no different than the allegations in paragraph 86e

except that it adds the reason the element of the interest bonus.  Both paragraphs allege

that the Company stated that it was going to use the proceeds of notes for expansion

when in fact it intended to use it for some other reason.  As set forth above, the actual

statements are to the effect that the recipients money has already been spent and the

company is offering a bonus to renew or extend the note.  See item 5 above.

     8.   St. Anselm's debt remained constant when in fact its debt had grown (¶ 86h )

This allegation springs from an inaccurate and incomplete quotation from a letter

dated June 22, 2009.  The actual quotation in complete context is as follows:

> About half of the capital we raise comes from people privately and about half
> from self-directed IRA, 401k and SEP accounts.  Our total debt has remained
> *consistent* over the last year. (emphasis added)
> (Exhibit G, Page 029602)

Viewed in the context of the paragraph, the statement does not represent that the

amount of debt has been *constant* as alleged by the Plaintiff but rather that the total debt

has remained consistent with the description from the previous sentence: 50% from

people privately and 50% from retirement accounts.

     9.   St. Anselm could afford to pay the interest rates it was offering (¶ 86i)

This allegation is apparently based upon an email sent by Mr. Zakroff on February 18, 2010. (The entire email exchange is attached as Exhibit H.) An email authored by one defendant is insufficient to base a claim for a false statement on persons who were not authors, and there is no evidence that they participated in the issuance of the statement. These claims as to Defendants Palmer and Wells must be dismissed.

Even the allegations as to Defendant Zakroff are insufficient. First and foremost, the Complaint does not allege that the email was sent in connection with the purchase or sale of a security. The Complaint uses the term "investor" but it does not state whether those persons had already invested or were going to invest after the email. An email sent to persons already invested is insufficient to state a claim under 15 U.S.C. ¶ 77q(a) or 15 U.S.C. ¶ 78j(b) because both sections require that the false statement be made "in the offer or sale of securities," 15 U.S.C. ¶ 77q(a)(1),(2) and (3), or "in connection with the purchase or sale of a security," 15 U.S.C. ¶ 78 j(b).[5]

The five words quoted in paragraph 78, "St. Anselm can afford the [interest] rates," are extracted from a much longer email sent to an existing investor who posed a question about the overall economy. After a lengthy discussion of the credit crisis, the European debt crisis, healthcare and World War II, Mr. Zakroff makes the following statement:

> We are not Exxon, nor even Apache. We are paying what the private independent oil industry pays for mezzanine capital or private equity. But, as can be seen from my other email, St. Anselm can afford the rates. We would never get low cost capital in any event. So the delta between what we pay and the banks is about 8%.

> (Exhibit H page 030379)

---

[5] The email address of the "investor" has been redacted to protect that person's privacy. However, based upon a review of the pertinent files, the recipient of the email had invested long before the email was sent.

Mr. Zakroff is making reference to the higher rate of interest paid by St. Anselm and how that rate of interest relates to the projected economics in the Kansas/Nebraska project.  See item 11

10.  Wells' and Palmer's personal guarantees made the investment less risky when in fact they were of little or no value (86j)

The only alleged statement about the personal guarantees does not state that the personal guarantees made the investment less risky.  In fact, the quoted statement from the Activity Update Letter states just the opposite.  The statement makes reference to the fact that the use of private debt financing is not without risk and that the risk is reflected in a high interest rate and the personal guarantees.  Far from giving an assurance that the investment was less risky, the quoted statement emphasizes that the interest rate and the guarantees reflect the high risk of the investment.

11.  St. Anselm's promissory notes were a safe investment (¶ 86k)

This allegation is apparently based upon the same email discussed regarding paragraph 86i of the Complaint.  The arguments advanced above that Defendants Wells and Palmer cannot be responsible for the statements and that the statements do not come within 15 U.S.C. ¶ 77q(a) or 15 U.S.C. ¶ 78j(b) are equally applicable.

Equally as important is the selective nature of the quotation.  The quoted section of the email leaves out some very important words and is taken completely out of context. Compare ¶ 78 with Exhibit H page 030384.

The entire email demonstrates that Mr. Zakroff is not talking about the risk involved in the promissory note but rather the drilling risk in the Company's Kansas/Nebraska program.  He provides various statistics regarding the historical performance of the Kansas/ Nebraska program and makes no statement about the overall

risk of investing in the Company.  In fact, as pointed out in the discussion regarding paragraph 86i, Mr. Zakroff emphasized that the Company was small and paid higher rates than large companies and about 8% more than banks paid.

The other section of the email is also limited to the economics of the Kansas/Nebraska program in the context of proposed changes to the tax laws that might restrict the ability of exploration firms to expense certain non cash costs.  Mr. Zakroff is merely stating that the future impact of the proposed change in the law should not impact the Kansas/Nebraska program because the program is economic without the benefit of existing tax laws.  This statement is not an assurance of low risk when viewed in context; it is merely a statement of what might happen if the tax laws were to change.

## THE ALLEGED FAILURES TO DISCLOSE

St. Anselm is not a publicly traded company and therefore is not subject to all of the various specific rules that apply to public companies.  The notes in question were all sold without registration with the Securities and Exchange Commission and were all sold to individuals who certified, in writing, that they were accredited investors and "had sufficient experience in financial matters and prior investments to evaluate the potential benefits and the risks of investing in the company."

Failure to disclose information is only a violation of the securities laws if there is a duty to disclose that information.  The duty to disclose must come from a statute or a fiduciary relationship or some similar relationship of trust and confidence.  *Windon Third Oil and Gas v Federal Deposit Inc.,* 805 F. 2d 342, 347 (10th Cir. 1986) citing *Chiarella v. United States* 445 U.S. U.S. 222, 228,231 n. 14 (1980).

As a private company, St. Anselm was not subject to a statute or regulation that required it to disclose its financial statements or financial condition.  The investors were merely creditors of St. Anselm and St. Anselm owed them no fiduciary duty to disclose any particular type of information.  Therefore, a duty to disclose arises in this context if the company voluntarily makes a statement to an investor and only if the voluntary statement is material.  *In re K-Tel Int'l Inc. Sec. Litig.,* 300 F.3d 881, 898 (8th Cir 2002); *In re Crocs, Inc. Securities Litigation* _____F. Supp.2d _____, 2011 WL 782485 (D. Colo. 2011)  Thus, the analysis of the alleged omissions must proceed in the context of the voluntary statements alleged to have been made in the complaint.  The Plaintiff must plead sufficient facts which, if true, would make the actual voluntary statements "material" and inaccurate because of the alleged true facts which were not disclosed.  If the voluntary statements are merely corporate optimism, typical forward looking statements or generalized statements of optimism not capable of objective verification, they are not material as a matter of law. *Grossman v Novell, Inc.* 120 F. 3d 1112, 1119 (10th Cir 1997).  Courts "have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace-loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *In re Ford Motor Co. Sec. Litig.,* 381 F. 3d 563, 570-71 (6th Cir 2004).  Applying these standards to the Complaint, the Plaintiff has failed to allege any material failures to disclose.

    1.  <u>St. Anselm's "true" financial condition (¶ 87a)</u>

There are no voluntary statements alleged in the Complaint that are material to the financial condition of the Company that would give rise to a duty to disclose the so-called true financial condition of the Company. Many of the quoted statements are clearly the opinions of management regarding the future performance of the Kansas/Nebraska project or the details of the Company's economic model for the Kansas/Nebraska project. See paragraphs 71a; 71b; 71c; 71d and 71g. These are not statements that require a disclosure of the Company's financial condition in order to make the statements not misleading.

The only statement alleged in the Complaint that deals in any way with the financial condition of the Company is contained in paragraph 76. As set forth above, this is a misquotation of the sentence. Out of context and using the erroneous quotation, the statement appears to suggest that St. Anselm did not increase its debt during a time period in which it is alleged that it did increase its debt. However, the actual statement is a simple description of the composition of the debt between private parties and retirement accounts. Such a statement is not material or misleading due to a failure to disclose the total amount of debt issued by the Company.

    2.    <u>St. Anselm's dependence on the proceeds of new promissory note sales to service its debt (¶ 87b)</u>

There are no affirmative statements cited that would require a disclosure that the proceeds of new debt would be used to service existing debt. Each investor was provided with a subscription agreement (Complaint ¶ 30-31) which provided that the proceeds of the note sale could be use in any way that the board of the Company deemed important. (Exhibit A page 02491). Given this initial disclosure to all investors, the alleged use of proceeds to pay interest is not material

3. <u>The manner in which St. Anselm actually planned to use the proceeds of sale of promissory notes (¶ 87c)</u>

The disclosures in the subscription agreement (Exhibit A) made very clear that the investors' money could be used for any purpose that the board of directors determined. This broad authorization included using the note proceeds for payment of interest and principal on existing debt, shareholder distributions and any type of exploration activity including but not limited to geothermal activity.

4. <u>The true risks associated with investing in St. Anselm's promissory notes (¶ 87d)</u>

The Complaint fails to cite any affirmative factual statement which would require disclosure of the "true risks" associated with investing in the notes.   Each investor had access to information that would allow them to evaluate those risks for themselves.

5. <u>The magnitude of St. Anselm's distributions to shareholders( ¶ 87e)</u>

Plaintiff cites no statement about the compensation of management or its magnitude.  There is no voluntary statement concerning the amount of compensation that might trigger a duty to disclose the amount of the compensation.  In addition, each investor signed a subscription document which contained a very specific disclosure that loan proceeds could be used to pay distributions to owners as well as any other purpose deemed appropriate by the board of the Company.

6. <u>The true value of Wells' and Palmer's personal guarantee ( ¶ 87f)</u>

The personal guarantees and the high interest rate offered by ST. Anselm are used together to emphasize the point that the use of private debt financing is not without risk. No statement is made that there is a value of the guarantees or that the presence of the guaranteed decreases the risk because of their value.

**<u>THE FAILURE TO ALLEGE SCHEME LIABILITY</u>**

These defendants incorporate the arguments and authorities cited by Defendant Etkind on this topic.

## THE FAILURE TO PLEAD FACTS RELATING TO THE GEOTHERMAL BUSINESS

The Complaint argues that many of the statements about the business of the Company are false or misleading because they fail to disclose the "true status" of the geothermal business. (Complaint ¶ 67, 71e, 71f ). However, the only allegations about the state of the geothermal business are made upon information and belief. (Complaint ¶ 20, 21 and 22). Such allegations are insufficient to meet the requirements of rule 9(b).

## CONCLUSION

The Complaint's conclusory allegations do not meet the requirements of Rule 12(b)(6) and Rule 9(b). The specific oral and written communications alleged in the Complaint are either not material as opinion of management or forward looking statements, quotations taken out of context or inaccurate quotations. The Complaint as to Defendants St. Anselm, Zakroff, Palmer and Wells must be dismissed.

WHEREFORE, the St. Anselm Defendants request that Plaintiff's Complaint be dismissed with prejudice as to Defendants St. Anselm, Zakroff, Palmer and Wells, and that they be awarded their attorneys' fees and costs.

DATED this 31st day of May, 2011.

Respectfully submitted,

BIRGE & MINCKLEY, P.C.


s/ Thomas D. Birge
Thomas D. Birge
Carla B. Minckley
9055 E. Mineral Circle, Suite 110
Centennial, CO  80112
(303) 860-7100

tbirge@birgeminckley.com

ATTORNEYS FOR THE
ST. ANSELM DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 31st day of May, 2011, a true and correct copy of the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS was served via CM/ECF, addressed to the following:

Nancy J. Gegenheimer
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202-2656
gegenheimern.@sec.gov


David A. Zisser, Esq.
Davis, Graham & Stubbs, LLP
1550 17th Street, Suite 500
Denver, CO 80202
david.zisser@dgslaw.com




s/ Patricia A. Cole_____
Patricia A. Cole