# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00668-REB-MJW

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

     Plaintiff,

v.

ST. ANSELM EXPLORATION CO.,
MICHAEL A. ZAKROFF,
MARK S. PALMER,
ANNA M.R. WELLS, and
STEVEN S. ETKIND,

     Defendants.

_____

## ST. ANSELM DEFENDANTS' MOTION TO DISMISS COMPLAINT
_____

Defendants, St. Anselm Exploration Co., Michael A. Zakroff, Mark S. Palmer, and Anna M.R. Wells (collectively, the "St.Anselm Defendants"), through their attorneys, Birge & Minckley, P.C., move to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

## INTRODUCTION

St. Anselm Exploration Co. is a privately owned natural resources company which finances its exploration activities through the issuance of promissory notes to individuals.  The Company has been in existence for more than 20 years. The Company did not publish its financial statements or publicize its results of operations.

Defendants Anna Wells and Mark Palmer are the Company's geologists. Defendant Michael Zakroff is an officer of the Company.   The Company

1

continues to operate its oil and gas and geothermal businesses.   In 2010, it restructured its debt with 95% of its note holders and is current on its obligations under the terms of the restructured notes.

## ARGUMENT

The allegations of false statements in the Complaint are based upon several letters (and one email) allegedly sent to investors and one meeting of existing investors which, according to Plaintiff's allegations, included some prospective investors.  The oral statements at the investor meeting are not alleged with sufficient particularity and are attributed to all defendants and therefore are not made with sufficient particularity.  The written statements are either (1) clear statements of management's opinion about future events and therefore not false or material; (2) taken out of context and when read in context are not false or (3) inaccurate quotations of actual statements which if accurately quoted are not false.

The Complaint also fails to properly allege any material omissions in the statements alleged to have been made.  The omissions section of the Complaint fails because (1) it is in part based upon opinions of management which are as a matter of law not material and do not give rise to a duty to disclose; (2) it is in part based upon statements about the projected economics of the Company's oil and gas operations which did not give rise to an obligation to disclose the entire financial condition of the Company; (3) it is in part based upon an inaccurate quotation of an actual statement and (4) it alleges the falsity of certain statements

about the Company's geothermal business upon information and belief which is insufficient under Rule 9(b).

Finally, the Complaint fails to allege a "fraudulent scheme" liability. Because of these pleading deficiencies, the Complaint must be dismissed.

## STANDARDS OF REVIEW

### RULE 12(b)(6)

The Court is well aware of the applicable standard of review. *Mishkin v. Zynex Inc,* 2011 WL 1158715 (D. Colo. 2011). The Court need accept only the well-pleaded allegations of fact as true while conclusory allegations, unsupported allegations "on information and belief," and legal argument should not be accepted as true. *County of Santa Fe, New Mexico v. Public Service Company of New Mexico*, 311 F.3d 1031, 1034-35 (10th Cir. 2002). A complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In assessing compliance with this standard, the court may consider statements or documents incorporated into the complaint by reference. *ATSI Commc'ns, Inc. v Shaar Fund, Ltd.,* 493 F. 3d 87, 98 (2d Cir 2007). The documents referenced in the Complaint are attached.

### RULE 9(b)

Rule 9(b) requires averments of fraud to be pleaded with specificity. *Farlow,* 956 F. 2d at 988-89 (citing *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990) (plaintiffs must plead "the who, what, when, where, and how:  the first paragraph of any newspaper story")).

## THE ALLEGED ORAL MISREPRESENTATIONS

The Complaint alleges that "all of the defendants represented to investors and prospective investors that St. Anselm's business was successful and that its financial condition was sound.  (¶ 66) This alleged representation of "success" and soundness are so general and vague as to be immaterial as a matter of law. See e.g. *San Leandro Emergency Medical Group Profit Sharing Plan v. Phillip Morris Cos.,* 75 F. 3d 801, 811 (2d Cir. 1996) [statement that company expects another year of strong growth not actionable] and *Sequel Capital LLC v. Rothman, et al,* 2003 WL 22757758 at 12 (N.D. Ill 2003) [statement that company "highly profitable" with great prospects" not actionable].  The Complaint also improperly lumps all three individuals together as if they made exactly the same statement at the same time to the same group of persons.

With respect to the "St. Anselm Exploration Company, Kansas Oil & Gas Project Economics," the Complaint only alleges that the document dealt with the Company's oil and gas business.  This, of course, is not surprising, let alone fraudulent, given the title of the document.

## THE ALLEGED WRITTEN MATERIAL MISREPRESENTATIONS

The Complaint must allege with specificity the time, place and content of the alleged false or fraudulent representation.  *Arruda v. Sears, Roebuck & co.,* 310 F. 3d 13, 19 (1st Cir 2002).   In paragraph 86, the Plaintiff attempts to allege 11 separate misrepresentations.  The Plaintiff fails to meet the requirements of Rules 12(b)(6) and 9(b) with respect to each allegation.

1. <u>St. Anselm's business was profitable (¶ 86a)</u>

The Complaint is completely void of any reference to a specific statement by any of the defendants that St. Anselm was profitable.  None of the "Activity Update Letters" (¶ 68-76) [Exhibits B-D] or the "Note Holder Letters" (¶ 72-84) [Exhibits E-G] quoted in the Complaint state that St. Anselm is or was profitable.

The allegation that any of the defendants made a false statement about the profitability of St. Anselm is strictly a conclusion that the Court is not bound to accept.  *Fantini v. Salem State College,* 557 F. 3d 22, 26 (1st Cir. 2009).

> 2. <u>St. Anselm's business revenues were sufficient to pay its expenses and timely service its debts. (¶ 86b)</u>

There are no specific statements alleged in the Complaint that any of the defendants represented that the Company's revenues were sufficient to pay expenses and timely service its debt.  Plaintiff inaccurately characterizes the Activity Update Letters as statements of historical fact that St. Anselm's revenues, profits and cash are and would be sufficient to service debt and provide returns to shareholders.   The three update letters (Exhibits B, C and D) are a combination of a description of the growth in drilling in the Kansas/Nebraska program, and management's opinion, clearly stated as such that the Kansas/Nebraska project is growing.  The quoted sentence that "Our project economics remain very robust" is  pulled out of context.  When read in its entirety (Exhibits B and C), it is clear that the reference is to the increased drilling activity in Kansas and how costs of certain services have gone down.  The SEC has not alleged that either costs of drilling did not go down or that the drilling activity did not increase.

The only identified statement that even mentions revenues and debt service constitutes an opinion about future events. (Compare Complaint ¶ 71g with Exhibit D, February 2010 St. Anselm Exploration Company Activity Update.) The actual document states (i) management's *belief* that the Kansas/Nebraska program has enough *equity* to support the company's debt and (ii) management's *belief* that the overall economics of the Kansas/Nebraska program will prove ( at some time in the future) to be sound and profitable. These statements are merely statements of opinion that the value of the property is more than the amount of debt and a forward looking opinion of management that the Kansas/Nebraska project in the future will generate enough money to pay interest and principal on the debt.  These are non material opinions. *Grossman v. Novell, Inc.* 120 F. 3d 1112, 1119 and 1120 (10th Cir. 1997); *In re Midway Games, Inc. Sec. Litig.,* 332 F. Supp 2d 1152, 1164 (N.D. Ill 2004) and cases cited therein.  Earlier in the letter, management explains the basis of its opinion about valuation.

> St. Anselm values its current and potential inventory of production, 3D seismic data and leasehold on an ongoing basis at approximately $60-75MM.  That valuation is an internally generated opinion of management and has not been certified by an external third party.  That certification only takes place when taken to market; therefore there is no way to certify (sic) on an ongoing basis.  (Exhibit D page 029607)

Taken in context, the writer is telling the recipient that St. Anselm is going to continue to finance its participation in the project through debt financing and, although management believes that the project will eventually generate enough cash to service debt and provide a return to the shareholders, it is not at that point yet and there are many things that could happen that could result in the

6

project not achieving that goal.  Investors were told in writing that management

did not know if its expectations would prove to be correct.[1]  These statements,

made in the context of the additional qualifying language, are not material under

the "bespeaks caution" doctrine.  *Grosman* at 1120  All of the Plaintiff's claims

asserted in paragraph 86b are immaterial as a matter of law and must be

dismissed.  *Shaw v. Digital Equipment Corp., et al,* 82 F. 3d 1194, 1217 (1st Cir.

1996).

>   3.  St. Anselm's oil and gas activities produced sufficient revenue to pay
>       St. Anselm's expenses and timely service all of its debt. (¶ 86c)

For the same reasons stated above, the Complaint fails to allege an actual

false representation of a past or present fact.

>   4.  In some investor communications St. Anselm represented that its
>       business consisted entirely or primarily of oil and gas exploration and
>       production when in fact St. Anselm was investing heavily in geothermal
>       activities as well.  (¶ 86 d)

The Complaint does not identify any specific statement that St. Anselm

was entirely or primarily in the oil and gas business.  The cited communications

describe the oil and gas business until approximately March of 2009 when the

Company describes its geothermal activity.  These are not false statements,

especially given the consistent disclosure in the subscription agreements that the

Company can use the money for any purpose that its board determines.

>   5.  St. Anselm planned to use the proceeds of promissory note sales
>       primarily to expand its operations, when in fact it planned to use the

---

[1] As part of the entire package of investing in St. Anselm notes, the investor received a written disclosure acknowledging that statements of opinion of management were forward looking and that the officers of the Company don't know if the expectations will prove to be correct.  The investors were also told "forward looking statements are subject to risks and uncertainties and actual results may differ materially from what is stated, projected or implied by these forward looking statements. (Exhibit A pages 002491 -2)

<u>proceeds to pay interest and principal on existing promissory notes (¶ 86e)</u>

Plaintiff apparently relies upon two Note Holder Letters for the basis of this conclusion: the March 2009 and the June 22, 2009 letters.  Both letters are directed to existing note holders who have already loaned money to the Company.  In other words, the proceeds have already been spent and the Company is just offering to renew and extend the obligation at a higher interest rate.

> For us to maximize the value of these assets, we need to spend the next couple of years drilling and developing our identified resource areas.  To help us reach our goal, we are offering more attractive terms on your *present notes* with us and on your *renewals of existing notes*. (emphasis added) (Exhibit F page 029599)

Rather than telling new investors that the company is going to use their money to expand, this statement is telling the existing note holders that the Company needs to hold on to their money longer and is willing to pay them a higher rate of interest to do so.

The June 22, 2009 letter has a similar but not identical statement to existing note holders offering to pay a higher interest rate on existing notes (money already spent).

6. <u>Investment risks with St. Anselm were the disclosed risks associated with purchasing St. Anselm's notes not the undisclosed risks ( ¶ 86f)</u>

This claim is merely an omissions claim recast as a false statement claim.  Plaintiff cannot point to a single statement in which the defendants represented that the only risk of investing with St. Anselm was the risk typically associated with the oil and gas business.  The defendants did properly qualify their opinion

8

about the ultimate profitability of the Kansas/Nebraksa project by pointing out the future events over which defendants had no control.  See Exhibit D page 029608).  This, however, cannot be twisted into an affirmative statement that the investment is only subject to the risks of the oil and gas business.

7.  <u>Interest bonus offered to invest in geothermal projects when in fact St. Anselm needed the money to pay interest and principal (¶ 86g )</u>

This allegation is substantively no different than the allegations in paragraph 86e except that it adds the element of the interest bonus.  See item 5 above.

8.  <u>St. Anselm's debt remained constant when in fact its debt had grown (¶ 86h )</u>

This allegation springs from an inaccurate and incomplete quotation from a letter dated June 22, 2009.  The actual quotation in complete context is as follows:

> About half of the capital we raise comes from people privately and about half from self-directed IRA, 401k and SEP accounts.  Our total debt has remained *consistent* over the last year. (emphasis added)  (Exhibit G, Page 029602)

Viewed in the context of the paragraph, the statement does not represent that the amount of debt has been *constant* as alleged by the Plaintiff but rather that the total debt has remained consistent with the description from the previous sentence: 50% from people privately and 50% from retirement accounts.

9.  <u>St. Anselm could afford to pay the interest rates it was offering (¶ 86i)</u>

This allegation is apparently based upon an email sent by Mr. Zakroff on February 18, 2010.  (The entire email exchange is attached as Exhibit H.)  An email authored by one defendant is insufficient to base a claim for a false

statement on persons who were not authors, and there is no evidence that they participated in the issuance of the statement.  These claims as to Defendants Palmer and Wells must be dismissed.

Even the allegations as to Defendant Zakroff are insufficient. First, the Complaint does not allege that the email was sent in connection with the purchase or sale of a security.  The Complaint uses the term "investor" but it does not state whether those persons had already invested or were going to invest after the email.  An email sent to persons already invested is insufficient to state a claim under 15 U.S.C. ¶ 77q(a) or 15 U.S.C. ¶ 78j(b) because both sections require that the false statement be made "in the offer or sale of securities," 15 U.S.C. ¶ 77q(a)(1),(2) and (3), or "in connection with the purchase or sale of a security," 15 U.S.C. ¶ 78 j(b).[2]

The five words quoted in paragraph 78, "St. Anselm can afford the [interest] rates," are extracted from a much longer email sent to an existing investor who posed a question about the overall economy.  After a lengthy discussion, Mr. Zakroff makes the following statement:

> We are not Exxon, nor even Apache.  We are paying what the private independent oil industry pays for mezzanine capital or private equity.  But, as can be seen from my other email, St. Anselm can afford the rates.  We would never get low cost capital in any event.  So the delta between what we pay and the banks is about 8%.  (Exhibit H page 030379)

Mr. Zakroff is making reference to the higher rate of interest paid by St. Anselm and how that rate of interest relates to the projected economics in the Kansas/Nebraska project.  See item 11.

---

[2] The email address of the "investor" has been redacted to protect that person's privacy. However, based upon a review of the pertinent files, the recipient of the email had invested long before the email was sent.

10.   Wells' and Palmer's personal guarantees made the investment less risky when in fact they were of little or no value (86j)

The only alleged statement about the personal guarantees does not state that the personal guarantees made the investment less risky.  In fact, the quoted statement from the Activity Update Letter states just the opposite.  The statement makes reference to the fact that the use of private debt financing is not without risk and that the risk is reflected in a high interest rate and the personal guarantees.

11.   St. Anselm's promissory notes were a safe investment (¶ 86k)

This allegation is apparently based upon the same email discussed regarding paragraph 86i of the Complaint.  The arguments advanced above that Defendants Wells and Palmer cannot be responsible for the statements and that the statements do not come within 15 U.S.C. ¶ 77q(a) or 15 U.S.C. ¶ 78j(b) are equally applicable.

The quoted section of the email leaves out some very important words.  Compare ¶ 78 with Exhibit H page 030384.  The entire email demonstrates that Mr. Zakroff is not talking about the risk involved in the promissory note but rather the drilling risk in the Company's Kansas/Nebraska program.  He provides various statistics regarding the historical performance of the Kansas/ Nebraska program and makes no statement about the overall risk of investing in the Company.

**THE ALLEGED FAILURES TO DISCLOSE**

St. Anselm is not a publicly traded company and therefore is not subject to all of the various specific rules that apply to public companies.  The notes in

question were all sold without registration with the Securities and Exchange Commission and were all sold to individuals who certified, in writing, that they were accredited investors and "had sufficient experience in financial matters and prior investments to evaluate the potential benefits and the risks of investing in the company."

Failure to disclose information is only a violation of the securities laws if there is a duty to disclose that information.  The duty to disclose must come from a statute or a fiduciary relationship or some similar relationship of trust and confidence.  *Windon Third Oil and Gas v Federal Deposit Inc.,* 805 F. 2d 342, 347 (10th Cir. 1986) citing *Chiarella v. United States* 445 U.S. U.S. 222, 228,231 n. 14 (1980).

The Complaint cites no statute that creates a duty and does not allege a fiduciary duty to the note holders.  Therefore, a duty to disclose arises in this context only if the company voluntarily makes a statement to an investor and only if the voluntary statement is material.  *In re K-Tel Int'l Inc. Sec. Litig.,* 300 F.3d 881, 898 (8th Cir 2002); *In re Crocs, Inc. Securities Litigation* _____F. Supp.2d _____, 2011 WL 782485 (D. Colo. 2011).  Therefore, the Plaintiff must plead sufficient facts which, if true, would make the actual voluntary statements "material" and inaccurate because the alleged true facts were not disclosed.  If the voluntary statements are merely corporate optimism, typical forward looking statements or generalized statements of optimism not capable of objective verification, they are not material as a matter of law. *Grossman v Novell, Inc.* 120

F. 3d 1112, 1119 (10th Cir 1997).  Applying these standards to the Complaint, the Plaintiff has failed to allege any material failures to disclose.

### 1.  St. Anselm's "true" financial condition (¶ 87a)

There are no voluntary statements alleged in the Complaint that are material to the financial condition of the Company that would give rise to a duty to disclose the so-called true financial condition of the Company.  Many of the quoted statements are clearly the opinions of management regarding the future performance of the Kansas/Nebraska project or the details of the Company's economic model for the Kansas/Nebraska project and, therefore, do not trigger a duty to disclose financial condition.  See paragraphs 71a; 71b; 71c; 71d and 71g.

The only statement alleged in the Complaint that deals in any way with the financial condition of the Company is contained in paragraph 76. As set forth above, this is a misquotation of a sentence which actually describes the composition of the debt between private parties and retirement accounts.

### 2.  St. Anselm's dependence on the proceeds of new promissory note sales to service its debt (¶ 87b)

There are no affirmative statements cited that would require a disclosure that the proceeds of new debt would be used to service existing debt.  Each investor was provided with a subscription agreement (Complaint ¶ 30-31) which provided that the proceeds of the note sale could be use in any way that the board of the Company deemed important. (Exhibit A page 02491).  Given this initial disclosure to all investors, the alleged use of proceeds to pay interest is not material

### 3.  The manner in which St. Anselm actually planned to use the proceeds of sale of promissory notes (¶ 87c)

13

The disclosures in the subscription agreement (Exhibit A) made very clear that the investors' money could be used for any purpose that the board of directors determined.  This broad authorization included using the note proceeds for payment of interest and principal on existing debt, shareholder distributions and any type of exploration activity including but not limited to geothermal activity.

4.   The true risks associated with investing in St. Anselm's promissory notes (¶ 87d)

The Complaint fails to cite any affirmative factual statement which would require disclosure of the "true risks" associated with investing in the notes.   Each investor had access to information that would allow them to evaluate those risks for themselves.

5.   The magnitude of St. Anselm's distributions to shareholders( ¶ 87e)

Plaintiff cites no statement about the compensation of management or its magnitude.  Without a voluntary statement concerning the amount of compensation, no duty to disclose was triggered.  In addition, each investor signed a subscription document which contained a very specific disclosure that loan proceeds could be used to pay distributions to owners as well as any other purpose deemed appropriate by the board of the Company.

6.   The true value of Wells' and Palmer's personal guarantee ( ¶ 87f)

The personal guarantees and the high interest rate offered by ST. Anselm are used together to emphasize the point that the use of private debt financing is not without risk.  No statement is made that there is a value of the guarantees or that the presence of the guaranteed decreases the risk because of their value.

14

### THE FAILURE TO ALLEGE SCHEME LIABILITY

These defendants incorporate the arguments and authorities cited by Defendant Etkind on this topic

### THE FAILURE TO PLEAD FACTS RELATING TO THE GEOTHERMAL BUSINESS

The Complaint argues that many of the statements about the business of the Company are false or misleading because they fail to disclose the "true status" of the geothermal business.  (Complaint ¶ 67, 71e, 71f ).  However, the only allegations about the state of the geothermal business are made upon information and belief.  (Complaint ¶ 20, 21 and 22).  Such allegations are insufficient to meet the requirements of rule 9(b).

### CONCLUSION

The Complaint does not meet the requirements of Rule 12(b)(6) and Rule 9(b) and should be dismissed.

DATED this 3rd day of June, 2011.

Respectfully submitted,

BIRGE & MINCKLEY, P.C.


s/ Thomas D. Birge_____
Thomas D. Birge
Carla B. Minckley
9055 E. Mineral Circle, Suite 110
Centennial, CO  80112
(303) 860-7100
tbirge@birgeminckley.com

ATTORNEYS FOR THE
ST. ANSELM DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of June, 2011, a true and correct copy of the foregoing ST. ANSELM DEFENDANTS' MOTION TO DISMISS COMPLAINT was served via CM/ECF, addressed to the following:

Nancy J. Gegenheimer
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202-2656
gegenheimern@sec.gov

David A. Zisser, Esq.
Davis, Graham & Stubbs, LLP
1550 17th Street, Suite 500
Denver, CO 80202
david.zisser@dgslaw.com

s/ Patricia A. Cole_____
Patricia A. Cole