
## SUBSCRIPTION AGREEMENT

St. Anselm Exploration Company
1200 Seventeenth Street,
Suite 2100
Denver, Colorado 80202

Gentlemen:

1. **Subscription.** The Subscriber, intending to be legally bound, hereby agrees to purchase the New Promissory Note or Notes (also referred to below as the "Notes") in the principal amount stated below, to be issued by St. Anselm Exploration Company (the "company"), on the terms and conditions described in the forms of Promissory Note which are attached to this Subscription Agreement. The form of Personal Guaranty also is attached.

    The purchase is made by the investment of cash. The Subscriber has elected to invest in one or both of the Notes as stated on the signature page.

    Subject only to acceptance by the company, this Subscription Agreement is irrevocable.

2. **Subscriber's Representations and Warranties.** The Subscriber represents and warrants to the company as follows:

    (a) The Subscriber is acquiring the Notes for the account of the Subscriber as a principal, for investment purposes only, and not with a view to, or for resale or distribution.

    (b) The Subscriber understands that the offer and sale of the Notes is intended to be exempt from registration under section 4(2) of the Securities Act of 1933 (the "Act") by the provisions of rule 506 of Regulation D adopted by the Securities and Exchange Commission. The Subscriber further represents and warrants to and agrees with the company that:

    (i) The Subscriber has the financial ability to bear the economic risk of this investment, has adequate means for providing for current needs and contingencies, and has no need for liquidity with respect to the investment in the company, regardless of the outcome of such investment;

    (ii) The information contained in the Purchaser Questionnaire is complete and correct as of the date hereof and if there should be any material change in such information before acceptance of subscription by the company, then the Subscriber will immediately furnish such revised or corrected information to the company; and.

7


EXHIBIT A

002490

      (iii)    The Subscriber is an "accredited investor," and in addition, has sufficient experience in financial matters and prior investments to evaluate the potential benefits, and the risks, of investing in the company.

      (iv)    The Subscriber has determined that the Notes are a suitable investment for the Subscriber and that their purchase is consistent with the Subscriber's investment objectives, current and future liquidity expectations, and tolerance for risk.

(c)    The Subscriber:

      (i)    has evaluated the risks of an investment in the Notes, including the following:

- The Notes will be unsecured, although guaranteed by the principals of the company. If the company's capital requirements exceed liquidity, the principals likely would inject their personal capital into the company, which might reduce the value of their note guarantees.

- An exploration and production entity owned 50% by the company intends to hedge some of its production against oil price volatility. While hedging protects against price declines, significantly reduced production volumes would cost the entity (and therefore the company) money. A hedging contract only is available for a limited period of time; in a protracted price decline, new contract terms follow prices and therefore are not long term guarantees of protection against low prices.

- If any one of the company's three officers were unable to continue service, the company would be adversely affected. It would be very difficult to find a suitable replacement.

- There are no constraints on the company's use of cash, whether from debt financings or operations. The company is closely held and treated as an S corporation for Federal income tax purposes. Cash, including proceeds from debt financings, has been and will continue to be used at the discretion of the board of directors of the company, for property acquisition, evaluation, and drilling and completion of wells; general and administrative expense (including distributions to shareholders); purchase of marketable securities; and for other purposes. Lenders have no voting rights, rights to representation on the company's board of directors, or rights to distributions made by the company or any entity in which the company holds an interest.

- All statements made by the company in the letter to the Subscriber which accompanies the Subscription Booklet (other than statements of historical fact) are forward-looking statements, which are usually identifiable by the use of words like "believe," "expect," or "anticipate."

Although the company believes that the forward-looking statements are

8

Confidential Treatment Requested by Sanse Exploration, Inc.

reasonable, the officers of the company don't know if the expectations will prove to be correct. The forward-looking statements are made in good faith and with what is believed to be a reasonable basis. However, the forward-looking statements are subject to risks and uncertainties. Actual results may differ materially from what is stated, projected or implied by those forward-looking statements.

(ii) has been given the opportunity to ask questions of, and receive answers from, the company concerning the terms and conditions of the Notes and all other matters pertaining to this investment, including the opportunity to obtain such additional information necessary to verify the accuracy of the information already provided by the company. As an accredited investor, the Subscriber understands that he or she is deemed capable of making an independent investigation of the company's business and the merits and risks of investing in the Notes.

(d) The Subscriber is not relying on the company or any of its officers or consultants for tax advice about an investment in the company.

3. **Modification.** This Agreement cannot be modified, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of any modification, discharge or termination is sought.

4. **Notice.** Any notice, demand or other communication that any party hereto may be required, or may elect, to give to anyone pursuant to this Agreement shall be sufficiently given if deposited, postage prepaid, in a United States mailbox, or delivered personally at such address.

5. **Counterparts.** This Agreement may be executed through the use of separate signature pages, which taken together shall constitute one binding agreement.

6. **Binding Effect.** After acceptance by the company, this Subscription Agreement shall be binding upon and inure to the benefit of the parties and their successors, legal representatives and permitted assigns, as a contract and subscription under Colorado law.

7. **Entire Agreement.** This instrument contains the entire agreement of the parties with respect to the subject matter of this Agreement.

8. **Assignability.** This Agreement is not transferable or assignable by the undersigned.

9. **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado as applied to residents of that state entering into contracts wholly to be performed in that state, notwithstanding the jurisdiction wherein it is signed by the Subscriber.

9

IN WITNESS WHEREOF, this Subscription Agreement is signed by the Subscriber on 12 OCT, 2007.

| | |
|---|---|
| Total Cash Investment: | $100,000.00 |
| Principal Amount Allocated to Three Year 16% Notes: | $ |
| Principal Amount Allocated to Three Year 20% Notes: | $100,000.00 |

Name of Subscriber:

REDACTED

Accepted by the Company:

Michael A. Zakroff, duly authorized
Date of Acceptance: _____, 200_

REDACTED
Signature of Subscriber

Second Signature, if Tenants in Common or Joint Tenants

_____

Name and Title of Signer (if Subscriber is entity):

_____

Confidential Treatment Requested by St. Anselm Exploration, Inc.

10