IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Case No. 11-cv-00668-REB-MJW

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

ST. ANSELM EXPLORATION CO.,
MICHAEL A. ZAKROFF,
MARK S. PALMER,
ANNA M.R. WELLS, and
STEVEN S. ETKIND,

     Defendants.

---

### ORDER CONCERNING DEFENDANTS' MOTIONS TO DISMISS

---

**Blackburn, J.**

     This matter is before me on the following: (1) the **St. Anselm Defendants'**

**Motion To Dismiss Amended Complaint and Brief in Support Thereof** [#40][1] filed

July 29, 2011; and (2) **Defendant Steven S. Etkind's Moiton To Dismiss the First**

**Amended Complaint Pursuant To F.R.C.P. 9(b) and 12(b)(6)** [#41] filed July 29,

2011.  The plaintiff filed responses [#47 & #48], and the defendants filed replies [#49 &

#50].  I deny the St. Anselm defendants' motion.  I grant the Etkind motion in part and

deny it in part.

### I.  JURISDICTION

     I have jurisdiction over this case under 28 U.S.C. § 1331 (federal Question).

---

[1]  "[#40]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## II.  STANDARD OF REVIEW

When ruling on a motion to dismiss under FED. R. CIV. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of FED. R. CIV. P. 8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  ***Kansas Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court of the United States supplanted the standard in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  Under ***Twombly***, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'"  ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Twombly***, 127 S.Ct. at 1974).  "This pleading requirement serves two purposes:  to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  ***Kansas Penn Gaming***, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true.  ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002).  Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss.  ***Ashcroft v. Iqbal***, 556 U.S. 662, – , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal

quotation marks omitted).  ***See also Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting ***Twombly***, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." ***Iqbal***, 129 S.Ct. at 1949.  ***See also Ridge at Red Hawk***, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." ***Kansas Penn Gaming***, 656 F.3d at 1214 (quoting ***Twombly***, 127 S.Ct. at 1965).  The standard will not be met when the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." ***Robbins***, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." ***Id.***

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." ***Iqbal***, 129 S.Ct. at 1950; ***see also Kansas Penn Gaming***, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 127

S.Ct. at 1965) (internal quotation marks omitted).

The plaintiff asserts claims under § 17(a), 15usc § 77q(a), § 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  These claims sound in fraud.  Claims sounding in fraud must satisfy the heightened pleading requirements of FED. R. CIV. P. 9(b).  Rule 9(b) requires a plaintiff to set forth the who, what, when, where, and how of the alleged fraud.  Stated differently, the plaintiff must state the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof.  ***U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah***, 472 F.3d 702, 727 (10th Cir. 2006).

### III.  SUMMARY OF ALLEGATIONS

The operative complaint is the plaintiff's **First Amended Complaint** [#36] (Complaint).[2]  The plaintiff, the United States Securities and Exchange Commission (SEC), alleges that the business of St. Anselm Exploration Co. focused on acquiring working interests in projects that explored, developed , and sold oil and gas or oil and gas wells.  ¶ 19.  St. Anselm derived revenue from selling oil and gas produced from the wells in which it owned an interest and from packaging and selling its interest in wells.  ¶ 19.  In 2007, St. Anselm decided to expand its business to include exploration and development of geothermal wells and the generation of geothermal power.  ¶ 20.  Beginning in 2007, St. Anselm's capital needs increased substantially because of its new investments in geothermal energy and because revenues from its oil and gas projects were not sufficient to pay the costs of the geothermal project.  ¶ 23   By 2010, geothermal assets made up the majority of St. Anselm's asset value.  ¶ 21.

---

[2] I will cite the Complaint by paragraph number, e.g. ¶ 1.

Defendants, Michael Zakroff, Mark Palmer, and Anna Wells, were personally involved in both the technical and financial aspects of St. Anselm's business.  ¶ 22.

In the Complaint, the SEC describes St. Anselm's business, the deterioration of St. Anselm's financial condition over the period between 2007 to September of 2010, ¶¶ 38 - 52, and the defendants' efforts to obtain additional cash through promissory notes, ¶¶ 26 - 52.  According to the Complaint, by 2009, St. Anselm's "revenues were insufficient to pay the costs needed to develop the geothermal assets and the costs of the oil and gas projects exceeded any revenue produced from" those projects.  ¶ 39. Further, revenues from operations were not adequate to service the debt on the existing investor promissory notes or to pay the principal on maturing notes.  ¶ 40.  Between 2007 and 2010, St. Anselm sold new high-interest promissory notes to raise the funds necessary to pay the interest and principal due on the existing notes.  ¶ 41.  As a result, its debt balance grew by millions of dollars in each of these years.  ¶¶ 41 - 42.  In each year, from 2007 to 2010, Wells and Palmer both received substantial distributions from St. Anselm.  ¶ 46.

The heart of this case is the allegations of the SEC that the defendants made various material misrepresentations about the business prospects and results of operations of St. Anselm. In addition, the SEC alleges that the defendants failed to state various material facts necessary to make statements made by the defendants not misleading.  Allegedly, these statements and omissions were part of a scheme to sell promissory notes to raise more than 49 million dollars from approximately 200 investors. ¶ 1.  Zakroff, Palmer, and Wells are alleged to have been aware of St. Anselm's financial condition at the relevant times.  ¶¶ 53 - 56.

In 2009 and 2010, St. Anselm's revenues from operations were falling

substantially, its debt load was rising substantially, and its ability to pay interest on existing debt and to pay the principal on maturing notes, was fading very quickly.  In these circumstances, St. Anselm continued to raise funds though new promissory notes, to pay interest and principal on older notes with these newly raised funds.  In addition, Wells and Palmer continued to take substantial distributions from St. Anselm. ¶ 46.

Defendant, Steven Etkind, was employed by St. Anselm as its Vice President of Development.  ¶ 18.  Etkind had the responsibility to raise capital by selling promissory notes.  *Id.*  Almost all of the St. Anselm promissory notes were sold by Etkind.  ¶ 55.  St. Anselm paid large bonuses to Etkind. ¶ 48.  Allegations concerning Etkind's knowledge of St. Anselm's finances are discussed further below.  ¶ 54.

In the Complaint, the SEC asserts two claims: (1) a claim for fraud under § 17(a), 15usc § 77q(a); and (2) a claim for fraud[3] under § 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b.  Steven Etkind filed a motion to dismiss [#41] independent of the other defendants.  The four other defendants jointly filed their motion to dismiss [#40] and refer to themselves as the St. Anselm defendants.[4] All of the defendants move to dismiss both claims against all defendants.  According to the defendants, the SEC's allegations are not sufficiently specific to state claims under either § 17(a), or § 10(b).

## IV.  ST. ANSELM DEFENDANTS

### A.  Oral Misrepresentations

Citing ¶¶ 67 - 70, the St. Anselm defendants argue that the description in the

---

[3] I will refer to Mr. Etkind by name.

[4] I will refer to these four defendants as the St. Anselm defendants.

Complaint of alleged oral statements made by the defendants is not sufficiently specific. These three paragraphs, each devoted to specific defendant, describe various means by which each defendant allegedly conveyed fraudulent statements.  Each paragraph describes generally the topic of alleged misrepresentations and failures to disclose material facts.  Alone, these paragraphs do not contain sufficiently specific fraud allegations because none of the paragraphs describes specifically when the alleged statements were made.  Further, the paragraphs conjoin various types of recipients of the statements and various topics of the alleged statements.

However, ¶¶ 67 - 70 must be read in the context of the Complaint as a whole.  In ¶¶ 71 - 75, the SEC alleges adequately specific oral statements made by Zackroff, Palmer, and Wells.  The St. Anselm defendants argue that the alleged statements made at this meeting are not actionable.  I conclude that these allegations specify sufficiently the who, what, when, where, and, how of the alleged oral statements. Allegedly, Zackroff, Palmer, and Wells held a meeting attended by about 70 investors.  At the meeting, they made represented that St. Anselm's business was successful and its financial condition was sound.  ¶ 73.  In the context of the Complaint, I do not agree with the defendants' contention that such statements are so general and vague as to be immaterial or that they are hopeful predictions of the future.  Rather, the alleged statements are statements of present and past fact that were, allegedly, inaccurate and material.

I read ¶¶ 67 - 70, which contain general and insufficiently specific allegations of oral misrepresentations and omissions, as providing general context to the more specific allegations in ¶¶ 71 - 75.  With regard to oral misrepresentations and omissions, to the extent ¶¶ 67 - 70 contain allegations that go beyond the specifics of ¶¶ 71 - 75,

those expanded allegations may not be asserted as the basis for a fraud claim based on alleged oral misrepresentations by Zackroff, Palmer, and Wells.  Rather, the actionable oral misrepresentations are limited to the sufficiently specific allegations in ¶¶ 71 - 75.

### B.  Written Misrepresentations

In ¶¶  76 - 88, the SEC describes specific written misrepresentations and material omissions allegedly made by the defendants.  In ¶¶ 96 - 98, the SEC describes specific written misrepresentations and material omissions allegedly made by the defendants. Paragraphs 94 and 95 fall under the heading "Defendants' Misrepresentations and Omissions Were Material." *Complaint*, p. 22. Paragraph 95 contains a list of 11 general topics alleged to be the topics of the defendants' misrepresentations and omissions and a description of why each topic is alleged to be material.  The misrepresentations and omissions described in ¶ 95 are described too generally to be actionable as the basis for the SEC's fraud claims.  However, it is clear the purpose of ¶¶ 94 - 95 is to describe why the specific written misrepresentations and omissions alleged in ¶¶ 76 - 88 and 96 - 98 were material.

I read ¶¶ 94-95, which contain general and insufficiently specific allegations of written misrepresentations and omissions, as providing general context to the more specific allegations in ¶¶ 76 - 88, and 96 - 98.  With regard to written misrepresentations, to the extent ¶¶ 94 - 95 contain allegations that go beyond the specifics of ¶¶ 76 - 88, and 96 - 98, those expanded allegations may not be asserted as the basis for a fraud claim based on alleged written misrepresentations and omissions by Zackroff, Palmer, and Wells.  Rather, the actionable written misrepresentations are limited to the sufficiently specific allegations in ¶¶ 76 - 88, and 96 - 98.

### C.  Challenges to Specific Alleged Statements

The St. Anselm defendants assert 11 specific challenges to the sufficiency of allegations about statements on certain topics. *St. Anselm motion* [#40], pp. 6 - 13. For the most part, the St. Anselm defendants cite portions of ¶ 95, which describes the materiality aspect of the previously alleged misrepresentations. Given the sufficiently specific allegations of fraudulent statements and omissions, specified above, I conclude that the allegations that describe materiality are sufficiently specific and are tied to the earlier specific allegations of fraudulent statements and omissions.

On these issues, a few points must be noted. First, a statement or omission is material only "if a reasonable investor would consider it important in determining whether to buy or sell stock." ***Grossman v. Novell, Inc.***, 120 F.3d 1112, 1119 (10th Cir. 1997). Considering the Complaint as a whole, I find that the SEC has alleged materiality with sufficient specificity.

Second, vague statements of corporate optimism and forward-looking statements that are accompanied with sufficient cautionary language are often considered not to be material and, therefore, not actionable. *Id*. at 1119 - 1120. However, a statement as to beliefs or opinions "may be actionable if the opinion is known by the speaker at the time it is expressed to be untrue or to have no reasonable basis in fact." *Id*. at 1120 n. 6. To the extent the defendants rely on the argument that the alleged statements concern beliefs and opinions, I find that the allegations in the Complaint are sufficient to show that such statements are actionable.

Third, I have considered the specific arguments asserted by the St. Anselm defendants at pages 6 - 13 of their motion, including the documents attached to their motion. Those documents contain many of the statements referenced in the Complaint. Having reviewed the Complaint, the documents attached to the St. Anselm defendants'

motion, and the arguments of the St. Anselm defendants, I reject each of those arguments and conclude that the allegations in the complaint are sufficient to state claims for relief against the defendants.  I note, however, that I continue to rely on  ¶¶ 71 - 75, 76 - 88, and 96 - 98 as the paragraphs that allege misrepresentations and omissions with sufficient specificity.

### D.  Challenges to Alleged Omissions

In the context of St. Anselm and the promissory notes at issue in this case, the St. Anselm defendants contend that the defendants had a duty to disclose information only if the company voluntarily makes a statement to an investor and only if the statement is material.  *In re K-Tel Intern., Inc. Securities Litigation*, 300 F.3d 881, 898 (8th Cir. 2002).  Omission of a material fact is actionable only when the omitted information is necessary "to make . . . statements made , in light of the circumstances under which they were made, not misleading."  *Matrixx Initiatives, Inc. v. Siracusano*, ___ U.S. ___, ___, 131 S.Ct. 1309, 1321 - 1322 (2011) (citation and internal quotation omitted).  The St. Anselm defendants contend that many of the alleged omissions are not tied to a statement that triggered a duty to disclose.   On this basis, the St. Anselm defendants challenge seven alleged omissions described in the Complaint.

Relying on  ¶¶ 71 - 75, 76 - 88, and 96 - 98 as the paragraphs that allege statements and omissions with sufficient specificity, I disagree with the arguments asserted by the St. Anselm defendants.  The Complaint alleges that these defendants made repeated statements to investors and that those statements triggered a duty to disclose.  In these paragraphs, the Complaint describes particular statements and associates alleged omissions with those statements. The allegations in the Complaint are sufficient to demonstrate that the defendants had a duty to disclose with regard to

the alleged omissions.

### E.  Conclusion

For the reasons discussed above, I conclude that the allegations in the complaint are sufficient to state claims against the St. Anselm defendants under both § 17(a) and § 10(b). Thus, the St. Anselm defendants' motion to dismiss is denied.

## V.  STEVEN ETKIND

Etkind was employed by St. Anselm as its Vice President of Development.  ¶ 18. Etkind had the responsibility to raise capital by selling promissory notes.  He seeks dismissal of the Complaint on several bases.

### A.  Fraudulent Scheme Liability

> Section 10(b) and Rule 10b–5 impose primary liability on any person who substantially participates in a manipulative or deceptive scheme by directly or indirectly employing a manipulative or deceptive device (such as the creation or financing of a sham entity) intended to mislead investors, even if a material misstatement by another person creates the nexus between the scheme and the securities market.

*S.E.C. v. Lee*, 720 F.Supp.2d 305, 334 (S.D.N.Y. 2010).  To allege scheme liability, Etkind contends, the SEC must allege both misrepresentations and a deceptive scheme or course of conduct that go beyond the misrepresentations.  Etkind argues that the SEC has not alleged, as to him, a deceptive scheme or course of conduct that went beyond the misrepresentations.

I disagree.  Considered as a whole, the allegations in the Complaint allege Etkind's substantial participation in a deceptive scheme and course of conduct that went beyond the alleged misrepresentations.  Notably, the Complaint alleges that Etkind continued to sell St. Anselm promissory notes after Etkind was aware of St. Anselm's dire financial condition and the fact that its financial house was, essentially, collapsing.

The St. Anselm defendants adopt Etkind's argument on this issue.  As to the St. Anselm defendants, the allegations in the Complaint allege their substantial participation in a deceptive scheme and course of conduct that went beyond the alleged misrepresentations.

<u>B.  Misrepresentations by Omission</u>

According to Etkind, the SEC alleges with some particularity material facts that it alleges were omitted from statements, but "it provides virtually no particularity on the statements actually made which were rendered misleading by the omission." *Etkind motion*, p. 8.  Again, relying on  ¶¶ 71 - 75, 76 - 88, and 96 - 98 as the paragraphs that allege statements and omissions with sufficient specificity, I disagree.  The Complaint alleges that Etkind made statements to investors and that those statements triggered a duty to disclose.  In these paragraphs, the Complaint describes particular statements and associates alleged omissions with those statements. The allegations in the Complaint are sufficient to demonstrate that Etkind had a duty to disclose with regard to the alleged omissions.

<u>C.  Specific Misrepresentations</u>

According to Etkind, the time when he allegedly made a misrepresentation is crucial because St. Anselm's financial condition changed over time.  For example, if St. Anselm was financially healthy in 2007 but, by 2009, was in dire financial condition, a statement of financial health in 2007 would not be misleading while the same statement in 2009 would be misleading.

In its response, the SEC relies on Etkind's knowledge of St. Anselm's financial condition beginning in 2009 and Etkind's alleged statements and omissions in 2009 and 2010.  As alleged in the Complaint, Etkind sent an e-mail on October 8, 2009, which

allegedly contained material misrepresentations and omissions.  ¶ 86.  This allegation specifically is tied in the Complaint to Etkind's knowledge of St. Anselm's financial condition at that time.  The Complaint indicates that Etkind's knowledge that St. Anselm was in dire financial condition arose, at the earliest, sometime in March of 2009.  ¶ 44. By June of 2009, Etkind explicitly was aware of the collision between St. Anselm's debt burden and its lack of cash.  ¶¶ 56.  The same is true for other alleged statements and omissions by Etkind after the spring of 2009.  These allegations are sufficient to support the SEC's claims.  In particular, these allegations are sufficient to show that Etkind acted with scienter.

This leaves in question Etkind's alleged statements to investors in December of 2008.  ¶¶ 71 - 74.  These alleged misrepresentations concern statements that St. Anselm was successful and its financial condition was sound and failures to tell investors about St. Anselm's pursuit of geothermal projects and the costs associated with such projects.  ¶¶ 73, 75.  For 2008, St. Anselm's revenue from operations was about equal to its debt service costs. ¶ 42.  In 2008, about 14.5 million dollars was raised through promissory notes.  *Id.*  In 2008, nearly nine million dollars was distributed to shareholders.  ¶ 46.  This is a precarious scene, but there is no allegation that Etkind knew these facts in December of 2008.  Rather, the Complaint indicates that Etkind knew St. Anselm's revenues in 2009 were not sufficient to cover costs or service its debt.  ¶ 54.  By June of 2009, Etkind explicitly was aware St. Anselm's extremely weak financial picture.  ¶¶ 56.

Absent knowledge of the relevant facts about St. Anselm's financial picture in December, 2008, Etkind's alleged misrepresentations in December, 2008, have not been alleged to be fraudulent.  If Etkind did not know the facts, then an allegedly untrue

statement about those facts is not fraudulent. The level of scienter required to support a § 10(b) claim is intent to deceive, manipulate, or defraud. ***City of Philadelphia v. Fleming Companies, Inc.***, 264 F.3d 1245, 1259 (10th Cir. 2001). Proof of recklessness is sufficient to establish a § 10(b) claim. ***Fleming***, 264 F.3d at 1261.  Here, the facts alleged concerning Etkind's December, 2008 statement do not support the claim that those statements were made with intent to deceive, manipulate, or defraud, or were made recklessly.  Thus, the § 10b claim against Etkind must be dismissed to the extent it is based on his December, 2008 statement.  Section 17(a) does not require an allegation of scienter, so that claim is not affected by this issue.

### D.  Attribution of St. Anselm Statements to Etkind

Etkind argues that statements in various St. Anselm documents that he did not sign cannot be attributed to him because he did not play an integral role in the creation of these documents. In response, the SEC notes that it has alleged that Etkind distributed copies of the update letters to prospective investors.  ¶ 78.  Under § 17(a), such an action is sufficient to allege a claim against Etkind.  In terms of false statements in other St. Anselm documents not written or signed by Etkind, I agree with Etkind that the Complaint does not contain allegations that state a claim under § 17(a) or § 10(b) based on such statements.  However, Etkind can be liable for these other statements through scheme liability under Rule 10b-5, which theory has been pled adequately.

### E.  Other Issues

A few other issues need only brief discussion.  Etkind argues that his alleged statement in his October 8, 2009, e-mail is a statement of opinion that is not actionable. I note again, a statement as to beliefs or opinions "may be actionable if the opinion is known by the speaker at the time it is expressed to be untrue or to have no reasonable

basis in fact." **Grossman**, 120 F.3d at 1120 n. 6.  The e-mail statements fall in this

category and are actionable.  Etkind argues that the SEC has not alleged that he

obtained money or property through a misrepresentation and, therefore, the § 17(a)

claim against him fails.  I disagree.  The SEC alleges that St. Anselm paid large

bonuses to Etkind.  ¶ 53.  This is sufficient.

F.  Conclusion

The SEC's allegations of scienter are not sufficient to support a § 10(b) claim

against Etkind based on his alleged December, 2008, statements. The § 10b claim

against Etkind must be dismissed to the extent it is based on his December, 2008

statement. Otherwise, the allegations in the Complaint are sufficient to state claims

against Etkind under both § 17(a) and § 10(b).

**VI.  CONCLUSION & ORDERS**

The allegations in the complaint are sufficient to state claims against the St.

Anselm defendants under both § 17(a) and § 10(b). The St. Anselm defendants' motion

to dismiss is denied.  The SEC's allegations of scienter are not sufficient to support a §

10(b) claim against Etkind based on his alleged December, 2008, statements.  To this

extent, Etkind's motion to dismiss is granted.  Otherwise, the allegations in the

Complaint are sufficient to state claims against Etkind under both § 17(a) and § 10(b).

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **St. Anselm Defendants' Motion To Dismiss Amended Complaint
and Brief in Support Thereof** [#40] filed July 29, 2011, is **DENIED**;

2.  That  **Defendant Steven S. Etkind's Moiton To Dismiss the First
Amended Complaint Pursuant To F.R.C.P. 9(b) and 12(b)(6)** [#41] filed July 29,

2011, is **GRANTED** as to that portion of the claim under § 10(b), *see* 15 U.S.C. § 78j(b),

and Rule 10b-5 thereunder, *see* 17 C.F.R. § 240.10b, part of the second claim for relief,

is based on alleged misrepresentations by Steven Etkind made in December, 2008;

    3.  That otherwise, **Defendant Steven S. Etkind's Moiton To Dismiss the First Amended Complaint Pursuant To F.R.C.P. 9(b) and 12(b)(6)** [#41] filed July 29, 2011, is **DENIED**.

    Dated March 28, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge