# Exhibit 4

Part I



## *Patten, MacPhee & Associates, Inc.*

Denver Financial Center, Tower I
1775 Sherman Street, Suite 2900
Denver, Colorado 80203

*www.pattenmacphee.com*
303-296-2900
Fax 303-296-4475

**Leslie A. Patten**
*President*
March 15, 2012

**Gary M. Schwartz**
*Executive Vice President*

Nancy J. Gegenheimer, Esq.
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO  80202

In re:   UNITED STATES SECURITIES AND EXCHANGE COMMISSION v. ST. ANSELM
        EXPLORATION CO., MICHAEL A. ZAKROFF, MARK S. PALMER, ANNA M.R.
        WELLS, and STEVEN S. ETKIND, Case No. 11-cv-00668-REB-MJW

Dear Ms. Gegenheimer:

Pursuant to your request, I am submitting this report in connection with the above-referenced matter. I have been provided with the March 1, 2012 report authored by Stephen Shuster and Jay Freedberg ("the Shuster Report"), issued in rebuttal to my report issued in this matter on January 17, 2012 ("Original Report"). This report addresses my analysis of the Shuster Report.


## NATURE OF ENGAGEMENT

This engagement has been conducted in accordance with the Statement on Standards for Consulting Services, as promulgated by the American Institute of Certified Public Accountants and, as such, constitutes a transactional service. Accordingly, this engagement does not constitute any type of attestation service including, but not limited to, an audit, review or the application of agreed-upon procedures, nor does it constitute a compilation. In addition, this engagement is based on my oral understanding of the nature, scope and limitations of services to be provided.


## QUALIFICATIONS AND COMPENSATION

Attached hereto at Exhibit A is the current *curriculum vitae* for the undersigned which sets forth employment history, education, and publications, as well as all trial and deposition testimony given in the last four years. This is an updated version of the curriculum vitae provided with my Original Report. Patten MacPhee and Associates is being compensated for this engagement at our standard hourly rates which currently range from $45 to $300. Ms. Cook's hourly rate is $250.

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 2

## FACTS OR DATA CONSIDERED

A list of the facts or data received after I issued my Original Report and considered in the preparation of this report is presented at Exhibit B attached hereto.

## BACKGROUND

I presented the relevant background facts in my Original Report, and incorporate that section here by reference.

## APPROACH

I have reviewed Mr. Shuster's analysis of my report, and the independent financial analysis presented. I have evaluated his analyses based on my knowledge of the facts in this case as well as my education, experience, knowledge, skills and training, as presented on the *curriculum vitae* attached. Specifically, in performing my review of Mr. Shuster's report, as with the preparation of my Original Report, I have relied on my education in accounting culminating in a Bachelor's Degree, my 12 years' experience as a Certified Public Accountant, my 13 years' experience prior to that as a bookkeeper, City Treasurer, and accountant, my training, education and experience as a Certified Fraud Examiner, and my training in financial forensic analysis.

In evaluating Mr. Shuster's analyses, I have considered the data he utilized in performing his analyses as well as the methodology he employed in performing his analyses. (The following discussion is summarized from Chapter 3, 4 and 5 of *Financial Forensics Body of Knowledge[1]*) Typically, forensic accounting professionals use a methodology of gathering, reviewing, and analyzing data in order to perform a forensic analysis. This is the methodology that I use in performing my forensic engagements, and is the methodology I employed in preparing my Original Report in this matter. These steps and some of the typical activities performed in each are outlined below:

1.  Gather data
    a.  Identify, request and receive data needed to substantiate or refute positions
    b.  Test data to determine veracity and completeness
2.  Review data
3.  Analyze data
    a.  Obtain sufficient relevant data to provide credible evidence
    b.  Validate and correlate prior data obtained through alternate techniques
    c.  Summarize and analyze the findings of all deliverables and observations

---

[1] Dorrell, Darrell D. and Gregory A. Gadawski, <u>Financial Forensics Body of Knowledge</u>, Wiley and Sons, 2012.

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 3

My analysis of Mr. Shuster's report is presented below.

**ANALYSIS**

Mr. Shuster presented several opinions within the narrative of his report. In addition, he analyzed selected paragraphs of my Original Report in Appendix A to his report, and commented or opined on those paragraphs within Appendix A. I address each of his opinions put forth in the narrative of his report. I also address each of the comments and opinions made in Appendix A.

Mr. Shuster also presented his own analysis of Sources and Uses of Funds, presented in Exhibits B.1 and B.2 of his report. I have evaluated this analysis, and present my evaluation below.

### Opinion 1 – Evaluation of Expected Project Cycle

On page 3 of his report, Mr. Shuster states:

> "It is Shuster's opinion that an understanding of the time interval necessary to explore, acquire, develop and sell geothermal energy projects as well as oil and gas projects should be considered to evaluate whether the 3.75 years of bank statements analyzed by Ms. Cook are representative of the expected project cycle for these activities."

I have expressed no opinion as to whether the 3.75 years of bank statements I analyzed are representative of the expected project cycle of St. Anselm's business activities. The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund payments to Wells and Palmer. Mr. Shuster's statement offers no additional information from an accounting standpoint on this issue.

### Opinion 2 – Consideration of Increases and Decreases in Market Value

On page 3 of his report, Mr. Shuster states:

> "Shuster's analysis of the Cook Schedules 1 and 2 (¶39 and ¶40) found them to exclude increases (i.e., source of funds) or decreases (i.e., use of funds) associated with changes in the market value of various investments held by St. Anselm. It is Shuster's opinion that the exclusion of this type of information is a limiting factor to

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 4

> those schedules utility as a means to evaluate the ability of St. Anselm to ultimately satisfy its obligations to notes payable."

On page 6 of his report, he concludes:

> "[I]t is Shuster's opinion that since the Company maintains its books and records on the Income Tax Basis of accounting it is necessary to consider the fair market value of the oil & gas, geothermal and other partnership interests which St. Anselm lists as assets to determine the ability of the Company to pay its obligations."

I have expressed no opinion as to whether changes in market value of St. Anselm's other assets affect St. Anselm's ability to pay principal and interest on its debts. The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund payments to Wells and Palmer. It is important to note that increases and decreases in the market value of assets held do not represent increase or decreases in the funds in St. Anselm's bank account, the subject of my analysis. Mr. Shuster's statement offers no additional information from an accounting standpoint on this issue.

### *Opinion 3 – Comprehensiveness of Cook Analysis*

On page 3 of his report, Mr. Shuster states that his analysis of the Schedules included in my Original Report "identified significant variances between the amounts of 'sources' and 'uses' of funds reported by Ms. Cook and the accounting books and records of St. Anselm." On page 4, he goes on to further state:

> "…it is Shuster's opinion that the Cook Report's Schedules 1 and 2 (¶39 and ¶40) should be challenged for their inclusiveness and accuracy of all sources and uses of funds."

On page 6 of his report, he concludes:

> "As a result of the significant variance between the amounts of 'sources of funds' and 'uses of funds' as presented in the Cook Report and the amounts presented as debits and credits in the St. Anselm general ledger; it is Shuster's opinion that Ms. Cook's analysis may not be comprehensive."

As stated on page 3 of my Original Report,

> "The bank account held $213,039.02 on January 1, 2007, according to the bank statements. On September 30, 2010, the balance was $24,449.56. We were **_able_** to account for all deposits and withdrawals on [Schedules 1 and 2]." *(Emphasis added)*

*Patten, MacPhee & Associates, Inc.*

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 5

Mr. Shuster misquotes this section of my report on page 3 of Exhibit A to his report, stating:

> "Ms. Cook commented: 'We were **_unable_** to account for all deposits and withdrawals…'" *(Emphasis added)*

Mr. Shuster then uses this misquote to justify his statement that my analysis may be incomplete.

On the contrary, my analysis accounted for all deposits to ("Sources") and withdrawals from ("Uses") St. Anselm's operating bank account ending in 2986. As stated above, the balance in the account was $213,039.02 at the beginning of my analysis period per the bank statements, and $24,449.56 at the end of my analysis period per the bank statements. Schedule 1 to my Original Report showed sources of funds totaling $86,576,812.32, and Schedule 2 showed uses of funds totaling $86,765,401.78. One would expect that the beginning balance plus the sources of funds and less the uses of funds would equal the ending balance, and it does:

| | | |
|---|---|---:|
| Beginning Balance per Bank Statement, January 1, 2007: | $ | 213,039.02 |
| Plus: Sources of Funds (Schedule 1 to Original Report) | | 86,576,812.32 |
| Less: Uses of Funds (Schedule 2 to Original Report) | | (86,765,401.78) |
| | | |
| Equals: | $ | 24,449.56 |
| Ending Balance per Bank Statement, September 30, 2010: | | 24,449.56 |
| | | |
| Difference: | $ | 0.00 |

As a result, this calculation confirms that I was able to account for all transactions in the bank account in my analysis on Schedules 1 and 2.

In contrast to my analysis, Mr. Shuster's figures do not tie to any of the documentation provided to me. Mr. Shuster states that he analyzed the debits and credits to the cash account in the general ledger. However, Mr. Shuster stated that he did not analyze the bank statements, and does not appear to have reconciled the bank statements to the general ledger. I have observed that at no time do the general ledger and the bank statements appear to match, nor was I provided with bank reconciliations in order to determine where the differences lie. It does not appear that Mr. Shuster was provided with bank reconciliations, either.

This is important because the general ledger is not the bank account. The general ledger is the Company's internal recording of transactions. This internal recording may or may not be accurate. Most companies periodically reconcile the cash account in the general ledger to the bank statements in order to determine if the transactions in the cash account in the

*Patten, MacPhee & Associates, Inc.*

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 6

general ledger match what is shown on the bank statement. If they do not, generally additional research is necessary to identify the missing items and/or transactions and corrections are made. However, unless this reconciliation is done, it is unknown whether the general ledger reflects actual activity in the bank account. In this case, Mr. Shuster has not shown that the general ledger reconciles to the bank account.

Furthermore, I observed in my analysis that the adjusting journal entries prepared by the Company's accounting firm to correct the books were not reflected in the general ledger. Therefore, it is my opinion that the general ledger is not complete or accurate and should not be relied upon to analyze cash activity in the bank account. It is my further opinion that the bank statements are the most reliable source of information for an analysis of cash activity in the bank account.

As my stated purpose was to "…[examine] the sources and uses of funds in St. Anselm's bank account ending 2986 (the 'Bank Account'), and whether later investor funds were used to pay earlier investors…", the transactions shown in the bank statements were the object of my analysis. To the degree that the general ledger does not reflect the transactions shown in the bank statements, the general ledger is irrelevant to my analysis and was therefore not used as a basis for my analysis.

Furthermore, the debits and credits to the cash account listed by Mr. Shuster on page 4 of his report do not appear to be complete. Similar to my calculation above, one would expect that the beginning balance of the cash account per the general ledger plus the debits to this account and less the credits to this account would equal the ending balance of the cash account per the general ledger. However, this is not the case for the amounts listed by Mr. Shuster:

| | | |
|---|---|---:|
| Beginning Balance per General Ledger, January 1, 2007: | $ | (83,807.43) |
| Plus: "Debits to Account Per General Ledger", Shuster Report, page 4 | | 94,153,374.00 |
| Less: "Credits to Account Per General Ledger", Shuster Report, page 4 | | (93,791,099.00) |
| Equals: | $ | 278,467.57 |
| Ending Balance per General Ledger, September 30, 2010: | | 9,482.93 |
| Unaccounted-for difference: | $ | 268,984.64 |

Moreover, Mr. Shuster's report is not internally consistent: the sources and uses of cash presented by Mr. Shuster on Exhibits B.1 and B.2 do not match the debits and credits he shows on page 4 of his report.[2]

---

[2] Note that only 2007, 2008 and 2009 are shown here because Mr. Shuster's Exhibits B.1 and B.2 showed the full year for 2010, whereas the figures on page 4 of his report were through September 30, 2010

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 7

|  | Sources of Funds Per Shuster Ex B.1 | Debits to Account Per General Ledger | Variance |
|------|------|------|------|
| 2007 | $    16,347,313 | $    19,303,698 | $    (2,956,385) |
| 2008 |       28,895,766 |       29,924,032 |       (1,028,266) |
| 2009 |       29,855,805 |       30,465,155 |       (609,350) |
|  | $    75,098,884 | $    79,692,885 | $    (4,594,001) |

|  | Uses of Funds Per Shuster Ex B.2 | Credits to Account Per General Ledger | Variance |
|------|------|------|------|
| 2007 | $    19,539,541 | $    19,115,783 | $    423,758 |
| 2008 |       33,175,317 |       29,824,999 |       3,350,318 |
| 2009 |       34,261,526 |       30,369,122 |       3,892,404 |
|  | $    86,976,384 | $    79,309,904 | $    7,666,480 |

It is unclear why Mr. Shuster believes his analysis, which does not match the general ledger, shows the "effect of all transactions included in the accounting books and records of St. Anselm…" (Shuster Report, page 6)

### *Opinion 4 – Traditional Business Practices*

On page 5 of his report, Mr. Shuster, in discussing my conclusion that $11.2 million or more of proceeds from the issuance of promissory notes were used to make interest and principal payments to holders of promissory notes during the period from January 1, 2007 through September 30, 2010, states:

> "[I]t is Shuster's opinion that this is a finding consistent with traditional business practices employed by many private or public companies in the United States whereby short-term debts are refinanced to improve or restore liquidity allowing those companies to continue operations."

---

only. Therefore, I could not compare the 2010 figures on page 4 of his report to the 2010 figures on his Exhibits B.1 and B.2, because they were not for the same time period.

---

*Patten, MacPhee & Associates, Inc.*

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 8

I have expressed no opinion as to whether the use of the proceeds from the issuance of promissory notes to make interest and principal payments to holders of promissory notes is a traditional business practice. The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine simply whether later investor funds were actually used to pay earlier investors, and whether note proceeds were used to fund payments to Wells and Palmer. Mr. Shuster's statement offers no additional information from an accounting standpoint on this issue.

### Opinion 5 – Sales of Assets Exceeded Net Payments to Wells/Palmer

On page 5 of his report, Mr. Shuster states:

> "Ms. Cook's opinion in ¶28 'that about $13.3 million of the $16.1 million paid to Wells and Palmer came from proceeds from the issuance of promissory notes during the period from January 1, 2007 through September 30, 2010' appears to contradict her own findings, which indicate that sources of funds other than promissory notes totaled $31.4 million during the period January 1, 2007 through September 30, 2010. Shuster has found that in all years other than 2007, the Cook schedule titled source of funds 'Sale of Assets/Ownership Interest' significantly exceeded the Net Distributions to Wells/Palmer."

Mr. Shuster misses the point of the analysis I performed in my report. My analysis considered *all* of the sources and uses of funds flowing through the bank account, and analyzed how the funds from various sources were used to account for all of the withdrawals made from the account.

In order to do this analysis at all, it is necessary to make some assumption as to the order in which the sources of funds will be exhausted to make payments, as funds cannot be used for more than one purpose. Therefore, I chose to make the conservative assumption that funds from the issuance of promissory notes were first used for all purposes other than payments to Wells and Palmer and payments of principal and interest on the promissory notes. I then assumed, as necessary, that the funds from the promissory notes were used to make payments to Wells and Palmer, and that all remaining sources of funds besides funds from promissory notes, including sales of assets, were used to pay principal and interest on promissory notes to the extent possible. Lastly, I determined how much of the payment of principal and interest on the promissory notes must have been funded at a minimum from the proceeds of the promissory notes. In other words, my approach assumes the maximum amount of funds used to pay principal and interest on promissory notes came from sources other than the promissory notes.

This assumption was made to grant Mr. Shuster's client the greatest benefit of the doubt – in other words, it was the most conservative position I could take. As a result, I made the assumption laid out above, and arrived at the conclusions set forth in my report.

*Patten, MacPhee & Associates, Inc.*

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 9

If instead I use Mr. Shuster's assumption that Net Payments to Wells and Palmer were made from sources other than promissory notes, I find that the amount of promissory note proceeds used to pay principal and interest on promissory notes increases to $23.5 million, as shown on Schedule 1 – Rebuttal, attached to this report.

### Opinion 6 – Reasonableness of Distribution of Sales Proceeds

On page 5 of his report, Mr. Shuster states:

> "It is our opinion that it is reasonable for a business to distribute a portion of the proceeds from the sale of assets and ownership interests to the business equity owners."

I have expressed no opinion as to whether it is reasonable for a business to distribute a portion of the proceeds from the sale of assets and ownership interest to the business equity owners. The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine simply whether later investor funds were actually used to pay earlier investors, and whether note proceeds were used to fund payments to Wells and Palmer. Mr. Shuster's statement offers no additional information from an accounting standpoint on this issue.

### Opinion 7 – User Should Consider the Recession

On page 5 of his report, Mr. Shuster states:

> "Ms. Cook further opines in her ¶29 'that revenues from operations and from the sale of assets and ownership interests were insufficient to satisfy debt service during the period from January 1, 2007 through September 30, 2010.' It is Shuster's opinion that a user of Ms. Cook's conclusions should be mindful of the recession experienced by the United States during the last several years."

I have expressed no opinion as to whether a user of my report should consider the recession in reading my report. The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund payments to Wells and Palmer. My analysis was based in fact. My conclusion, which Mr. Shuster quotes and affirms in his report, states simply that revenues from operations and the sale of assets were not sufficient to make payments of principal and interest due on promissory notes during the period from January 1, 2007 through September 30, 2010. Mr. Shuster's statement offers no additional information from an accounting standpoint on this issue.

*Patten, MacPhee & Associates, Inc.*

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 10

### *Opinion 8 – Shuster Analysis of Sources and Uses*

On page 6 of his report, Mr. Shuster states:

> "To allow the reader to see the possible effect of the inclusion of all transactions included in the accounting books and records of St. Anselm; Shuster has prepared an analysis of 'sources of funds' and 'uses of funds' utilizing the information contained within the St. Anselm general ledger for the period January 1, 2006 through December 31, 2011, as presented in **Exhibits B and C**."

In Exhibits B and C attached to Mr. Shuster's report, as noted above, he states that he shows the "effect of all transactions included in the accounting books and records of St. Anselm..." (Shuster Report, page 6)

I have analyzed these exhibits and note that they are incomplete, inaccurate and fail to show what they purportedly show. First, as discussed at length above, Mr. Shuster has not reconciled his source (which he states is the general ledger of St. Anselm) to the bank statements. As a result, his Exhibits B.1 and B.2, which purport to show Sources and Uses of Funds, are simply a compilation of general ledger information which may or may not be related to the actual funds flowing in and out of St. Anselm. Without performing a reconciliation, it cannot be known whether the general ledger accurately shows the deposits to and withdrawals from the bank account, nor can it be known if there are missing or incorrect transactions shown in the general ledger. Therefore, these schedules are misleading.

Second, the sources for the majority of the figures on Exhibits B.1 and B.2 are not noted by Mr. Shuster, and as a result, cannot be traced to the general ledger. On Exhibit B.1, the source for the Promissory Note Proceeds, representing $65,238,408 on this schedule, is not revealed. My own analysis of the credits to the Note Payable account 250 in the general ledger show that Mr. Shuster's figures are significantly lower than what is shown in the general ledger for the period from 2006 through 2009:

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 11

|  | Promissory Note Proceeds Per Shuster Ex B.1 | Credits to Account 250 – Notes Payable Per General Ledger | Variance |
|---|---|---|---|
| 2006 | $        9,395,013 | $        9,793,420 | $        (398,407) |
| 2007 | 15,542,243 | 15,137,397 | 404,846 |
| 2008 | 15,780,723 | 19,464,525 | (3,683,802) |
| 2009 | 16,979,774 | 23,533,724 | (6,553,950) |
|  | $       57,697,753 | $       67,929,066 | $   (10,231,313) |

Similarly, the principal payments shown on Mr. Shuster's Exhibit B.2 are also significantly lower than what is shown in the general ledger for the period from 2006 through 2009:

|  | Promissory Note Principal Payments Per Shuster Ex B.2 | Debits to Account 250 – Notes Payable Per General Ledger | Variance |
|---|---|---|---|
| 2006 | $        5,491,729 | $        6,446,232 | $        (954,503) |
| 2007 | 2,533,553 | 3,065,797 | (532,244) |
| 2008 | 3,174,730 | 6,814,030 | (3,639,300) |
| 2009 | 6,961,514 | 12,264,652 | (5,303,138) |
|  | $       18,161,526 | $       28,590,712 | $   (10,429,186) |

Furthermore, the uses of funds shown on Mr. Shuster's Exhibit B.2 of $148,168,986 exceed the sources of funds shown on Mr. Shuster's Exhibit B.1 of $128,227,246 by nearly $20 million. Mr. Shuster does not explain how these $20 million in payments were covered.

I have analyzed the uses of the amounts shown as received on Mr. Shuster's Exhibit B.1 according to the uses shown on Exhibit B.2. This analysis, shown on Schedule 2 – Rebuttal, makes the assumption that the payments to Wells and Palmer were paid first from every source of funds except proceeds from promissory notes.

Schedule 2 – Rebuttal, which uses Mr. Shuster's assumption that the source of funds used to pay Wells and Palmer was primarily proceeds from the sales of assets and working interests (as he indicated on page 5 of his report), shows $9.9 million of promissory note proceeds being used to pay principal and interest on promissory notes, with the remainder paid from all other sources, and $16.9 million in principal and interest payments coming from an unknown and unexplained source. $21 million of the $27.5 million in payments to Wells

*Patten, MacPhee & Associates, Inc.*

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 12

and Palmer came from the sales of assets and ownership interest, with the remainder from all other sources except promissory note proceeds, and $3 million in payments to them coming from unknown and unexplained sources.

In other words, even using Mr. Shuster's numbers, at least $9.9 million in promissory note proceeds were used to pay principal and interest on promissory notes. Further, the source of $20 million of the payments shown on Mr. Shuster's Exhibit B.2 is unexplained.

As a result of the $20 million discrepancy as well as the variances from the general ledger and the fact that Mr. Shuster did not analyze the bank statements, and therefore could not have reconciled the bank statements to the general ledger, it is my opinion that Mr. Shuster's schedules are inaccurate.  Therefore, Mr. Shuster's analysis does not provide additional information from an accounting standpoint on the sources and uses of the funds flowing through St. Anselm's bank account.

### Exhibit A Opinions and Comments

Mr. Shuster also included with his report Exhibit A, which critiques certain paragraphs included in my Original Report. I have recreated his Exhibit A at Schedule 3 - Rebuttal, and answer each of his comments, critiques and opinions within that Schedule.

### Additional Schedules

In my Original Report, I reserved the right to modify the analysis and conclusion contained in my report if I undertook further analysis of the information provided or if I was provided with additional information. I have modified the schedules included with my Original Report upon completing a more detailed analysis of the 9,434 of check images and deposit slip images for St. Anselm's bank account ending 2986. These modified schedules have been included at Schedule 4 – Rebuttal, showing sources of funds deposited in the account ending 2986, Schedule 5 – Rebuttal, showing uses of funds withdrawn from the account ending 2986, and Schedule 6 – Rebuttal, showing how the sources of funds were expended for various uses. In addition, I have included Schedules 7 – Rebuttal through Schedule 21 – Rebuttal, showing the detail of each of the categories of funds on Schedules 4 – Rebuttal and 5 – Rebuttal.

As a result of my further analysis, the conclusions from my Original Report now read as follows:

    1.     Based on the foregoing, it is my opinion with a reasonable degree of professional certainty that $11.1 million[3] or more of proceeds from the issuance of promissory notes were used to make interest and principal

---

[3] Decreased from $11.2 million in my Original Report.

*Patten, MacPhee & Associates, Inc.*

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 13

        payments to holders of promissory notes during the period from January 1, 2007 through September 30, 2010.

2.      It is my further opinion that about $13.7 million[4] of the $16.2 million[5] paid to Wells and Palmer came from proceeds from the issuance of promissory notes during the period from January 1, 2007 through September 30, 2010.

3.      Finally, it is my further opinion that cash generated from operations and from the sale of assets and ownership interests were insufficient to satisfy debt service during the period from January 1, 2007 through September 30, 2010.[6]

## CONCLUSIONS

Based on the foregoing, it is my opinion with a reasonable degree of professional certainty that:

1.    It is my opinion that Mr. Shuster's Opinions 1, 2, 4, 6, and 7 do not address opinions I expressed in my report, and offer no additional information from an accounting standpoint.

2.    (Mr. Shuster's Opinion #3) It is my opinion that Mr. Shuster's statement that the analysis in my Original Report may be incomplete is incorrect.

3.    (Mr. Shuster's Opinion #3) It is my opinion that the general ledger provided to us is not complete or accurate and should not be relied upon to analyze cash activity in the bank account. It is my further opinion that the bank statements are the most reliable source of information for an analysis of cash activity in the bank account.

4.    (Mr. Shuster's Opinion #5) It is my opinion that $23.5 million of the proceeds from the issuance of promissory notes were used to pay principal and interest on promissory notes, if one adopts Mr. Shuster's assumption that Wells and Palmer were paid from sources other than the proceeds from the issuance of promissory notes.

5.    (Mr. Shuster's Opinion #8) It is my opinion that Exhibits B.1 and B.2 presented by Mr. Shuster with his report purportedly showing Sources and Uses of Funds are inaccurate, and his analysis does not provide additional information from an accounting standpoint on the sources and uses of the funds flowing through St. Anselm's bank account.

---

[4] Increased from $13.3 million in my Original Report.
[5] Increased from $16.1 million in my Original Report.
[6] My Original Report read: "Finally, it is our further opinion that revenues from operations and from the sale of assets and ownership interests…" I changed "revenues" to "cash generated" in order to make the statement clearer.

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 14

6. It is my opinion that without having reconciled the general ledger to the bank statements, Mr. Shuster has not shown whether the general ledger accurately reflects the activity in the bank account. It is my further opinion that for this reason, Mr. Shuster's analyses, which rely on the general ledger, cannot be relied upon to reflect the sources and uses of funds flowing through the St. Anselm bank account.

7. It is my opinion that $11.1 million[7] or more of proceeds from the issuance of promissory notes were used to make interest and principal payments to holders of promissory notes during the period from January 1, 2007 through September 30, 2010.

8. It is my further opinion that about $13.7 million[8] of the $16.2 million[9] paid to Wells and Palmer came from proceeds from the issuance of promissory notes during the period from January 1, 2007 through September 30, 2010.

9. Finally, it is my further opinion that cash generated from operations and from the sale of assets and ownership interests was insufficient to satisfy debt service during the period from January 1, 2007 through September 30, 2010.[10]

**LIMITING CONDITIONS**

This report summarizes my conclusions and opinions based on the work I have performed to date. This report should be read in conjunction with my prior report issued on January 17, 2012. My review of materials relevant to this case is ongoing. Accordingly, I reserve the right to modify the analysis and conclusion contained herein if I undertake further analysis of the information provided or if I am provided additional information or new or additional issues, documents or testimony come to my attention that were not considered in the preparation of this report (such as additional document production, deposition testimony, etc.). I also reserve the right to provide further rebuttal to the reports, opinions or testimony of the defendants, if any. Additional exhibits, charts, summaries or other demonstrative material may be used at trial. My work was limited to the specific procedures and analysis described herein and was based only on the information made available through the date of this report. Accordingly, changes in circumstances after this date could affect the findings outlined in this report. This information has been prepared solely in connection with the <u>Securities and Exchange Commission v. St. Anselm Exploration Co., Michael A. Zakroff, Mark S. Palmer, Anna M.R. Wells, and Steven S. Etkind</u>, and is not intended for reliance in any other context. Patten MacPhee and Associates disclaims any contractual or other responsibility to others

---

[7] Decreased from $11.2 million in my Original Report.
[8] Increased from $13.3 million in my Original Report.
[9] Increased from $16.1 million in my Original Report.
[10] My Original Report read: "Finally, it is our further opinion that revenues from operations and from the sale of assets and ownership interests..." I changed "revenues" to "cash generated" in order to make the statement clearer.

Nancy J. Gegenheimer, Esq.
March 15, 2012
Page 15

based on its use and, accordingly, this information may not be relied upon by anyone other than the Securities and Exchange Commission.

This report is preliminary and the conclusion herein is based on information provided to date.

Very truly yours,

Kristina A. Cook
Financial/Forensic Consultant

KAC:wit
Attachments

# KRISTINA A. COOK, CPA/CFF, CFE

<u>Employment History</u>

<u>Patten, MacPhee & Associates, Inc.</u>
Denver, Colorado

      4/11 to Present    -    Associate at consulting firm specializing in corporate financial planning and litigation support.

<u>Harper Lutz Zuber Hofer & Associates, LLC</u>
Denver, Colorado

      5/05 to 2/11    -    Director of Fraud Services at consulting firm specializing in litigation support and forensic accounting.

<u>Potts And Company, P.C.</u>
Littleton, Colorado

      2/04 to 4/05    -    Accountant at accounting firm offering audit and tax services.

<u>University Of Colorado</u>
Boulder, Colorado

      5/03 to 2/04    -    Accountant III, Office of the University Controller
      5/02 to 7/03    -    Accountant II, Office of the Vice President for Academic Affairs and Research

<u>BKD, LLP</u>
(formerly Baird, Kurtz & Dobson, LLP)
Denver, Colorado

      1/99 to 5/02    -    Senior Tax Accountant at regional accounting firm offering full range of accounting, tax and consulting services.

<u>Gerber Distributing Company</u>
Englewood, Colorado

      3/96 to 12/98    -    Accountant

<u>Junior Achievement, Inc.</u>
Colorado Springs, Colorado

      8/95 to 3/96    -    Development Assistant

<u>City of Saint Mary's</u>
Saint Mary's, Alaska

      2/94 to 6/95    -    City Clerk/Treasurer

Kristina A. Cook

## Educational Background

B.S., Accounting, 1998 (*summa cum laude*), Regis University, Denver, Colorado.

CPA, State of Colorado, 2000.  Member of both the AICPA and the Colorado Society of CPAs.

Certified Fraud Examiner, 2006, member of the Association of Certified Fraud Examiners and the Colorado Chapter of Certified Fraud Examiners.

Certified in Financial Forensics (CFF), 2008.

## Published Article

**"**A Day in the Life of Janice Edwards, Forensic Accountant", *New Accountant Magazine,* 2011 High School Edition.  Co-authored with Mark W. Lehman, CPA, CFE, Associate Professor Emeritus of Accountancy, Adkerson School of Accountancy, Mississippi State University.

Litigation Support Supplement

Expert Witness Testimony

Criminal Prosecution

January, 2012    -    People of the State of Colorado v. Phillip Trujillo,
Case No. 10-CR-749, District Court, Larimer County,
Colorado, re: fraud investigation.

Business Litigation

August, 2011    -    Rosemary Driscoll v. Eric A.M. Dennis, et al.,
Case No. 07-CV-00608-RPM-MJW, United States District
Court for the District of Colorado, re: forensic accounting.

May, 2010    -    Steve Blacker, d/b/a Dustbusters v. The Finishing
Touch Janitorial Service, Inc., Case No. 09-CV-70,
District Court, Boulder County, Colorado, re: damages.

April, 2009    -    Luebke, et al. v. Modesitt, et al., Case No. 2008-CV-4712,
District Court, Jefferson County, Colorado, re: fraud
investigation.

April, 2009    -    Gateway USA, Inc. v. William Eirish, Sr., et al., Case No.
07-CV-3200, District Court, City and County of Denver,
Colorado, re: fraud investigation.

Marital Litigation

May, 2007    -    In re: Marriage of Keller, Case No. 05-DR-314, District
Court, Douglas County, Colorado, re: structure of
pension plans.

Expert Witness Depositions

November, 2011    -    Julia Copeland Cooper v. NCS Pearson, Inc., Case No.
1:10-cv-02840-PAB-CBS in the United States District Court
for the District of Colorado, re: damages.

January, 2011    -    In re: Bowen Wellington Banbury, Case No. 09-
31477ABC, US Bankruptcy Court for the District of
Colorado, re: analysis of financial aspects of Chapter
11 Plan.

August, 2007    -    International Beauty Products v. Beveridge and
Lakhani, Case No. BC352097, Superior Court, County
of Los Angeles, California, re: fraud investigation.

Expert Reports/Consultation

February, 2012    -    Cable Wireline, LLC v. Michael Kenney, Petroleum

Kristina A. Cook
Litigation Support Supplement
Page 4

|  |  |  |
|---|---|---|
|  |  | Pressure Surveys, LLC and Does 1 through 20, inclusive, Case No. 2011cv26 in the Logan County District Court, Sterling, Colorado |
| January, 2012 | - | United States Securities And Exchange Commission v. St. Anselm Exploration Co., Michael A. Zakroff, Mark S. Palmer, Anna M.R. Wells, and Steven S. Etkind, Case No. 11-cv-00668-REB-MJW in the United States District Court for the District of Colorado, re: forensic accounting. |
| December, 2011 | - | John Mark Disorbio v. Julia Copeland Cooper, Case No. 2011CV1523 in the Jefferson County District Court, Jefferson County, Colorado, re: forensic accounting. |
| November, 2011 | - | In re: Estate of Allan R. Pepper, Deceased, Case Number 07PR1116, and Interests of Brian A. Pepper, Ward/Protected Person, Case Number 08PR417 in the Probate Court, City and County of Denver, Colorado, re: misappropriation. |
| November, 2011 | - | Tristant Partners, LLP v. Alpine Bank, et al., Case No. 09CV169 in the San Miguel County District Court, Telluride, Colorado, re: damages. |
| November, 2011 | - | Arrabelle at Vail Square Residential Condominium Association, Inc., Plaintiff, v. Arrabelle at Vail Square, LLC and Vail Resorts Development Company, Defendants, Case No. 09CV320 in the Eagle County District Court, Eagle, Colorado, re: damages. |
| August, 2011 | - | Edra D. Blixseth, Debtor; Richard J. Samson, as Trustee for the Chapter 7 Estate of Edra D. Blixseth v. Western Capital Partners LLC, Case No. 09-60452, Adversary Number 10-00094 in the United States Bankruptcy Court for the District of Montana, re: bankruptcy. |
| July, 2011 | - | People of the State of Colorado v. Richard Dale Mott, Case No. 10CR1209 in the Boulder County District Court, Boulder, Colorado, re: allegations of fraud. |
| May, 2011 | - | Gianzero, et al. v. Wal-Mart Stores, Inc. et al., Case No. 09-cv-00656-REB in the United States District Court for the District of Colorado, re: damages. |
| May, 2011 | - | People of the State of Colorado v. Jennifer Geisick, Case No. 10CR456, in the District Court for Weld County, Colorado, re: allegations of theft. |

2/8/12

**Exhibit B**

**FACTS OR DATA CONSIDERED**

1.      March 1, 2012 report of Stephen Shuster and Jay Freedberg

2.      2010 and 2011 General Ledgers and Trial Balances for St. Anselm Exploration

3.      St. Anselm Exploration 2010 Form 1120-S Tax Return

4.      Documents Bates labeled 055337 through 056609

5.      Documents Bates labeled 056610 through 056671

6.      Documents Bates labeled 056672 through 056889

7.      Dorrell, Darrell D. and Gregory A. Gadawski, <u>Financial Forensics Body of Knowledge</u>, Wiley and Sons, 2012.

SEC v. St. Anselm Exploration Co., et al.
St. Anselm Bank Account Ending 2986
Analysis of Sources and Uses of Funds
Using Shuster's Assumption

Schedule 1 - Rebuttal

**Sources of Funds Used to Pay Money Out (Sources):**

| | Promissory Notes | Sale of Assets/ Ownership Interest | Partnerships | Oil & Gas Revenues | Misc Loan | Net Sweep | Reimbursement | Misc Investor Transactions | Net Deposits from Other Partners/ Affiliates | Other/Unknown | Total Money Received (Sources) | Total Money Paid Out (Uses) | Excess Deposited In/(Difference Paid From) Cash on Hand |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2007** | | | | | | | | | | | | | |
| *Money Paid Out (Uses):* | | | | | | | | | | | | | |
| Other (Including operating expenses) | 3,147,647.18 | | | | | | | | | | 3,147,647.18 | (3,147,647.18) | |
| Net Sweep | 171,734.26 | | | | | | | | | | 171,734.26 | (171,734.26) | |
| Net Transfers to Payroll Account | 776,100.00 | | | | | | | | | | 776,100.00 | (776,100.00) | |
| Net Distributions to Other Partners/Affiliates | 164,608.22 | | | | | | | | | | 164,608.22 | (164,608.22) | |
| Partnerships | 3,580,000.00 | | | | | | | | | | 3,580,000.00 | (3,580,000.00) | |
| Net Distributions to Wells/Palmer | 1,029,675.94 | 2,066,719.86 | 729,339.08 | 102,466.27 | 141,594.18 | | 32,739.37 | | | 294,436.57 | 4,396,971.27 | (4,396,971.27) | |
| Promissory Notes | 5,336,977.87 | | | | | | | | | | 5,336,977.87 | (5,441,055.55) | |
| **Total** | 14,206,743.67 | 2,066,719.86 | 729,339.08 | 102,466.27 | 141,594.18 | | 32,739.37 | | | 294,436.57 | 17,574,038.80 | (17,678,116.48) | (104,077.68) |
| **2008** | | | | | | | | | | | | | |
| *Money Paid Out (Uses):* | | | | | | | | | | | | | |
| Other (Including operating expenses) | 1,141,655.75 | | | | | | | | | | 1,141,655.75 | (1,141,655.75) | |
| Net Sweep | 300,358.63 | | | | | | | | | | 300,358.63 | (300,358.63) | |
| Net Transfers to Payroll Account | 1,066,500.00 | | | | | | | | | | 1,066,500.00 | (1,066,500.00) | |
| Net Distributions to Other Partners/Affiliates | 3,392,952.19 | | | | | | | | | | 3,392,952.19 | (3,392,952.19) | |
| Partnerships | 4,413,000.00 | | | | | | | | | | 4,413,000.00 | (4,413,000.00) | |
| Net Distributions to Wells/Palmer | | 8,844,124.85 | | | | | | | | | 8,844,124.85 | (8,844,124.85) | |
| Promissory Notes | 6,088,840.06 | 2,255,875.15 | 910,245.00 | 166,723.14 | 280,000.00 | | | 5,277.78 | | 130,933.15 | 9,837,894.28 | (9,880,179.38) | |
| **Total** | 16,403,306.63 | 11,100,000.00 | 910,245.00 | 166,723.14 | 280,000.00 | | | 5,277.78 | | 130,933.15 | 28,996,485.70 | (29,038,770.80) | (42,285.10) |
| **2009** | | | | | | | | | | | | | |
| *Money Paid Out (Uses):* | | | | | | | | | | | | | |
| Other (Including operating expenses) | 1,216,506.61 | | | | | | | | | | 1,216,506.61 | (1,216,506.61) | |
| Net Sweep | 652,800.00 | | | | | | | | | | 652,800.00 | (652,800.00) | |
| Net Transfers to Payroll Account | 7,721,157.50 | | | | | | | | | | 7,721,157.50 | (7,721,157.50) | |
| Net Distributions to Other Partners/Affiliates | 1,792,018.68 | | | | | | | | | | 1,792,018.68 | (1,792,018.68) | |
| Partnerships | 5,880,564.60 | | | | | | | | | | 5,880,564.60 | (5,880,564.60) | |
| Net Distributions to Wells/Palmer | | 8,350,000.00 | 1,663,080.43 | 106,772.22 | 100,000.00 | | | | | | 10,219,852.65 | | |
| Promissory Notes | | | | | | 596,049.78 | | 24,596.22 | 396,435.94 | 10,407.02 | 1,027,488.96 | | |
| Excess Received over Money Paid Out | | | | | | | | | | 12,099.19 | 12,099.19 | | |
| **Total** | 15,471,028.71 | 8,350,000.00 | 1,663,080.43 | 106,772.22 | 100,000.00 | 596,049.78 | | 24,596.22 | 396,435.94 | 22,506.21 | 26,730,469.51 | (26,718,370.32) | 12,099.19 |

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Forrest, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.
St. Anselm Bank Account Ending 2986
Analysis of Sources and Uses of Funds
Using Shsetter's Assumption

Schedule 1 - Rebuttal

**Sources of Funds Used to Pay Money Out (Sources):**

| | Promissory Notes | Sale of Assets/ Ownership Interest | Partnerships | Oil & Gas Revenues | Misc Loan | Net Sweep | Reimbursement | Misc Investor Transactions | Net Deposits from Other Partners/ Affiliates | Other/Unknown | Total Money Received (Sources) | Total Money Paid Out (Uses) | Excess Deposited In/(Difference Paid From) Cash on Hand |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2010** | | | | | | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | | | | | | |
| Other (including operating expenses) | 2,459,517.57 | | | | | | | | | | 2,459,517.57 | (2,459,517.57) | |
| Net Sweep | | 1,045,064.37 | | | | | | | | | 1,045,064.37 | (1,045,064.37) | |
| Net Transfers to Payroll Account | 137,000.00 | | | | | | | | | | 137,000.00 | (137,000.00) | |
| Net Distributions to Other Partners/Affiliates | 78,273.34 | | | | | | | | | | 78,273.34 | (78,273.34) | |
| Partnerships | 259,147.50 | | | | | | | | | | 259,147.50 | (259,147.50) | |
| Promissory Notes | 6,207,696.52 | 1,191,505.37 | 1,299,565.78 | 313,181.41 | | 27.91 | | | | 284,698.54 | 9,296,815.53 | (9,351,141.40) | (54,325.87) |
| Total | 9,141,634.93 | 2,236,569.74 | 1,299,565.78 | 313,181.41 | - | 27.91 | - | - | - | 284,698.54 | 13,275,818.31 | (13,330,144.18) | (54,325.87) |
| **Total** | | | | | | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | | | | | | |
| Other (including operating expenses) | 7,965,327.11 | | | | | | | | | | 7,965,327.11 | (7,965,327.11) | |
| Net Sweep | 472,092.89 | | | | | | | | | | 472,092.89 | (472,092.89) | |
| Net Transfers to Payroll Account | 2,632,400.00 | | | | | | | | | | 2,632,400.00 | (2,632,400.00) | |
| Net Distributions to Other Partners/Affiliates | 3,635,833.75 | | | | | | | | | | 3,635,833.75 | (3,635,833.75) | |
| Partnerships | 15,973,305.00 | | | | | | | | | | 15,973,305.00 | (15,973,305.00) | |
| Net Distributions to Wells/Palmer | 1,029,875.94 | 13,747,927.76 | 729,339.08 | 102,466.27 | 141,594.18 | | 32,739.37 | | | 294,436.57 | 16,078,178.17 | (16,078,178.17) | |
| Promissory Notes | 23,514,279.05 | 10,005,361.84 | 3,872,891.21 | 586,676.77 | 380,000.00 | 596,077.69 | | 29,874.00 | 396,435.94 | 425,978.71 | 39,807,575.21 | (40,008,264.86) | (200,689.65) |
| Excess Received over Money Paid Out | | | | | | | | | | 12,099.19 | 12,099.19 | | 12,099.19 |
| Total | 55,222,913.74 | 23,753,289.60 | 4,602,230.29 | 689,143.04 | 521,594.18 | 596,077.69 | 32,739.37 | 29,874.00 | 396,435.94 | 732,514.47 | 86,576,812.32 | (86,765,401.78) | (188,589.46) |

Patten, MacPhee & Associates, Inc.

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Schedule 2 - Rebuttal

SEC v. St. Anselm Exploration Co., et al.
**St. Anselm General Ledger - Account 100.1**
Analysis of Sources and Uses of Funds
Using Shuster's Figures and Assumption

Sources of Funds Used to Pay Money Out (Sources):

| | Promissory Notes | Sale of Assets/ Ownership Interest | Partnerships | Oil & Gas Revenues | Net Deposits from Other Partners/ Affiliates | Unknown (Calculated) | Total Money Received (Sources): | Total Money Paid Out (Uses): |
|---|---|---|---|---|---|---|---|---|
| **2006** | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | |
| Other (Including operating expenses) | $ 2,580,661 | | | | | | $ 2,580,661 | $ (2,580,661) |
| Net Reimbursement | 198,961 | | | | | | 198,961 | (198,961) |
| Miscellaneous Loans | 3,805,081 | | | | | | 3,805,081 | (3,805,081) |
| Partnerships | | | | | | | - | - |
| Net Distributions to Wells/Palmer | | 6,914,583 | | | | | 6,914,583 | (6,914,583) |
| Promissory Notes | 2,810,310 | 3,770,803 | 453,974 | 481,528 | - | 1,078,161 | 8,594,776 | (8,594,776) |
| Total | $ 9,395,013 | $ 10,685,386 | $ 453,974 | $ 481,528 | $ - | $ 1,078,161 | $ 22,094,062 | $ (22,094,062) |
| **2007** | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | |
| Other (Including operating expenses) | $ 5,883,919 | | | | | | $ 5,883,919 | $ (5,883,919) |
| Net Reimbursement | 96,775 | | | | | | 96,775 | (96,775) |
| Miscellaneous Loans | 866 | | | | | | 866 | (866) |
| Partnerships | 3,219,004 | | | | | | 3,219,004 | (3,219,004) |
| Net Distributions to Wells/Palmer | | 684,552 | 990,478 | 130,039 | 275,000 | 3,008,661 | 5,088,730 | (5,088,730) |
| Promissory Notes | 5,066,679 | | | | - | 183,566 | 5,250,245 | (5,250,245) |
| Total | $ 14,267,243 | $ 684,552 | $ 990,478 | $ 130,039 | $ 275,000 | $ 3,192,227 | $ 19,539,539 | $ (19,539,539) |
| **2008** | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | |
| Other (Including operating expenses) | $ 8,644,014 | | | | | | $ 8,644,014 | $ (8,644,014) |
| Net Reimbursement | (99,164) | | | | | | (99,164) | 99,164 |
| Miscellaneous Loans | 866 | | | | | | 866 | (866) |
| Partnerships | 5,588,000 | | | | | | 5,588,000 | (5,588,000) |
| Net Distributions to Wells/Palmer | | 10,045,359 | | | | | 10,045,359 | (10,045,359) |
| Promissory Notes | 1,525,739 | 22,783 | 2,862,160 | 184,742 | 123,000 | 4,279,550 | 8,997,974 | (8,997,974) |
| Total | $ 15,657,723 | $ 10,068,142 | $ 2,862,160 | $ 184,742 | $ 123,000 | $ 4,279,550 | $ 33,175,317 | $ (33,175,317) |
| **2009** | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | |
| Other (Including operating expenses) | $ 9,698,377 | | | | | | $ 9,698,377 | $ (9,698,377) |
| Net Reimbursement | 2,389 | | | | | | 2,389 | (2,389) |
| Miscellaneous Loans | (37,117) | | | | | | (37,117) | 37,117 |
| Partnerships | 5,239,327 | | | | | | 5,239,327 | (5,239,327) |
| Net Distributions to Wells/Palmer | | 1,551,436 | | | | | 1,551,436 | (1,551,436) |
| Promissory Notes | 526,053 | 5,677,091 | 5,456,617 | 190,887 | 1,550,745 | 4,405,721 | 17,807,114 | (17,807,114) |
| Total | $ 15,429,029 | $ 7,228,527 | $ 5,456,617 | $ 190,887 | $ 1,550,745 | $ 4,405,721 | $ 34,261,526 | $ (34,261,526) |

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Patten, MacPhee & Associates, Inc.

**SEC v. St. Anselm Exploration Co., et al.**
**St. Anselm General Ledger - Account 100.1**
**Analysis of Sources and Uses of Funds**
**Using Shuster's Figures and Assumption**

Schedule 2 - Rebuttal

*Sources of Funds Used to Pay Money Out (Sources):*

| | Promissory Notes | Sale of Assets/ Ownership Interest | Partnerships | Oil & Gas Revenues | Net Deposits from Other Partners/ Affiliates | Unknown (Calculated) | Total Money Received (Sources): | Total Money Paid Out (Uses): |
|---|---|---|---|---|---|---|---|---|
| **2010** | | | | | | | | |
| *Money Paid Out (Uses):* | | | | | | | | |
| Other (Including operating expenses) | $ 6,371,498 | $ | $ | $ | $ | | $ 6,371,498 | $ (6,371,498) |
| Net Reimbursement | 475,228 | | | | | | 475,228 | (475,228) |
| Miscellaneous Loans | 37,117 | | | | | | 37,117 | (37,117) |
| Partnerships | 1,447,792 | 2,703,590 | | | | | 4,151,382 | (4,151,382) |
| Net Distributions to Wells/Palmer | | 1,708,967 | | 450,812 | 1,498,654 | 3,720,683 | 1,708,967 | (1,708,967) |
| Promissory Notes | | 5,391,513 | - | | | | 11,061,662 | (11,061,662) |
| Total | $ 8,331,635 | $ 9,804,070 | $ - | $ 450,812 | $ 1,498,654 | $ 3,720,683 | $ 23,805,854 | $ (23,805,854) |
| **2011** | | | | | | | | |
| *Money Paid Out (Uses):* | | | | | | | | |
| Other (Including operating expenses) | $ 162,820 | $ 1,634,239 | $ 3,837,868 | | $ | $ | $ 5,634,927 | $ (5,634,927) |
| Net Reimbursement | | | 1,742 | | | | 1,742 | (1,742) |
| Miscellaneous Loans | - | - | - | | | | - | - |
| Partnerships | - | - | 1,524,917 | | | | 1,524,917 | (1,524,917) |
| Net Distributions to Wells/Palmer | - | - | 2,227,237 | | | | 2,227,237 | (2,227,237) |
| Promissory Notes | - | - | 2,451,237 | 36,757 | 150,473 | 3,265,393 | 5,903,860 | (5,903,860) |
| Total | $ 162,820 | $ 1,634,239 | $ 10,043,001 | $ 36,757 | $ 150,473 | $ 3,265,393 | $ 15,292,683 | $ (15,292,683) |
| **Total** | | | | | | | | |
| *Money Paid Out (Uses):* | | | | | | | | |
| Other (Including operating expenses) | $ 33,341,289 | $ 1,634,239 | $ 3,837,868 | $ - | $ - | $ - | $ 38,813,396 | $ (38,813,396) |
| Net Reimbursement | 475,228 | - | 1,742 | - | - | - | 476,970 | (476,970) |
| Miscellaneous Loans | 198,961 | - | - | - | - | - | 198,961 | (198,961) |
| Partnerships | 19,299,204 | 2,703,590 | 1,524,917 | - | - | - | 23,527,711 | (23,527,711) |
| Net Distributions to Wells/Palmer | - | 20,904,897 | 3,217,715 | 130,039 | 275,000 | 3,008,661 | 27,536,312 | (27,536,312) |
| Promissory Notes | 9,928,781 | 14,862,190 | 11,223,988 | 1,344,726 | 3,322,872 | 16,933,074 | 57,615,631 | (57,615,631) |
| Total | $ 63,243,463 | $ 40,104,916 | $ 19,806,230 | $ 1,474,765 | $ 3,597,872 | $ 19,941,735 | $ 148,168,981 | $ (148,168,981) |

Source: Shuster Report Exhibits B.1 and B.2

Patten, MacPhee & Associates, Inc.

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

SEC v. St. Anselm, et al.                    Schedule 3 - Rebuttal

¶ = Reference to Cook's Report paragraph numbers as shown on **Appendix 4** to Mr. Shuster's report.

| Paragraph Reference Number | Comments and Findings |
| --- | --- |
| ¶11 | Ms. Cook commented: "According to the SEC's complaint, prior to 2007, St. Anselm focused on oil and gas well exploration, development and sale."<br><br>It is true that St. Anselm was and still is in this business (as well as geothermal energy exploration, development and sale). It is unknown if Ms. Cook understands, because she did not address, the business model for both the oil and gas exploration, development, and sale; as well as the geothermal energy exploration, development and sale requires significant "front end" investment and the positive cash flow (and profits) from the activity itself is realized "on the back end".<br><br>The length of the cycle from exploration to development to sale may have a significant impact on the timing of cash flows received by St. Anselm. |
| | _Cook Response:_<br><br>The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund distributions to Wells and Palmer. I have expressed no opinion as to the impact of the length of the expected project cycle on the timing of the cash flows of St. Anselm. Mr. Shuster's statement offers no additional information from an accounting standpoint on the opinions contained in my report. |
| ¶12 | "Ms. Cook commented: "It is our understanding that around 2007, the principals of St. Anselm decided to alter its main business, and to move company operations into the exploration and development of geothermal energy."<br><br>Again, it should be noted that the geothermal energy exploration and development requires significant "front end" investment and the positive cash flow (and profits) from the activity itself is realized "on the back end".<br><br>The length of the cycle from exploration to development to sale may have a significant impact on the timing of cash flows received by St. Anselm. |

This schedule is for your use solely in connection with the above referenced matter, and may not be used for any other purpose.

SEC v. St. Anselm, et al.                    Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶12 (continued) | *Cook Response:*<br><br>The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund distributions to Wells and Palmer. I have expressed no opinion as to the impact of the length of the expected project cycle on the timing of the cash flows of St. Anselm. Mr. Shuster's statement offers no additional information from an accounting standpoint on the opinions contained in my report. |
| ¶13 | Ms. Cook commented: "In order to finance its operations, for a number of years St. Anselm had sold promissory notes to private investors, a practice that continued at least through the third quarter of 2010, the latest date for which we have records. Between January 1, 2007 and September 30, 2010, St. Anselm received approximately $49 million in cash proceeds from promissory notes. We understand that nearly all of the promissory notes had maturities of 90 days, one year or three years, and the interest rates ranged from 18 to 36 percent per year. The notes were personally guaranteed by Wells and Palmer; otherwise, the notes were unsecured."<br><br>The amount of cash proceeds received from promissory notes of $49 million is inconsistent with information contained elsewhere in the Cook Report. Ms. Cook should correct for inconsistencies in her report.<br><br>We can reasonably observe that St. Anselm's debt structure was such that it (as well as many other private and public companies) frequently needed to re-finance (or seek other methods of financing it operations) in order to pay costs, overhead, interest, and principal amounts on maturing notes payable.<br><br>Shuster understands that St. Anselm did not have a working line of credit and elected to finance its activities in the manner described by Ms. Cook.<br><br>*Cook Response:*<br><br>The relevant sentence in the Background Section of my Original Report should have read, "Between January 1, 2007 and September 30, 2010, St. Anselm received over $55.2 million in cash proceeds from promissory notes."<br><br>In answer to Mr. Shuster's other assertions: the scope of my report was to analyze the historical bank records during the period from January 1, 2007 |

This schedule is for your use solely in connection with the above referenced matter, and may not be used for any other purpose.

SEC v. St. Anselm, et al.                                Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶13 (continued) | *Cook Response (continued):*<br><br>through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund distributions to Wells and Palmer. I have expressed no opinion as to St. Anselm's cash needs, its methods of financing or whether other public or private companies are structured similarly.<br><br>Mr. Shuster's statement offers no additional information from an accounting standpoint on the opinions contained in my report. |
| ¶16 | Ms. Cook commented: "The sources of funds into the Bank Account are shown on Schedule 1 for the time period from January 1, 2007 through September 30, 2010, the latest date for which general ledgers were available. As shown on this schedule, over $55.2 million of the $86.6 million in cash receipts during this period, 63.8%, came from promissory notes, and nearly $23.8 million, or 27.4%, came from the sales of assets and working ownership interests. Another $4.6 million was deposited into St. Anselm from the partnerships owned by it, including St. Anselm CKU, S1. Anselm KXP, Standard Steam, Terra Caliente and Agua Caliente. The remaining 3.5% of deposits came from sales of oil and gas, miscellaneous loans, reimbursements, and other miscellaneous sources."<br><br>It should be noted the $4.6 Million, which was deposited from the partnerships owned by St. Anselm, potentially represents profits generated by those entities. Shuster understands that amounts approximating several million dollars have not been distributed to St. Anselm from partnerships in which it invests and those funds are retained for further exploration and development by those partnerships.<br><br>*Cook Response:*<br><br>The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund distributions to Wells and Palmer. I have expressed no opinion as to the nature of the deposits into the bank account beyond noting their source, nor have I expressed any |

This schedule is for your use solely in connection with
the above referenced matter, and may not be used
for any other purpose.

SEC v. St. Anselm, et al.                        Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶16 (continued) | *Cook Response (continued):* <br><br> opinion as to funds that have not been deposited in St. Anselm's bank account, whatever the purpose of their being withheld from St. Anselm. Mr. Shuster's statement offers no additional information from an accounting standpoint on the opinions contained in my report. <br><br> Further, note that at September 30, 2010, the balance in St. Anselm's bank account ending 2986 was $24,449.56. As a result, I conclude that the $4.6 million paid to St. Anselm by the partnerships and deposited in the bank account had been removed from the bank account by September 30, 2010. |
| ¶16 | Ms. Cook concludes that $55.2 Million of the Total Source of Funds of $86.6 (63.8%) came from Promissory Notes. <br><br> We find that for the 6 years we analyzed, the Total Source of Funds was $128.2 Million and the Total for Net Proceeds from Promissory Notes excluding partners was $63.2 Million or 49.3%. <br><br> *Cook Response:* <br><br> The period under analysis in my report was the period from January 1, 2007 through September 30, 2010. Per the First Amended Complaint, the relevant time period was January 1, 2007 through September 30, 2010. I have expressed no opinion on the sources and uses of funds during 2006, during the last quarter of 2010 and during 2011. <br><br> Furthermore, Mr. Shuster used the general ledger and not the bank statements to perform his analysis. Without performing a reconciliation to the bank statements, it is unknown whether the general ledger accurately reflects the activity in the bank account. Therefore, Mr. Shuster's figures cannot be relied upon for the period he analyzed. |
| ¶18 | Ms. Cook commented: "Another $16.0 million, 18.4% of the disbursements, were payments to the partnerships owned by it" <br><br> We would characterize many of these payments to the partnerships as "investments", which Shuster understands is a standard business practice of St. Anselm. <br><br> *Cook Response:* <br><br> The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and |

SEC v. St. Anselm, et al.                                    Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶18 (continued) | *Cook Response (continued):*<br><br>whether note proceeds were used to fund distributions to Wells and Palmer. I have expressed no opinion as to how payments identified should be further characterized. Mr. Shuster's statement offers no additional information from an accounting standpoint on the opinions contained in my report. |
| ¶18 | Ms. Cook concludes that 46.1% of the $86.8 Million of Uses of Funds (for 3.75 years) was used to pay the Promissory Notes.<br><br>We find that for the 6 years we analyzed, the total Uses of Funds was $148.2 Million and the total for Non-partners debt service was $57.6 Million ($23.0 Million + $34.6 Million) or 38.9%.<br><br>*Cook Response:*<br><br>The period under analysis in my report was the period from January 1, 2007 through September 30, 2010. Per the First Amended Complaint, the relevant time period was January 1, 2007 through September 30, 2010. I have expressed no opinion on the sources and uses of funds during 2006, during the last quarter of 2010 and during 2011.<br><br>Furthermore, Mr. Shuster used the general ledger and not the bank statements to perform his analysis. Without performing a reconciliation to the bank statements, it is unknown whether the general ledger accurately reflects the activity in the bank account. Therefore, Mr. Shuster's figures cannot be relied upon for the period he analyzed. |
| ¶19 | Ms. Cook commented: "We were unable to account for all deposits and withdrawals ...."<br><br>Based on this statement it appears that Ms. Cook's method of analysis is may be imperfect and may likely require substantial interviews with Company personnel and access to all books and records of the Company, as well as its partnership's books and records, to fill in the gaps of her analysis.<br><br>Shuster has identified the results of the Cook Report's analysis does not or may not account for approximately $14.5 million in combined source and use transactions.<br><br>*Cook Response:*<br><br>This statement is incorrect. The referenced sentence from my report reads: "We were ***able*** to account for all deposits and withdrawals on these two |

SEC v. St. Anselm, et al.                    Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶19 (continued) | *Cook Response (continued):*<br><br>schedules." (Emphasis added) As discussed at length in the narrative of our report beginning on page 4, our analysis was able to account for all deposits to and withdrawals from St. Anselm's operating bank account ending in 2986. As a result, Mr. Shuster's assertion that our "method of analysis may be imperfect" is not supported by his analysis.<br><br>As further discussed at length in the narrative of our report beginning on page 5, Mr. Shuster's analysis showing that "the Cook report's analysis does not or may not account for approximately $14.5 million in combined source and use transactions" is flawed. Mr. Shuster did not analyze the bank account, and did not reconcile the bank account to the general ledger. He bases his analysis on the general ledger without identifying whether the general ledger reflects the actual flow of cash in and out of the bank account as shown on the bank statements. Without performing a reconciliation to the bank statements, it is unknown whether the general ledger accurately reflects the activity in the bank account. Therefore, Mr. Shuster's figures cannot be relied upon for the period he analyzed.<br><br>The scope of my report was to analyze the transactions in the bank account. Therefore, Mr. Shuster's assertion that my analysis of the bank account is incomplete based on his analysis of the general ledger is an incorrect assertion, and does not offer any additional information from an accounting standpoint regarding the opinions contained in my report. |
| ¶21 | Ms. Cook commented: "In completing our analysis, we have made the conservative assumption that all monies received from the issuance of promissory notes were first used to pay all disbursements except those related to the promissory notes. Thus we assumed that the promissory note proceeds were first used to pay things like payroll and other operating expenses, were disbursed to the partnerships owned by St. Anselm, and/or were used to pay distributions to the partners and other affiliated parties. We also assumed that payments on the promissory notes were paid first from all sources of funds except the proceeds of promissory notes issued. However, in three of the four years under analysis, the proceeds from promissory notes were the only source of funds available to pay the remaining interest and principal on promissory notes."<br><br>It is Shuster's opinion this assumption is not reasonable. The subscription agreements clearly indicate "There are no constraints on the Company's use of cash, whether from debt financings or operations". I fail to understand Ms. Cook's point, and I disagree with her assumption. Due to the short-term nature of the promissory notes, it is more likely the proceeds of the new notes would provide a |

SEC v. St. Anselm, et al.                                    Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶21 (continued) | source of funds to pay-off maturing notes and then the payment of interest on all of the promissory notes.<br><br>Furthermore, we noted that Ms. Cook does not disclose in this paragraph that a substantial portion of the "new" promissory notes as well as other funds received were used to invest in oil and gas and geothermal activities through their partnerships. |
| | *Cook Response:*<br><br>The scope of my report was to analyze the historical bank records during the period from January 1, 2007 through September 30, 2010 to determine whether later investor funds were used to pay earlier investors, and whether note proceeds were used to fund distributions to Wells and Palmer. I therefore assumed, to the benefit of Mr. Shuster's client, that the source of funds used to pay earlier investors and to pay Wells and Palmer was any source except the promissory notes.<br><br>In disagreeing with my assumption, Mr. Shuster would have me assume prior to doing the analysis that earlier investors' money was used to pay later investors. This would have been contrary to my role, as it was incumbent upon me to exhaust all other sources of funds for payments to the investors. My analysis does this, and concludes that investor money was used to repay investors.<br><br>Mr. Shuster's statement that I did not discuss in this paragraph the use of promissory note proceeds to make payments to partnerships is misleading. The use of promissory note proceeds is clearly shown on Schedule 3 to my report, including the payments to partnerships. |
| ¶24 | Ms. Cook commented: "Finally, as shown on Schedule 3, St. Anselm's total revenues from oil and gas sales totaled only approximately $689,000 during the four years of our analysis. The proceeds from sales of assets and ownership interests totaled approximately $23.8 million, for a total of about $24.5 million. As the debt service for this same period totaled over $40 million, it is clear that revenues from oil and gas alone were insufficient to service the debt, and even selling off assets and ownership interests did not cover the debt service."<br><br>It is clear that the Company is not in the "production" side of the oil and gas business (as discussed by Ms. Cook in her report) and therefore the Company and its lenders should not have expected the "revenues from oil and gas alone" to be "sufficient to service debt". |

This schedule is for your use solely in connection with the above referenced matter, and may not be used for any other purpose.

Page 7 of 12

SEC v. St. Anselm, et al.                                    Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶24 (continued) | *Cook Response:*<br><br>It was beyond the scope of my report to opine as to what the Company and its lenders should have expected regarding the source of funds to pay principal and interest on the promissory notes, as well as which side of the oil and gas business St. Anselm occupied.<br><br>My conclusion was that cash receipts from operating revenues were insufficient to service the debt. In fact, per my analysis, all funds received by St. Anselm from sources other than the proceeds of promissory notes totaled $31 million during the period under analysis, whereas debt service during the same period totaled $40 million. All funds received by St. Anselm from sources other than the proceeds of promissory notes were insufficient to service the debt. |
| ¶24<br>¶21 | Ms. Cook commented: "Even selling off assets and ownership interests did not cover the debt service."<br><br>1)   She seems to be implying that selling off assets and ownership interests is an "extraordinary" event. Selling assets and partnership interests is clearly a normal part of their business model and is represented in our analysis of the last 6 years of the Company's operations.<br><br>2)   In our analysis, the results of the Company's business operations over the 6 years we reviewed, the proceeds from the Company's operations (Sale of Assets, Partnerships, and Oil & Gas Revenues) of $61.4 Million are in excess of the debt service to non-partners of $57.6 Million.<br><br>*Cook Response:*<br><br>It was beyond the scope of my report to opine as to whether selling off assets and ownership interests was an "extraordinary" event or was normal, and therefore I did not render such an opinion. Mr. Shuster's statement guessing as to what I was "implying" does not add any information from an accounting standpoint to the opinion rendered in my report.<br><br>Further, the period under analysis in my report was from January 1, 2007 through September 30, 2010. Per the First Amended Complaint, the relevant time period was January 1, 2007 through September 30, 2010. I have expressed no opinion on the sources and uses of funds during 2006, during the last quarter of 2010 and during 2011. |

SEC v. St. Anselm, et al.                    Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶24 ¶21 (continued) | *Cook Response (continued):* <br><br> However, I do note that Mr. Shuster reports over $1 million less in funds from the Sale of Assets, Partnerships and Oil & Gas Revenues in 2007, nearly $1 million more in funds from the Sale of Assets, Partnerships and Oil & Gas Revenues in 2008, and over $2.7 million more in funds from the Sale of Assets, Partnerships and Oil & Gas Revenues in 2009 than was shown in the bank statements for these periods. As a result, I do not believe Mr. Shuster's numbers can be relied upon to report accurately the sources and uses of funds during these periods. |
| ¶28 ¶23 ¶22 | Ms. Cook commented: "It is our further opinion that about $13.3 million of the $16.1 million paid to Wells and Palmer came from proceeds from the issuance of promissory notes during the period from January 1, 2007 through September 30, 2010." <br><br> In our opinion this is may be an inaccurate conclusion as St. Anselm received over $29 million dollars in the 3 ¾ years that Ms. Cook described as the "Sale of Assets/Ownership Interests", "Partnerships", and "Oil & Gas Revenues". This amount is well in excess of the $16.1 million that she identified as "Net Distributions to Wells/Palmer". <br><br> It is Shuster's opinion that without performing a temporal analysis of cash flows Ms. Cook may not be able to identify specific uses for cash received by St. Anselm. If Ms. Cook has performed a temporal analysis it was not included with nor described by her report. <br><br> *Cook Response:* <br><br> As discussed at length above and in the narrative to my report, in order to perform my analysis, I made the conservative assumption that funds from the issuance of promissory notes were first used for all purposes other than payments to Wells and Palmer and payments of principal and interest on the promissory notes. I then assumed, as necessary, that the funds from the promissory notes were used to make payments to Wells and Palmer, and then, lastly, in payment of principal and interest on the promissory notes. <br><br> In order to do this analysis at all, it is necessary to make some assumption as to the order in which the sources of funds will be exhausted to make payments, as funds cannot be used for more than one purpose. As a result, I made the assumption laid out above, and arrived at the conclusions set forth in my report. |

This schedule is for your use solely in connection with the above referenced matter, and may not be used for any other purpose.

SEC v. St. Anselm, et al.                                    Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶28<br>¶23<br>¶22<br>(continued) | *Cook Response (continued):*<br><br>Mr. Shuster has committed an error in his analysis by asserting that the funds from these sources (Sale of Assets, Partnerships, and Oil & Gas Revenues) exceed payments to Wells and Palmer and payments of principal and interest on the promissory notes. However, he does not point out to the reader that these sources do not exceed both payment categories together. As a result, the logic behind his assertions is faulty, as he represents that payments in both categories are covered by receipts from Sale of Assets, Partnerships, and Oil & Gas Revenues, when in fact they fall nearly $24 million short over the six years he reviewed, using his numbers.<br><br>The funds cannot be used to pay both the principal and interest on the promissory notes and to make payments to Wells and Palmer. Therefore, I find that Mr. Shuster's opinion that my conclusion regarding the source of the funds used to pay Wells and Palmer "may be an inaccurate conclusion" is itself incorrect.<br><br>Mr. Shuster further opines that "without performing a temporal analysis of cash flows Ms. Cook may not be able to identify specific uses for cash received by St. Anselm. If Ms. Cook has performed a temporal analysis it was not included with nor described by her report."<br><br>I find this opinion to be peculiar in that I did perform an analysis by year for the period under analysis. I am unsure what a "temporal analysis" means if not an analysis by time period. As a result, I disagree with Mr. Shuster's opinion and affirm that I did present a "temporal analysis" – in other words, an analysis by time period – of St. Anselm's cash flows. |
| ¶29 | Ms. Cook commented: "Finally, it is our further opinion that revenues from operations and from the sale of assets and ownership interests were insufficient to satisfy debt service during the period from January 1, 2007 through September 30, 2010."<br><br>In offering this opinion Ms. Cook does not address:<br><br>• St. Anselm's partnership investments and the impact of those partnerships potentially retaining some of their cash for future exploration and development.<br><br>• Increases in the fair market value of the properties that St. Anselm has purchased, explored, and developed (or is in the process thereof). |

This schedule is for your use solely in connection with the above referenced matter, and may not be used for any other purpose.

Page 10 of 12

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶29 (continued) | **Cook Response:**<br><br>The scope of my report was to analyze the sources and uses of cash as proven by the historical bank records during the period from January 1, 2007 through September 30, 2010. The impact of the business decisions of the partnerships in which St. Anselm had invested was beyond the scope of my report, as was any impact of changes in fair market value, as neither of these things had an impact on the sources and uses of cash. Mr. Shuster's statement offers no additional information from an accounting standpoint on the opinions contained in my report. |
| ¶29 (Should refer to Exhibit B, marked as ¶38 in Appendix 4 to Mr. Shuster's report ) | We were not provided and therefore have not considered the following documents in our analysis as numbered in the Cook Report.<br><br>4.  St. Anselm Bank Statements, Accounts Ending 2986, 1586<br>7.  SEC Analysis of Loan Proceeds, Annual Detail/Summaries, Etkind Investments, Lender Principal Payment Schedule, Subsidiaries' Income & Loss Calculations<br>8.  Investor Documents<br>    a. Melvyn & Christy Baron<br>    b. Morteza Jafari<br>    c. Sarah Blackwood<br>    d. Susan & Melvin Machac<br>9.  St. Anselm Investor File Production, Bates 000001 -005332<br>10. St. Anselm Investor File Production, Bates 005642-007481<br>11. St. Anselm Investor File Production, Bates 007483-009051<br>12. St. Anselm Investor File Production, Bates 026551 -029524<br>13. St. Anselm Investor File Production, Bates 031350-033088<br>14. St. Anselm Investor File Production, Bates 034528- 042324<br>15. Bank Statements, Bates SEC-DORA030030 - 042065<br>16. Payroll Records, Steve Etkind- 1/2/06-4/30/2010<br>17. Promissory Note Spreadsheet<br>18. Agua Caliente Statements, Bank Deposits, Checks<br>19. Terra Caliente Statements, Bank Deposits, Checks, Tax Returns<br>20. St. Anselm CKU Trial Balances, General Ledgers, Tax Returns, Bank Documents<br>21. St. Anselm KXP Trial Balances, General Ledgers, Tax Returns, Bank Documents<br>22. Standard Steam Bank Documents<br><br>**Cook Response:**<br><br>I am unsure as to why Mr. Shuster was not provided these documents by his client. Of particular interest is the fact that he was not provided with |

This schedule is for your use solely in connection with the above referenced matter, and may not be used for any other purpose.

Page 11 of 12

SEC v. St. Anselm, et al.                              Schedule 3 - Rebuttal

| Paragraph Reference Number | Comments and Findings |
|---|---|
| ¶29 (Should refer to Exhibit B, marked as ¶38 in Appendix 4 to Mr. Shuster's report ) *(continued)* | *Cook Response (continued):* <br><br> the bank statements for the account ending 2986, which formed the basis for my report. Mr. Shuster did not analyze the bank statements in his evaluation of my report, nor did he appear to have performed bank reconciliations. Without performing these procedures, Mr. Shuster has not shown that the general ledger reflects the activity in the bank account. As a result, Mr. Shuster cannot say whether or not the activity shown in the general ledger reflects cash activity, and therefore his analysis cannot be said to be an analysis of the cash activity of St. Anselm. Therefore, I believe that Mr. Shuster's analysis is incomplete and his opinions do not offer any additional information from an accounting standpoint on the opinions contained in my report. |

This schedule is for your use solely in connection with the above referenced matter, and may not be used for any other purpose.

Schedule 4 - Rebuttal

SEC v. St. Anselm Exploration Co. et al.
*St. Anselm Bank Account Ending 2986*
Sources of Funds

|  | | 2007 | 2008 | 2009 | 9/2010 | Total | |
|---|---|---|---|---|---|---|---|
| Promissory Notes | Sch 7 | $ 14,206,743.47 | $ 16,403,306.63 | $ 15,471,028.71 | $ 9,141,834.93 | $ 55,222,913.74 | 64.1% |
| Sale of Assets/Ownership Interest | Sch 8 | 2,066,719.86 | 11,100,000.00 | 8,350,000.00 | 2,236,569.74 | 23,753,289.60 | 27.6% |
| Partnerships | Sch 9 | 729,339.08 | 910,245.00 | 1,663,080.43 | 1,299,565.78 | 4,602,230.29 | 5.3% |
| Oil & Gas Revenues | Sch 10 | 102,466.27 | 166,723.14 | 106,772.22 | 313,181.41 | 689,143.04 | 0.8% |
| Misc Loan | Sch 11 | 141,594.18 | - | - | - | 141,594.18 | 0.2% |
| Net Sweep[1] | Sch 12 | - | - | 596,049.78 | 27.91 | 596,077.69 | 0.7% |
| Reimbursement | Sch 13 | 32,739.37 | 5,277.78 | - | - | 32,739.37 | 0.0% |
| Misc Investor Transactions | Sch 14 | - | - | 24,596.22 | - | 29,874.00 | 0.0% |
| Net Deposits from Other Partners/Affiliates[2] | Sch 15 | - | - | 396,435.94 | 284,638.54 | 396,435.94 | 0.5% |
| Other/Unknown | Sch 20 | 294,436.57 | 130,933.15 | 22,506.21 | - | 732,514.47 | 0.8% |
| | | $ 17,574,038.80 | $ 28,716,485.70 | $ 26,630,469.51 | $ 13,275,818.31 | $ 86,196,812.32 | |

**Per Original Report**

|  | 2007 | 2008 | 2009 | 9/2010 | Total |
|---|---|---|---|---|---|
| Promissory Notes | $ 14,206,743.47 | $ 16,403,306.63 | $ 15,471,028.71 | $ 9,141,834.93 | $ 55,222,913.74 |
| Sale of Assets/Ownership Interest | 2,066,719.86 | 11,100,000.00 | 8,350,000.00 | 2,236,569.74 | 23,753,289.60 |
| Partnerships | 729,339.08 | 910,245.00 | 1,663,080.43 | 1,299,565.78 | 4,602,230.29 |
| Oil & Gas Revenues | 102,466.27 | 166,723.14 | 106,772.22 | 313,181.41 | 689,143.04 |
| Misc Loan | 141,594.18 | 280,000.00 | 100,000.00 | - | 521,594.18 |
| Net Sweep[1] | - | - | 596,049.78 | 27.91 | 596,077.69 |
| Reimbursement | 32,739.37 | 5,277.78 | - | - | 32,739.37 |
| Misc Investor Transactions | - | - | 24,596.22 | - | 29,874.00 |
| Net Deposits from Other Partners/Affiliates[2] | - | - | 396,435.94 | 284,638.54 | 396,435.94 |
| Other/Unknown | 294,436.57 | 130,933.15 | 22,506.21 | - | 732,514.47 |
| | $ 17,574,038.80 | $ 28,996,485.70 | $ 26,730,469.51 | $ 13,275,818.31 | $ 86,576,812.32 |

**Change**

|  | 2007 | 2008 | 2009 | 9/2010 | Total |
|---|---|---|---|---|---|
| Promissory Notes | $ - | $ - | $ - | $ - | $ - |
| Sale of Assets/Ownership Interest | - | - | - | - | - |
| Partnerships | - | - | - | - | - |
| Oil & Gas Revenues | - | - | - | - | - |
| Misc Loan | - | (280,000.00) | (100,000.00) | - | (380,000.00) |
| Net Sweep[1] | - | - | - | - | - |
| Reimbursement | - | - | - | - | - |
| Misc Investor Transactions | - | - | - | - | - |
| Net Deposits from Other Partners/Affiliates[2] | - | - | - | - | - |
| Other/Unknown | - | - | - | - | - |
| | $ - | $ (280,000.00) | $ (100,000.00) | $ - | $ (380,000.00) |

[1] Net incoming Euro sweeps over outgoing Euro sweeps.
[2] Including Ekind, Matthews, Unruh and Hat Creek.

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Patten, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.
*St. Anselm Bank Account Ending 2986*
Uses of Funds

Schedule 5 - Rebuttal

|  |  | 2007 | 2008 | 2009 | 9/2010 | Total |  |
|---|---|---|---|---|---|---|---|
| Promissory Notes | Sch 16 | $ 5,266,055.55 | $ 9,880,179.38 | $ 15,335,887.53 | $ 9,351,141.40 | $ 39,833,263.86 | 46.1% |
| Net Distributions to Wells/Palmer | Sch 17 | 4,492,528.59 | 8,896,124.85 | 1,742,278.56 | 1,045,064.37 | 16,175,996.37 | 18.7% |
| Partnerships | Sch 18 | 3,586,000.00 | 4,413,000.00 | 7,721,157.50 | 259,147.50 | 15,979,305.00 | 18.5% |
| Net Distributions to Other Partners/Affiliates[1] | Sch 15 | 164,608.22 | 3,392,952.19 | - | 78,273.34 | 3,635,833.75 | 4.2% |
| Net Transfers to Payroll Account | Sch 19 | 776,100.00 | 1,066,500.00 | 652,800.00 | 137,000.00 | 2,632,400.00 | 3.0% |
| Net Sweep[2] | Sch 12 | 171,733.26 | 300,358.63 | - | - | 472,091.89 | 0.5% |
| Other (Including operating expenses) | Sch 21 | 3,221,090.86 | 809,655.75 | 1,166,246.73 | 2,459,517.57 | 7,656,510.91 | 8.9% |
|  |  | $ 17,678,116.48 | $ 28,758,770.80 | $ 26,618,370.32 | $ 13,330,144.18 | $ 86,385,401.78 |  |
| **Per Original Report** |  |  |  |  |  |  |  |
| Promissory Notes[1] |  | $ 5,441,055.55 | $ 9,880,179.38 | $ 15,335,887.53 | $ 9,351,141.40 | $ 40,008,263.86 |  |
| Net Distributions to Wells/Palmer |  | 4,396,971.27 | 8,844,124.85 | 1,792,018.68 | 1,045,064.37 | 16,078,179.17 |  |
| Partnerships |  | 3,580,000.00 | 4,413,000.00 | 7,721,157.50 | 259,147.50 | 15,973,305.00 |  |
| Net Distributions to Other Partners/Affiliates[1] |  | 164,608.22 | 3,392,952.19 | - | 78,273.34 | 3,635,833.75 |  |
| Net Transfers to Payroll Account |  | 776,100.00 | 1,066,500.00 | 652,800.00 | 137,000.00 | 2,632,400.00 |  |
| Net Sweep[2] |  | 171,734.26 | 300,358.63 | - | - | 472,092.89 |  |
| Other (Including operating expenses)[4] |  | 3,147,647.18 | 1,141,655.75 | 1,216,506.61 | 2,459,517.57 | 7,965,327.11 |  |
|  |  | $ 17,678,116.48 | $ 29,038,770.80 | $ 26,718,370.32 | $ 13,330,144.18 | $ 86,765,401.78 |  |
| **Change** |  |  |  |  |  |  |  |
| Promissory Notes[1] |  | $ (175,000.00) | $ - | $ - | $ - | $ (175,000.00) |  |
| Net Distributions to Wells/Palmer |  | 95,557.32 | 52,000.00 | (49,740.12) | - | 97,817.20 |  |
| Partnerships |  | 6,000.00 | - | - | - | 6,000.00 |  |
| Net Distributions to Other Partners/Affiliates[1] |  | - | - | - | - | - |  |
| Net Transfers to Payroll Account |  | - | - | - | - | - |  |
| Net Sweep[2] |  | (1.00) | - | - | - | (1.00) |  |
| Other (Including operating expenses) |  | 73,443.68 | (332,000.00) | (50,259.88) | - | (308,816.20) |  |
|  |  | $ - | $ (280,000.00) | $ (100,000.00) | $ - | $ (380,000.00) |  |

[1] Including Etkind, Mathews, Unruh and Hat Creek.

[2] Net outgoing Euro sweeps over incoming Euro sweeps.

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Patten, MacPhee & Associates, Inc.

Schedule 6 - Rebuttal

**SEC v. St. Anselm Exploration Co., et al.**
**St. Anselm Bank Account Ending 2986**
**Analysis of Sources and Uses of Funds**

Sources of Funds Used to Pay Money Out (Sources):

| | Promissory Notes | Sale of Assets/Ownership Interest | Partnerships | Oil & Gas Revenues | Misc Loan | Net Sweep | Reimbursement | Misc Investor Transactions | Net Deposits from Other Partners/Affiliates | Other/Unknown | Total Money Received (Sources) | Total Money Paid Out (Uses) | Excess Deposited In/(Difference Paid From) Cash on Hand |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2007** | | | | | | | | | | | | | |
| *Money Paid Out (Used):* | | | | | | | | | | | | | |
| Other (Including operating expenses) | 3,221,090.86 | | | | | | | | | | 3,221,090.86 | (3,221,090.86) | |
| Net Sweep | 171,733.26 | | | | | | | | | | 171,733.26 | (171,733.26) | |
| Net Transfers to Payroll Account | 776,100.00 | | | | | | | | | | 776,100.00 | (776,100.00) | |
| Net Distributions to Other Partners/Affiliates | 164,608.22 | | | | | | | | | | 164,608.22 | (164,608.22) | |
| Partnerships | 3,586,000.00 | | | | | | | | | | 3,586,000.00 | (3,586,000.00) | |
| Net Distributions to Wells/Palmer | 4,492,528.59 | | | | | | | | | | 4,492,528.59 | (4,492,528.59) | |
| Promissory Notes | 1,794,682.54 | 2,066,719.86 | 729,339.08 | 102,466.27 | 141,594.18 | | 32,739.37 | | | 294,436.57 | 5,161,977.87 | (5,266,055.55) | |
| Total | 14,206,743.47 | 2,066,719.86 | 729,339.08 | 102,466.27 | 141,594.18 | | 32,739.37 | | | 294,436.57 | 17,574,038.80 | (17,678,116.48) | (104,077.68) |
| **2008** | | | | | | | | | | | | | |
| *Money Paid Out (Used):* | | | | | | | | | | | | | |
| Other (Including operating expenses) | 809,655.75 | | | | | | | | | | 809,655.75 | (809,655.71) | |
| Net Sweep | 300,358.63 | | | | | | | | | | 300,358.63 | (300,358.63) | |
| Net Transfers to Payroll Account | 1,066,500.00 | | | | | | | | | | 1,066,500.00 | (1,066,500.00) | |
| Net Distributions to Other Partners/Affiliates | 3,392,952.19 | | | | | | | | | | 3,392,952.19 | (3,392,952.19) | |
| Partnerships | 4,413,000.00 | | | | | | | | | | 4,413,000.00 | (4,413,000.00) | |
| Net Distributions to Wells/Palmer | 6,420,840.06 | 2,475,284.79 | | | | | | | | | 8,896,124.85 | (8,896,124.85) | |
| Promissory Notes | | 8,624,715.21 | 910,245.00 | 166,723.14 | | | | 5,277.78 | | 130,933.15 | 9,837,894.28 | (9,880,179.38) | |
| Total | 16,403,306.63 | 11,100,000.00 | 910,245.00 | 166,723.14 | | | | 5,277.78 | | 130,933.15 | 28,716,485.70 | (28,758,770.80) | (42,285.10) |
| **2009** | | | | | | | | | | | | | |
| *Money Paid Out (Used):* | | | | | | | | | | | | | |
| Other (Including operating expenses) | 1,166,246.73 | | | | | | | | | | 1,166,246.73 | (1,166,246.73) | |
| Net Sweep | | | | | | | | | | | | | |
| Net Transfers to Payroll Account | 652,800.00 | | | | | | | | | | 652,800.00 | (652,800.00) | |
| Net Distributions to Other Partners/Affiliates | 7,721,157.50 | | | | | | | | | | 7,721,157.50 | (7,721,157.50) | |
| Net Distributions to Wells/Palmer | 1,742,278.56 | | | | | | | | | | 1,742,278.56 | (1,742,278.56) | |
| Promissory Notes | 4,188,545.92 | 8,350,000.00 | 1,663,080.43 | 106,772.22 | | 596,049.78 | | 24,596.22 | 396,435.94 | 10,407.02 | 15,335,887.53 | (15,335,887.53) | |
| Excess Received over Money Paid Out | | | | | | | | | | 12,099.19 | 12,099.19 | | |
| Total | 15,471,028.71 | 8,350,000.00 | 1,663,080.43 | 106,772.22 | | 596,049.78 | | 24,596.22 | 396,435.94 | 22,506.21 | 26,630,469.51 | (26,618,370.32) | 12,099.19 |

This schedule is for use in connection with the above-referenced matter, and may not be used for any other purpose.

Pulme, MacPhee & Associates, Inc

Schedule 6 - Rebuttal

SEC v. St. Anselm Exploration Co., et al.
St. Anselm Bank Account Ending 2886
Analysis of Sources and Uses of Funds

**Sources of Funds Used to Pay Money Out (Sources):**

| | Promissory Notes | Sale of Assets/ Ownership Interest | Partnerships | Oil & Gas Revenues | Misc Loan | Net Sweep | Reimbursement | Misc Investor Transactions | Net Deposits from Other Partners/ Affiliates | Other/Unknown | Total Money Received (Sources) | Total Money Paid Out (Uses) | Excess Deposited In/(Difference Paid From) Cash on Hand |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2010** | | | | | | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | | | | | | |
| Other (including operating expenses) | $ 2,459,517.57 | | | | | | | | | | $ 2,459,517.57 | $ (2,459,517.57) | |
| Net Sweep | 137,000.00 | | | | | | | | | | 137,000.00 | (137,000.00) | |
| Net Transfers to Payroll Account | 78,273.34 | | | | | | | | | | 78,273.34 | (78,273.34) | |
| Net Distributions to Other Partners/Affiliates | 259,147.50 | | | | | | | | | | 259,147.50 | (259,147.50) | |
| Partnerships | 1,045,064.37 | | | | | | | | | | 1,045,064.37 | (1,045,064.37) | |
| Promissory Notes | 5,102,832.15 | 2,236,569.74 | 1,299,565.78 | 313,181.41 | | 27.91 | | | | 284,638.54 | 9,276,215.53 | (9,276,215.53) | |
| Total | $ 9,141,834.93 | $ 2,236,569.74 | $ 1,299,565.78 | $ 313,181.41 | $ - | $ 27.91 | $ - | $ - | $ - | $ 284,638.54 | $ 13,275,818.31 | $ (13,280,144.18) | $ (4,325.87) |
| **Total** | | | | | | | | | | | | | |
| **Money Paid Out (Uses):** | | | | | | | | | | | | | |
| Other (including operating expenses) | $ 7,656,510.91 | | | | | | | | | | $ 7,656,510.91 | $ (7,656,510.91) | |
| Net Sweep | 472,091.89 | | | | | | | | | | 472,091.89 | (472,091.89) | |
| Net Transfers to Payroll Account | 2,632,400.00 | | | | | | | | | | 2,632,400.00 | (2,632,400.00) | |
| Net Distributions to Other Partners/Affiliates | 3,695,833.75 | | | | | | | | | | 3,695,833.75 | (3,695,833.75) | |
| Partnerships | 15,979,365.00 | | | | | | | | | | 15,979,365.00 | (15,979,365.00) | |
| Net Distributions to Wells/Palmer | 13,700,711.58 | 2,475,284.79 | 4,602,230.29 | 689,143.04 | 141,594.18 | 596,077.69 | 32,739.37 | 29,874.00 | 396,435.94 | 720,415.28 | 16,175,996.37 | (16,175,996.37) | |
| Promissory Notes | 11,146,060.61 | 21,278,004.81 | | | | | | | | | 39,632,375.21 | (39,833,263.86) | |
| Excess Received over Money Paid Out | | | | | | | | | | 12,099.19 | 12,099.19 | | |
| Total | $ 55,222,913.74 | $ 23,753,289.60 | $ 4,602,230.29 | $ 689,143.04 | $ 141,594.18 | $ 596,077.69 | $ 32,739.37 | $ 29,874.00 | $ 396,435.94 | $ 732,514.47 | $ 86,196,812.32 | $ (86,585,401.78) | $ (388,589.46) |

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Putnam, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**

Analysis of Proceeds from Promissory Notes

Schedule 7 - Rebuttal

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 1/9/2007 | 2007 | Deposit | Jerry Davis PN 90 Day 20% | 125,000.00 |
| 1/11/2007 | 2007 | Deposit | Pazand, Steven | 50,000.00 |
| 1/16/2007 | 2007 | Deposit | Etkind, Harold and Florence | 100,000.00 |
| 1/17/2007 | 2007 | Deposit | Zia Joe Ben Page PN 8% | 50,000.00 |
| 1/25/2007 | 2007 | Deposit | Fraser, Malcolm | 10,000.00 |
| 2/1/2007 | 2007 | Deposit | Tom Yarr PN 16% | 100,000.00 |
| 2/6/2007 | 2007 | Deposit | Tolley, G.D. or Martha J. | 75,000.00 |
| 2/6/2007 | 2007 | Deposit | Basel, Robert and Nancy | 100,000.00 |
| 2/9/2007 | 2007 | Deposit | Fraser, Malcolm V. | 10,000.00 |
| 2/9/2007 | 2007 | Deposit | Betty Bullock Trust PN 16% | 50,000.00 |
| 2/9/2007 | 2007 | Deposit | Jules Appelman PN 8% | 75,000.00 |
| 2/14/2007 | 2007 | Deposit | Morteza Jafari PN 8% | 100,000.00 |
| 2/16/2007 | 2007 | Deposit | Behar, Marcel N. and Shirley S. | 50,000.00 |
| 2/16/2007 | 2007 | Deposit | Behar, Shirley | 50,000.00 |
| 2/20/2007 | 2007 | Deposit | J Edward Hollington PN 16% | 25,000.00 |
| 2/21/2007 | 2007 | Deposit | Cunningham, Michelle | 40,000.00 |
| 2/23/2007 | 2007 | Deposit | Michael Menke PN 16% | 250,000.00 |
| 2/23/2007 | 2007 | Deposit | Hilliard-White Realty, Inc. | 50,000.00 |
| 2/23/2007 | 2007 | Deposit | Trust Wiltse Gas, LLC | 75,000.00 |
| 2/23/2007 | 2007 | Deposit | Plaman, Michael | 485,000.00 |
| 2/27/2007 | 2007 | Deposit | Frank Spring PN 8% | 30,000.00 |
| 2/27/2007 | 2007 | Deposit | SSB Bittenbender PN 8% | 10,000.00 |
| 2/27/2007 | 2007 | Deposit | Malcolm Fraser PN 16% | 10,000.00 |
| 2/27/2007 | 2007 | Deposit | Calvin Hyer PN 16% | 62,000.00 |
| 3/2/2007 | 2007 | Deposit | Lee Bittenbender PN 8% | 70,000.00 |
| 3/5/2007 | 2007 | Deposit | Albert Zeni PN 20% 90 Day | 175,000.00 |
| 3/5/2007 | 2007 | Incoming Wire | Mark Jaffe PN 19% | 350,000.00 |
| 3/13/2007 | 2007 | Deposit | Diamond Trust 16% PN | 10,000.00 |
| 3/15/2007 | 2007 | Deposit | Zia Michael Menke PN 16% | 50,000.00 |
| 3/16/2007 | 2007 | Deposit | Frank Luchini PN 16% | 100,000.00 |
| 3/21/2007 | 2007 | Deposit | Marc Behar 90 Day 20% PN | 100,000.00 |
| 3/23/2007 | 2007 | Deposit | Bevacqua PN 16% | 50,000.00 |
| 3/23/2007 | 2007 | Deposit | Don Hedges PN 8% | 110,000.00 |
| 3/27/2007 | 2007 | Deposit | Marc Behar 90 Day 20% Note | 200,000.00 |
| 3/30/2007 | 2007 | Deposit | SSB Bittenbender 8% PN | 60,000.00 |
| 4/6/2007 | 2007 | Deposit | Richard Salem PN 16% | 50,000.00 |
| 4/10/2007 | 2007 | Deposit | Zia Tom Yarr 16% | 13,000.00 |
| 4/12/2007 | 2007 | Deposit | Oscar Yarr PN 16% | 13,000.00 |
| 4/13/2007 | 2007 | Deposit | Tolley Family Trust PN 16% | 50,000.00 |
| 4/17/2007 | 2007 | Deposit | Zia John McGerigle PN 8% | 20,000.00 |
| 5/1/2007 | 2007 | Deposit | Ray Frappier PN 19% | 100,000.00 |
| 5/2/2007 | 2007 | Incoming Wire | Behar, M. and Behar, S. | 60,000.00 |
| 5/4/2007 | 2007 | Deposit | Ronald Frank PN 16% | 40,000.00 |
| 5/7/2007 | 2007 | Deposit | Steven Pazand PN 16% | 50,000.00 |
| 5/10/2007 | 2007 | Deposit | James Shultz 90 Day 20% PN | 50,000.00 |
| 5/16/2007 | 2007 | Deposit | Roger Murrill PN 20% 90 Day | 100,000.00 |
| 5/16/2007 | 2007 | Deposit | Ilah Jones 8% PN | 10,000.00 |
| 5/21/2007 | 2007 | Deposit | Marc Behar PN 90 Day 20% | 50,000.00 |
| 5/30/2007 | 2007 | Deposit | Zia Tanya Leonard PN 8% | 15,000.00 |
| 5/30/2007 | 2007 | Deposit | Double Star LLC PN 16% | 200,000.00 |
| 5/31/2007 | 2007 | Deposit | Malcolm Fraser PN 16% | 10,000.00 |
| 5/31/2007 | 2007 | Deposit | Hattig, Joshua and Tania | 50,000.00 |
| 6/4/2007 | 2007 | Deposit | Shirley Behar PN 90 Day 20% | 60,000.00 |
| 6/5/2007 | 2007 | Deposit | Albert Zeni PN 20% 90 Day | 50,000.00 |
| 6/6/2007 | 2007 | Deposit | David Levick PN 16% | 10,000.00 |
| 6/6/2007 | 2007 | Deposit | Zia Joe Ben Page PN 8% | 27,000.00 |
| 6/6/2007 | 2007 | Deposit | Zia Linda Page PN 8% | 17,000.00 |
| 6/14/2007 | 2007 | Deposit | Guarantee Flores IRA PN 20% | 190,685.98 |

This schedule is for your use solely in connection with
the above-referenced matter, and may not be used
for any other purpose.

Patten, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**

Schedule 7 - Rebuttal

**Analysis of Proceeds from Promissory Notes**

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 6/18/2007 | 2007 | Deposit | Cole Riley 8% PN | 50,000.00 |
| 6/18/2007 | 2007 | Incoming Wire | Naess, Robert | 300,000.00 |
| 6/19/2007 | 2007 | Deposit | Flores Family Trust PN 20% | 365,000.00 |
| 6/25/2007 | 2007 | Deposit | Zia Marc Behar 90 Day 20% PN | 100,000.00 |
| 6/26/2007 | 2007 | Incoming Wire | Hausman, Richard | 25,000.00 |
| 6/27/2007 | 2007 | Deposit | Jeff Salsman 30 Day 30% Funds | 100,000.00 |
| 6/27/2007 | 2007 | Deposit | Morteza Jafari 30 Day 30% Funds | 150,000.00 |
| 6/27/2007 | 2007 | Deposit | Morteza Jafari 30 Day 30% Funds | 100,000.00 |
| 6/28/2007 | 2007 | Deposit | Jules Appelman 30 Day 30% Funds | 50,000.00 |
| 6/28/2007 | 2007 | Deposit | Zia Charles Brannen PN 8% | 30,000.00 |
| 7/5/2007 | 2007 | Deposit | Stueber, John | 100,000.00 |
| 7/12/2007 | 2007 | Incoming Wire | Jaffe, Mark R. | 100,000.00 |
| 7/13/2007 | 2007 | Deposit | Frank Padilla PN 16% | 100,000.00 |
| 7/17/2007 | 2007 | Deposit | Robert Basel PN 16% | 250,000.00 |
| 7/20/2007 | 2007 | Deposit | Menke, Michael | 200,000.00 |
| 7/25/2007 | 2007 | Deposit | Equity Menke PN 20% 90 day | 50,000.00 |
| 7/25/2007 | 2007 | Incoming Wire | TD Ameritrade Jaffe PN 20% | 403,072.05 |
| 7/30/2007 | 2007 | Deposit | Morteza Jafari PN 90 Day 20% | 150,000.00 |
| 7/30/2007 | 2007 | Deposit | Mostafa Jafari PN 90 Day 20% | 100,000.00 |
| 8/1/2007 | 2007 | Deposit | Etkind, Harold and Florence | 110,000.00 |
| 8/1/2007 | 2007 | Deposit | Etkind, Harold and Florence | 90,000.00 |
| 8/1/2007 | 2007 | Deposit | Bittenbender, SSB | 113,000.00 |
| 8/6/2007 | 2007 | Deposit | Bittenbender, SSB | 197,244.15 |
| 8/7/2007 | 2007 | Deposit | Appelman, Jules F. | 75,000.00 |
| 8/8/2007 | 2007 | Deposit | Malcolm Fraser PN 16% | 10,000.00 |
| 8/8/2007 | 2007 | Deposit | Steven Pazand PN 20% 90 day | 60,000.00 |
| 8/8/2007 | 2007 | Deposit | Zia Michael Plaman Addl/$650K | 28,000.00 |
| 8/14/2007 | 2007 | Deposit | Joseph Stein PN 16% | 25,000.00 |
| 8/14/2007 | 2007 | Deposit | Mark Stein PN 16% | 100,000.00 |
| 8/21/2007 | 2007 | Incoming Wire | Pang, Sze-Yuen | 300,000.00 |
| 8/27/2007 | 2007 | Deposit | Levick, David | 10,000.00 |
| 8/28/2007 | 2007 | Deposit | Jeff Salsman PN 20% 90 Day | 100,000.00 |
| 8/29/2007 | 2007 | Deposit | Zia Plaman $650K PN 20% | 137,000.00 |
| 9/6/2007 | 2007 | Deposit | Fraser, Malcolm | 10,000.00 |
| 9/6/2007 | 2007 | Deposit | TD Ameritrade Zakov PN 16% | 200,000.00 |
| 9/7/2007 | 2007 | Deposit | Hilliard White Realty PN 8% | 30,000.00 |
| 9/11/2007 | 2007 | Deposit | Spring, Frank | 20,000.00 |
| 9/11/2007 | 2007 | Deposit | Zia Michael Plaman PN 20% | 150,000.00 |
| 9/12/2007 | 2007 | Deposit | Frank Luchini PN 16% | 50,000.00 |
| 9/18/2007 | 2007 | Deposit | Tom Stephens PN 20% | 150,000.00 |
| 9/20/2007 | 2007 | Deposit | Bittenbender PN 20% 90 Day | 40,000.00 |
| 9/21/2007 | 2007 | Incoming Wire | Double Star PN 20% 90 Day | 500,000.00 |
| 10/3/2007 | 2007 | Deposit | Bevacqua PN 90 Day 20% | 60,000.00 |
| 10/3/2007 | 2007 | Deposit | Diamond Trust PN 90 Day 20% | 100,000.00 |
| 10/5/2007 | 2007 | Deposit | Bryan, Robert and Marlene (loan-S. Etkind) | 100,000.00 |
| 10/5/2007 | 2007 | Deposit | Webb, Helga | 10,000.00 |
| 10/9/2007 | 2007 | Deposit | Richard Salem PN 90 Day 20% | 50,000.00 |
| 10/11/2007 | 2007 | Deposit | Pete/Sue Conley PN 90 Day 20% | 50,000.00 |
| 10/26/2007 | 2007 | Deposit | Malcolm Fraser PN 16% | 10,000.00 |
| 10/29/2007 | 2007 | Incoming Wire | Menke, Michael | 30,000.00 |
| 10/30/2007 | 2007 | Deposit | Hilliard White Realty PN 8% | 40,000.00 |
| 10/31/2007 | 2007 | Incoming Wire | Menke, Michael | 30,000.00 |
| 11/1/2007 | 2007 | Deposit | Appelman 45 Day 36% Loan | 100,000.00 |
| 11/1/2007 | 2007 | Deposit | Zia Larry Etkind 8% PN | 50,000.00 |
| 11/1/2007 | 2007 | Deposit | Zia Marc Behar 90 Day 20% PN | 100,000.00 |
| 11/2/2007 | 2007 | Deposit | Reed, John Benjamin | 50,000.00 |
| 11/2/2007 | 2007 | Deposit | 36% Loan from Jonathan LeVann | 100,000.00 |
| 11/6/2007 | 2007 | Deposit | Marcel Behar 90 Day 20% PN | 60,000.00 |

This schedule is for your use solely in connection with
the above-referenced matter, and may not be used
for any other purpose.

Patten, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**                                      Schedule 7 - Rebuttal
Analysis of Proceeds from Promissory Notes

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 11/6/2007 | 2007 | Deposit | AmerChiropractic 90 Day 20% PN | 100,000.00 |
| 11/6/2007 | 2007 | Deposit | Melvyn Baron 8% PN | 30,000.00 |
| 11/7/2007 | 2007 | Deposit | Tolley Family Trust PN 16% | 50,000.00 |
| 11/9/2007 | 2007 | Deposit | John Reed ROTH IRA PN 8% | 25,341.29 |
| 11/20/2007 | 2007 | Deposit | Levick, David | 15,000.00 |
| 11/20/2007 | 2007 | Deposit | Levick, David | 10,000.00 |
| 11/20/2007 | 2007 | Deposit | Levick, David | 20,000.00 |
| 11/27/2007 | 2007 | Deposit | Dickey, Paul A. And Donna H. | 500,000.00 |
| 12/5/2007 | 2007 | Deposit | Mowery, Daniel | 100,000.00 |
| 12/6/2007 | 2007 | Deposit | M&F Jafari Fam Trust PN 90 Day | 100,000.00 |
| 12/11/2007 | 2007 | Deposit | Dickey, Paul A. And Donna H. | 100,000.00 |
| 12/13/2007 | 2007 | Deposit | Zeni, Albert and Cindy | 40,000.00 |
| 12/13/2007 | 2007 | Deposit | MRC Supplies, LLC | 100,000.00 |
| 12/13/2007 | 2007 | Deposit | Etkind, Steven or Sherry | 200,000.00 |
| 12/13/2007 | 2007 | Deposit | Murrill, Roger and Karen | 100,000.00 |
| 12/13/2007 | 2007 | Deposit | Baca, Dennis and Sharon | 100,000.00 |
| 12/13/2007 | 2007 | Deposit | Jafari, Farzaneh or Mojtaba | 100,000.00 |
| 12/13/2007 | 2007 | Deposit | Hedges, Don | 200,000.00 |
| 12/13/2007 | 2007 | Deposit | Hollington, Edward | 100,000.00 |
| 12/13/2007 | 2007 | Deposit | Jafari, M | 50,000.00 |
| 12/14/2007 | 2007 | Deposit | Terry, Judith | 100,000.00 |
| 12/14/2007 | 2007 | Deposit | Wiltse, Leon and Joyce, Verhulst, Jackee, Wiltse, Jamison | 96,000.00 |
| 12/14/2007 | 2007 | Deposit | Will-See Gas LLC | 4,000.00 |
| 12/14/2007 | 2007 | Deposit | Wiltse, Jeffrey | 160,000.00 |
| 12/14/2007 | 2007 | Deposit | Mickey, Dallas and Verhulst, Jackee | 50,000.00 |
| 12/14/2007 | 2007 | Deposit | Plaman, Jill K. | 86,100.00 |
| 12/14/2007 | 2007 | Deposit | Plaman, Michael | 59,800.00 |
| 12/17/2007 | 2007 | Deposit | Daniel Mowery 20% 3 yr PN | 100,000.00 |
| 12/19/2007 | 2007 | Incoming Wire | Bruce Thompson PN 20% 3 yr | 660,000.00 |
| 12/21/2007 | 2007 | Deposit | Etkind, Steven or Sherry | 35,000.00 |
| 12/28/2007 | 2007 | Deposit | Reed. John Benjamin | 50,000.00 |
| 12/28/2007 | 2007 | Deposit | Appelman. Jules F. | 104,500.00 |
| | **2007 Total** | | | **14,206,743.47** |
| 1/3/2008 | 2008 | Deposit | Judith Terry PN 20% 3 Yr | 100,000.00 |
| 1/3/2008 | 2008 | Deposit | Joe/Linda Page 20% PN 3 Yr | 120,000.00 |
| 1/3/2008 | 2008 | Deposit | Joe/Linda Page 20% PN 90 Day | 100,000.00 |
| 1/14/2008 | 2008 | Deposit | Dickey, Paul & Donna | 150,000.00 |
| 1/14/2008 | 2008 | Deposit | Hilliard-White Realty, Inc. | 30,000.00 |
| 1/14/2008 | 2008 | Deposit | Thomas, John | 100,000.00 |
| 1/23/2008 | 2008 | Deposit | Cunningham, Michelle R. | 20,000.00 |
| 1/23/2008 | 2008 | Deposit | Hedges, Don | 200,000.00 |
| 1/29/2008 | 2008 | Deposit | Etkind, Steve or Sherry | 100,000.00 |
| 1/31/2008 | 2008 | Deposit | Etkind, Steve or Sherry | 500,000.00 |
| 1/31/2008 | 2008 | Deposit | Michael Decanditis PN 90 Day | 500,000.00 |
| 2/1/2008 | 2008 | Incoming Wire | Etkind, Steve | 50,000.00 |
| 2/4/2008 | 2008 | Deposit | Marc Behar PN 20% | 100,000.00 |
| 2/8/2008 | 2008 | Deposit | Meyer, Bernadette M. | 10,000.00 |
| 2/8/2008 | 2008 | Deposit | Meyer, David W. | 40,000.00 |
| 2/8/2008 | 2008 | Deposit | Sid Smith PN 90 Day 20% | 50,000.00 |
| 2/8/2008 | 2008 | Deposit | Smith, Sid | 66,038.00 |
| 2/8/2008 | 2008 | Deposit | Thompson, Marjorie H. | 50,000.00 |
| 2/11/2008 | 2008 | Deposit | LeVann 45 Day 36% Note | 100,000.00 |
| 2/19/2008 | 2008 | Deposit | Matt Cunningham PN 20% | 150,000.00 |
| 2/19/2008 | 2008 | Incoming Wire | Tony Machac 90 Day 20% PN | 100,000.00 |
| 2/19/2008 | 2008 | Deposit | Mostafa Jafari 45 Day 36% Funds | 100,000.00 |
| 2/22/2008 | 2008 | Deposit | Frank Luchini 90 Day 20% PN | 50,000.00 |
| 2/25/2008 | 2008 | Deposit | Diller, Richard L. | 150,000.00 |

This schedule is for your use solely in connection with
the above-referenced matter, and may not be used
for any other purpose.

Patten, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**                                      Schedule 7 - Rebuttal
Analysis of Proceeds from Promissory Notes

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 2/27/2008 | 2008 | Deposit | Jake/Susan Gaultney Trust PN 8% | 50,000.00 |
| 2/29/2008 | 2008 | Deposit | Scott Meyer PN 90 Day 20% | 50,000.00 |
| 2/29/2008 | 2008 | Deposit | Susan/Marvin Machac PN 90 Day | 50,000.00 |
| 3/3/2008 | 2008 | Deposit | Paul Dickey PN 20% 3 Yr | 150,000.00 |
| 3/5/2008 | 2008 | Deposit | Zia Malcolm Fraser PN 16% | 10,000.00 |
| 3/6/2008 | 2008 | Deposit | Frank Spring 401k 90 Day PN | 50,000.00 |
| 3/10/2008 | 2008 | Deposit | Cole Riley PN 90 Day 20% | 50,000.00 |
| 3/10/2008 | 2008 | Deposit | Mohammad Jafari PN 90 Day 20% | 50,000.00 |
| 3/11/2008 | 2008 | Incoming Wire | Levann, Jonathan S. | 62,300.00 |
| 3/18/2008 | 2008 | Deposit | Baca's Trees PN 90 Day 20% | 425,000.00 |
| 3/21/2008 | 2008 | Deposit | Eric/Barbara Wellner PN 90 Day | 100,000.00 |
| 3/31/2008 | 2008 | Deposit | Menke, Michael D. and Malinda L. | 100,000.00 |
| 4/1/2008 | 2008 | Incoming Wire | Murphy, William R. | 860,000.00 |
| 4/3/2008 | 2008 | Incoming Wire | Ross-McCreary, Kathryn | 100,000.00 |
| 4/7/2008 | 2008 | Deposit | Mohammad Jafari PN 90 Day | 25,000.00 |
| 4/7/2008 | 2008 | Deposit | Artos Foster PN 16% | 50,000.00 |
| 4/8/2008 | 2008 | Deposit | Norma Gabbert PN 8/12% | 50,000.00 |
| 4/8/2008 | 2008 | Deposit | Zia Dallas Mickey PN 90 Day | 96,000.00 |
| 4/11/2008 | 2008 | Deposit | TD Ameritrade Eric Wellner PN | 100,000.00 |
| 4/11/2008 | 2008 | Deposit | Bruce Burns PN 90 Day 20% | 150,000.00 |
| 4/16/2008 | 2008 | Deposit | Cunningham, Michelle R. | 10,000.00 |
| 4/16/2008 | 2008 | Incoming Wire | Kight, Richard or Janet | 50,000.00 |
| 4/16/2008 | 2008 | Deposit | Zia James Shultz PN 8% | 12,000.00 |
| 4/16/2008 | 2008 | Deposit | Zia Joe Page PN 8% | 14,500.00 |
| 4/16/2008 | 2008 | Deposit | Zia Linda Page PN 8% | 8,500.00 |
| 4/16/2008 | 2008 | Deposit | Jules Appelman PN 90 Day | 80,000.00 |
| 4/16/2008 | 2008 | Deposit | John Stueber PN 90 Day | 50,000.00 |
| 4/22/2008 | 2008 | Deposit | Tony & Mona Machac PN 90 Day | 50,000.00 |
| 4/23/2008 | 2008 | Deposit | Susan Machac PN 90 20% | 50,000.00 |
| 4/24/2008 | 2008 | Deposit | Hilliard-Whilte Realty, Inc. | 50,000.00 |
| 4/24/2008 | 2008 | Deposit | Marc Behar PN 3 Yr 20% | 200,000.00 |
| 4/30/2008 | 2008 | Incoming Wire | Etkind, Steve | 100,000.00 |
| 5/9/2008 | 2008 | Deposit | TDA Sidney Smith PN 90 Day | 20,314.13 |
| 5/9/2008 | 2008 | Deposit | TDA Eric Wellner PN 90 Day | 100,000.00 |
| 5/12/2008 | 2008 | Deposit | Paul Dickey PN 20% | 100,000.00 |
| 5/13/2008 | 2008 | Deposit | Empyrean Holdings, LLC | 500,000.00 |
| 5/13/2008 | 2008 | Deposit | Fleer, Paul Douglas and Alice C. | 300,000.00 |
| 5/15/2008 | 2008 | Deposit | Tolley Family Trust PN 90 Day | 50,000.00 |
| 5/16/2008 | 2008 | Deposit | Will-See Gas PN 90 Day | 99,000.00 |
| 5/21/2008 | 2008 | Deposit | Jerry/Connie Davis PN 90 Day | 100,000.00 |
| 5/22/2008 | 2008 | Deposit | Jaffe, Mark | 107,425.46 |
| 5/27/2008 | 2008 | Deposit | Matt Cunningham PN 20% | 50,000.00 |
| 5/29/2008 | 2008 | Deposit | Judith/George Blencowe PN 16% | 50,000.00 |
| 6/3/2008 | 2008 | Deposit | Frank Spring Schwab PN 90 Day | 50,000.00 |
| 6/3/2008 | 2008 | Deposit | Wayne DeSantis PN 90 Day | 100,000.00 |
| 6/5/2008 | 2008 | Deposit | Zakov, Nikolov | 300,000.00 |
| 6/6/2008 | 2008 | Deposit | Nancy Eckerson PN 90 Day | 50,000.00 |
| 6/16/2008 | 2008 | Deposit | Cole Riley PN 90 Day | 10,000.00 |
| 6/16/2008 | 2008 | Deposit | Peter Conley PN 90 Day | 50,000.00 |
| 6/18/2008 | 2008 | Deposit | Eric Wellner PN 90 Day | 50,000.00 |
| 6/24/2008 | 2008 | Deposit | Melvyn Baron PN 90 Day | 30,000.00 |
| 6/26/2008 | 2008 | Deposit | Etkind, Harold and Florence | 50,000.00 |
| 6/27/2008 | 2008 | Deposit | Davis, Jerry or Connie | 100,000.00 |
| 6/30/2008 | 2008 | Deposit | Sal Bevacqua PN 90 Day | 10,000.00 |
| 6/30/2008 | 2008 | Deposit | Jeffrey/Victoria Hood PN 90 Day | 80,000.00 |
| 6/30/2008 | 2008 | Deposit | Oscar Yarr PN 20% | 43,000.00 |
| 7/1/2008 | 2008 | Incoming Wire | Murphy, William R. | 1,140,000.00 |
| 7/1/2008 | 2008 | Deposit | Tom Yarr 20% PN | 450,000.00 |

This schedule is for your use solely in connection with
the above-referenced matter, and may not be used
for any other purpose.

Patten, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**

**Analysis of Proceeds from Promissory Notes**

Schedule 7 - Rebuttal

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 7/2/2008 | 2008 | Incoming Wire | Kosinski, Carla O | 75,000.00 |
| 7/2/2008 | 2008 | Deposit | Zia - Tom Yarr PN 20% | 14,000.00 |
| 7/2/2008 | 2008 | Deposit | Michael Faris PN 90 Day | 200,000.00 |
| 7/3/2008 | 2008 | Deposit | Ted Gottlieb PN 90 Day | 25,000.00 |
| 7/3/2008 | 2008 | Deposit | Pam Butler PN 90 Day | 25,000.00 |
| 7/8/2008 | 2008 | Deposit | Tom Yarr 3 Yr 20% PN | 50,000.00 |
| 7/9/2008 | 2008 | Deposit | Mickey, Dallas | 4,000.00 |
| 7/9/2008 | 2008 | Deposit | Reynolds, Deborah | 100,000.00 |
| 7/11/2008 | 2008 | Incoming Wire | Menke, Michael D. | 50,000.00 |
| 7/14/2008 | 2008 | Deposit | Susan Machac PN 90 Day | 10,000.00 |
| 7/14/2008 | 2008 | Deposit | George Herrera PN 90 Day | 40,000.00 |
| 7/14/2008 | 2008 | Deposit | Ray Frappier PN 90 Day | 50,000.00 |
| 7/14/2008 | 2008 | Deposit | TC Risinger PN 90 Day | 50,000.00 |
| 7/17/2008 | 2008 | Incoming Wire | Kight, Richard or Janet | 30,000.00 |
| 7/22/2008 | 2008 | Deposit | Wellner, Eric | 150,000.00 |
| 7/24/2008 | 2008 | Deposit | Zia Michelle Cunningham PN 8% | 10,000.00 |
| 7/24/2008 | 2008 | Deposit | Ann Marie Salem PN 90 Day | 10,000.00 |
| 8/6/2008 | 2008 | Deposit | Luchini, Frank | 2,950.00 |
| 8/6/2008 | 2008 | Deposit | Luchini, Frank | 2,650.00 |
| 8/6/2008 | 2008 | Deposit | Luchini, Frank | 2,500.00 |
| 8/6/2008 | 2008 | Deposit | Luchini, Frank | 1,900.00 |
| 8/6/2008 | 2008 | Deposit | Thompson, Marjorie H. | 42,000.00 |
| 8/7/2008 | 2008 | Deposit | Steven Pazand PN 90 Day | 20,000.00 |
| 8/7/2008 | 2008 | Deposit | Don Hedges 20% PN | 150,000.00 |
| 8/15/2008 | 2008 | Deposit | Housel, Mark | 30,000.00 |
| 8/15/2008 | 2008 | Deposit | TDA Chris Tallas PN 16% | 100,000.00 |
| 8/19/2008 | 2008 | Deposit | Barry Heyman PN 90 Day | 50,000.00 |
| 8/19/2008 | 2008 | Deposit | Etkind Oil, LLC | 175,000.00 |
| 8/21/2008 | 2008 | Incoming Wire | Christine Bartel PN 90 Day | 100,000.00 |
| 8/21/2008 | 2008 | Deposit | Bevacqua, Salvatore | 50,000.00 |
| 8/21/2008 | 2008 | Deposit | Peter Conley PN 90 Day | 100,000.00 |
| 9/2/2008 | 2008 | Deposit | Deriss, Vahid | 20,000.00 |
| 9/2/2008 | 2008 | Deposit | Gawthrop, Wilson R. | 60,000.00 |
| 9/2/2008 | 2008 | Deposit | Lang, Jodi Renee | 22,000.00 |
| 9/2/2008 | 2008 | Deposit | Lang, Jodi Renee | 28,000.00 |
| 9/2/2008 | 2008 | Deposit | Spring, Frank Lewis | 50,000.00 |
| 9/5/2008 | 2008 | Deposit | Fraser, Malcolm V. | 10,000.00 |
| 9/10/2008 | 2008 | Deposit | Tony/Mona Machac PN 90 Day | 50,000.00 |
| 9/11/2008 | 2008 | Deposit | Norma Gabbert PN 90 Day | 20,000.00 |
| 9/23/2008 | 2008 | Deposit | Zia Tanya Leonard PN 90 Day | 30,000.00 |
| 9/23/2008 | 2008 | Deposit | Mostafa Jafari PN 90 Day | 100,000.00 |
| 9/30/2008 | 2008 | Deposit | Hovorka, Francis | 35,000.00 |
| 10/1/2008 | 2008 | Incoming Wire | Jimmie Davis Rev Trust PN 1 Yr | 120,000.00 |
| 10/3/2008 | 2008 | Incoming Wire | Jimmie Davis Rev Trust PN 1 Yr | 130,000.00 |
| 10/7/2008 | 2008 | Deposit | Darin/Elizabeth Dunford PN 1 Yr | 50,000.00 |
| 10/14/2008 | 2008 | Incoming Wire | Kight, Richard T. | 20,000.00 |
| 10/17/2008 | 2008 | Deposit | Lang, Jodi Renee | 50,000.00 |
| 10/17/2008 | 2008 | Deposit | Morse, David | 550,000.00 |
| 10/22/2008 | 2008 | Deposit | John Stueber PN 90 Day | 50,000.00 |
| 10/22/2008 | 2008 | Deposit | Kevin Allen PN 3 Year | 50,000.00 |
| 10/28/2008 | 2008 | Deposit | Luchini, Frank | 2,900.00 |
| 10/28/2008 | 2008 | Deposit | Luchini, Frank | 2,950.00 |
| 10/28/2008 | 2008 | Deposit | Luchini, Frank | 2,950.00 |
| 10/28/2008 | 2008 | Deposit | Luchini, Frank | 1,200.00 |
| 10/28/2008 | 2008 | Deposit | Thompson, Bruce D. | 48,000.00 |
| 10/30/2008 | 2008 | Deposit | Debora Swanson PN 90 Day | 50,000.00 |
| 11/3/2008 | 2008 | Deposit | Kathryn Ross-McCreary PN 1 Yr | 150,000.00 |
| 11/4/2008 | 2008 | Deposit | Stein, Thorn | 10,000.00 |

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Patten, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**    Schedule 7 - Rebuttal
Analysis of Proceeds from Promissory Notes

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 11/4/2008 | 2008 | Deposit | Webb, Harvey Lee | 10,000.00 |
| 11/7/2008 | 2008 | Deposit | Zia - Dallas Mickey PN 1 Yr | 7,000.00 |
| 11/12/2008 | 2008 | Deposit | Clarence Baca PN 90 Day | 500,000.00 |
| 11/14/2008 | 2008 | Deposit | Zia Bryan Huffaker PN 3 Yr | 60,000.00 |
| 11/25/2008 | 2008 | Deposit | Zia Gary Grzelak PN 3 Yr | 18,000.00 |
| 11/26/2008 | 2008 | Incoming wire | Levann, Jonathan S. | 47,500.00 |
| 11/28/2008 | 2008 | Incoming wire | Levann, Jonathan S. | 63,000.00 |
| 12/1/2008 | 2008 | Deposit | Bittenbender, Lee R. | 50,000.00 |
| 12/1/2008 | 2008 | Deposit | Eckerson, Nancy F. | 10,000.00 |
| 12/1/2008 | 2008 | Deposit | Jafari, Morteza | 60,000.00 |
| 12/1/2008 | 2008 | Deposit | Jafari, Mostafa | 50,000.00 |
| 12/1/2008 | 2008 | Incoming Wire | Morse, David | 450,000.00 |
| 12/4/2008 | 2008 | Deposit | Dunford, Darin | 50,000.00 |
| 12/4/2008 | 2008 | Incoming Wire | Levann, Jonathan S. | 28,500.00 |
| 12/5/2008 | 2008 | Incoming Wire | Levann, Jonathan S. | 21,000.00 |
| 12/5/2008 | 2008 | Deposit | Don Hedges PN 20% 3 Year | 30,583.88 |
| 12/8/2008 | 2008 | Incoming Wire | Menke, Michael D. | 100,000.00 |
| 12/9/2008 | 2008 | Deposit | Tom Stephens PN 3 Year | 229,645.16 |
| 12/9/2008 | 2008 | Deposit | Mark Housel PN 3 Year | 400,000.00 |
| 12/9/2008 | 2008 | Deposit | Cole Riley PN 90 Day | 10,000.00 |
| 12/10/2008 | 2008 | Deposit | Daniel Blackwood PN 1 Year | 100,000.00 |
| 12/16/2008 | 2008 | Incoming Wire | Jones, Wesley B. | 200,000.00 |
| 12/17/2008 | 2008 | Deposit | Wilson Gawthrop PN 3 Year | 10,000.00 |
| 12/18/2008 | 2008 | Deposit | Will-See Gas PN 3 Year | 50,000.00 |
| 12/18/2008 | 2008 | Deposit | Bernard Romero PN 3 Year | 150,000.00 |
| 12/22/2008 | 2008 | Deposit | Melvyn Baron PN 20% 1 Year | 10,000.00 |
| 12/30/2008 | 2008 | Incoming wire | Hood, Jeffrey | 20,000.00 |
| 12/31/2008 | 2008 | Deposit | Zia Patricia Jafari PN One Year | 56,000.00 |
| | **2008 Total** | | | **16,403,306.63** |
| 1/6/2009 | 2009 | Deposit | Romero, Bernard | 30,000.00 |
| 1/9/2009 | 2009 | Deposit | Kevin Allen PN 3 Year | 70,000.00 |
| 1/9/2009 | 2009 | Deposit | Zia Charles Brannen PN 3 Year | 47,000.00 |
| 1/14/2009 | 2009 | Deposit | Appelman 36% Loan | 100,000.00 |
| 1/23/2009 | 2009 | Deposit | Ted Gottlieb 36% Loan | 25,000.00 |
| 1/23/2009 | 2009 | Deposit | Pam Butler 36% Loan | 25,000.00 |
| 1/28/2009 | 2009 | Deposit | Swanson, Debora | 50,000.00 |
| 1/29/2009 | 2009 | Deposit | John Reed PN 1 Year | 50,000.00 |
| 1/30/2009 | 2009 | Deposit | Steven Pazand 36% Loan | 70,000.00 |
| 1/30/2009 | 2009 | Incoming Wire | Loan from Susanna Elisabeth Foels | 350,000.00 |
| 2/9/2009 | 2009 | Deposit | Kevin Allen PN 3 Year | 30,000.00 |
| 2/9/2009 | 2009 | Deposit | Wes Jones TCP Inc 36% Loan | 50,000.00 |
| 2/13/2009 | 2009 | Deposit | Zia Malcolm Fraser PN 3 Year | 10,000.00 |
| 2/24/2009 | 2009 | Incoming Wire | William R Murphy | 1,000,000.00 |
| 3/4/2009 | 2009 | Deposit | Lang, Jody - Zia - IRA | 40,000.00 |
| 3/4/2009 | 2009 | Deposit | Lang, Jody - Zia - IRA | 12,000.00 |
| 3/9/2009 | 2009 | Deposit | Melissa Leonardson PN x 2 | 300,000.00 |
| 3/17/2009 | 2009 | Deposit | Paul Dickey PN 1 Year | 100,000.00 |
| 3/30/2009 | 2009 | Deposit | Greg Hahn Consulting, LLC | 50,000.00 |
| 4/1/2009 | 2009 | Deposit | Walt Arnold PN One Year | 60,000.00 |
| 4/1/2009 | 2009 | Deposit | Zia - Theda Witt PN 3 Year | 17,000.00 |
| 4/1/2009 | 2009 | Deposit | Zia - Mark Housel PN 3 Year | 17,000.00 |
| 4/1/2009 | 2009 | Deposit | Rose Anne Hensley PN One Year | 20,000.00 |
| 4/3/2009 | 2009 | Deposit | Lang, Jodi Renee | 20,000.00 |
| 4/3/2009 | 2009 | Deposit | Rivas, Aida Margarita | 150,000.00 |
| 4/3/2009 | 2009 | Deposit | Page, Joe Ben - Zia - IRA | 12,880.00 |
| 4/3/2009 | 2009 | Deposit | Page, Linda S. - Zia - IRA | 9,120.00 |
| 4/3/2009 | 2009 | Deposit | Mickey, Dallas - Zia - IRA | 8,000.00 |

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**

Analysis of Proceeds from Promissory Notes

Schedule 7 - Rebuttal

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 4/8/2009 | 2009 | Deposit | Zia Kevin Allen iRA 3 Year | 60,000.00 |
| 4/14/2009 | 2009 | Deposit | Zia James Shultz PN 3 Year | 16,000.00 |
| 4/14/2009 | 2009 | Deposit | Ilah Jones PN One Year | 10,000.00 |
| 4/14/2009 | 2009 | Deposit | Scott Meyer PN One Year | 90,000.00 |
| 4/15/2009 | 2009 | Deposit | Tabo, Juan - SW - IRA | 19,822.06 |
| 4/17/2009 | 2009 | Deposit | Hensley, Rose Anne - Zia - IRA | 80,000.00 |
| 4/20/2009 | 2009 | Deposit | Gawthrop, Wilson R. and Diane E. Meltzer | 20,000.00 |
| 4/20/2009 | 2009 | Deposit | Robert Gutierrez Investment Co, LLC | 200,000.00 |
| 4/23/2009 | 2009 | Deposit | Zia Steve Moffat PN One Year | 100,000.00 |
| 4/29/2009 | 2009 | Deposit | Riley, Coleman | 4,000.00 |
| 4/29/2009 | 2009 | Deposit | Diller, Richard and Debbie | 50,000.00 |
| 5/1/2009 | 2009 | Deposit | Will-See Gas, LLC | 43,750.00 |
| 5/4/2009 | 2009 | Deposit | Leo Bartolucci PN 3 Year | 50,000.00 |
| 5/4/2009 | 2009 | Deposit | Larry Etkind 36% Loan | 20,000.00 |
| 5/4/2009 | 2009 | Deposit | Leonard Weiss 36% Loan | 20,000.00 |
| 5/5/2009 | 2009 | Deposit | Colvett, Keelen | 110,000.00 |
| 5/7/2009 | 2009 | Deposit | Cunningham 36% Loan | 30,000.00 |
| 5/11/2009 | 2009 | Deposit | Page, Linda S. and Joe B. | 100,000.00 |
| 5/13/2009 | 2009 | Deposit | Joe Page 36% Loan | 100,000.00 |
| 5/15/2009 | 2009 | Deposit | Marcel Behar PN 1 Year | 35,000.00 |
| 5/15/2009 | 2009 | Deposit | Shirley Behar PN 1 Year | 30,000.00 |
| 5/19/2009 | 2009 | Deposit | Salem, Richard and AnnMarie | 50,000.00 |
| 5/22/2009 | 2009 | Deposit | Santiago 36% Loan | 100,000.00 |
| 5/28/2009 | 2009 | Deposit | Levick, David | 10,000.00 |
| 5/28/2009 | 2009 | Deposit | Cohen, Lawrence W. | 400,000.00 |
| 5/29/2009 | 2009 | Deposit | Stephens, Tom | 300,000.00 |
| 5/29/2009 | 2009 | Deposit | Wiltse, Jeffrey - IRA | 97,731.37 |
| 5/29/2009 | 2009 | Deposit | Gambill, Harold | 150,000.00 |
| 5/29/2009 | 2009 | Deposit | Gambill, Harold | 100,000.00 |
| 6/1/2009 | 2009 | Deposit | Oscar Yarr PN 3 Year | 26,000.00 |
| 6/1/2009 | 2009 | Incoming Wire | Heyman, Ellen or Barry | 50,000.00 |
| 6/2/2009 | 2009 | Incoming Wire | Barnett, Dianna - Entrust of Tampa | 100,000.00 |
| 6/5/2009 | 2009 | Deposit | Zia John Bartolotta PN 1 Year | 50,000.00 |
| 6/9/2009 | 2009 | Deposit | Colvett, Keelen and Rebecca | 80,000.00 |
| 6/10/2009 | 2009 | Deposit | Bruce Burns Affinity PN 3 Year | 150,000.00 |
| 6/10/2009 | 2009 | Deposit | Rose Anne Hensley PN 3 Year | 80,000.00 |
| 6/11/2009 | 2009 | Deposit | Steve Bullard PN 3 Year | 60,000.00 |
| 6/12/2009 | 2009 | Deposit | David Levick PN 3 Year | 15,000.00 |
| 6/15/2009 | 2009 | Deposit | Al Zeni 36% Loan | 70,000.00 |
| 6/15/2009 | 2009 | Deposit | Sunwest Keelan Colvett PN 3 Year | 70,000.00 |
| 6/15/2009 | 2009 | Deposit | Sunwest Rose Hensley PN 3 Year | 20,000.00 |
| 6/18/2009 | 2009 | Deposit | Reynolds, Deborah - Zia - IRA | 15,000.00 |
| 6/23/2009 | 2009 | Deposit | Don Hedges 36% Loan | 30,000.00 |
| 6/25/2009 | 2009 | Deposit | Sunwest William Luchini PN 3 Year | 15,000.00 |
| 6/26/2009 | 2009 | Deposit | Cohen, Lawrence W. | 325,000.00 |
| 7/7/2009 | 2009 | Deposit | Jeff Wiltse 45% Loan | 200,000.00 |
| 7/7/2009 | 2009 | Deposit | Zia Malcolm Fraser PN 3 Year | 10,000.00 |
| 7/13/2009 | 2009 | Deposit | Aida Rivas PN 3 Year | 50,000.00 |
| 7/13/2009 | 2009 | Incoming Wire | Naess, Robert E. | 100,000.00 |
| 7/15/2009 | 2009 | Deposit | Zia Michelle Cunningham 36% Loan | 40,000.00 |
| 7/15/2009 | 2009 | Deposit | Sunwest Jay Wiltse 45% Loan | 68,364.50 |
| 7/16/2009 | 2009 | Deposit | Sylvia Berman PN 1 Year | 10,000.00 |
| 7/16/2009 | 2009 | Deposit | Zia Robert Gutierrez PN 3 Year | 28,000.00 |
| 7/16/2009 | 2009 | Deposit | Sunwest Dennis Royer PN 1 Year | 50,000.00 |
| 7/21/2009 | 2009 | Deposit | Jones, Wesley - TD Ameritrade | 20,000.00 |
| 7/22/2009 | 2009 | Deposit | Jody Lang PN 3 Year | 10,000.00 |
| 7/23/2009 | 2009 | Deposit | Yuen, Sze | 500,000.00 |
| 7/28/2009 | 2009 | Deposit | Lang, Jodi | 10,000.00 |

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Patten, MacPhee & Associates, Inc.

SEC v. St. Anselm Exploration Co., et al.

**St. Anselm Bank Account Ending 2986**

**Analysis of Proceeds from Promissory Notes**

Schedule 7 - Rebuttal

| Transaction Date | Year | Transaction Type | Source/ Payee | Deposit |
|---|---|---|---|---|
| 7/28/2009 | 2009 | Deposit | Romero, Bernard | 50,000.00 |
| 7/28/2009 | 2009 | Deposit | St. Clair, Doris | 50,000.00 |
| 7/31/2009 | 2009 | Deposit | Matt Cunningham 36% Loan | 100,000.00 |
| 8/6/2009 | 2009 | Deposit | Cohen, Lawrence W. | 400,000.00 |
| 8/7/2009 | 2009 | Deposit | M&F Jafari Family Trust 36% Loan | 100,000.00 |
| 8/11/2009 | 2009 | Deposit | Sunwest Dennis Royer PN 1 Year | 20,000.00 |
| 8/13/2009 | 2009 | Deposit | Jones, Ilah | 10,000.00 |
| 8/13/2009 | 2009 | Deposit | Jones, Ilah - Sandia Area | 10,000.00 |
| 8/13/2009 | 2009 | Deposit | Cohen, Lawrence W. | 710,000.00 |
| 8/17/2009 | 2009 | Deposit | Bruce Thompson PN 1 Year | 60,000.00 |
| 8/19/2009 | 2009 | Deposit | Morteza, Jafari | 3,440.00 |
| 8/19/2009 | 2009 | Deposit | Zia Thom Stein PN 3 Year | 15,000.00 |
| 8/19/2009 | 2009 | Deposit | Moore, Richard or Barbara | 50,000.00 |
| 8/20/2009 | 2009 | Deposit | Verhalst, Jackie (Mickey, Dallas per GL) | 22,000.00 |
| 8/25/2009 | 2009 | Deposit | Diamond Trust (per GL)/ New Mexico Educators FCU | 10,000.00 |
| 8/26/2009 | 2009 | Incoming Wire | Foels, Susanna | 206,157.50 |
| 8/27/2009 | 2009 | Deposit | Michael Menke PN 1 Year | 200,000.00 |
| 8/27/2009 | 2009 | Deposit | Frank Luchini PN 3 Year | 62,000.00 |
| 8/28/2009 | 2009 | Deposit | Cohen, Lawrence W. | 450,000.00 |
| 9/1/2009 | 2009 | Deposit | Sunwest Stacy Hedges PN 3 Year | 101,067.09 |
| 9/3/2009 | 2009 | Deposit | Sunwest Dawson Hedges PN 3 Year | 22,876.48 |
| 9/3/2009 | 2009 | Deposit | Don Hedges 36% Loan | 100,000.00 |
| 9/4/2009 | 2009 | Deposit | David Levick PN 1 Year | 15,000.00 |
| 9/4/2009 | 2009 | Deposit | John Bordnick PN 1 Year | 50,000.00 |
| 9/4/2009 | 2009 | Incoming Wire | Menke, Michael  IRA | 100,000.00 |
| 9/8/2009 | 2009 | Deposit | Dennis Royer PN 1 Year | 65,000.00 |
| 9/10/2009 | 2009 | Deposit | Dawson Hedges 36% Loan | 75,000.00 |
| 9/10/2009 | 2009 | Deposit | Sunwest Stacy Hedges PN 3 Year | 14,871.72 |
| 9/21/2009 | 2009 | Deposit | Jules Appelman 36% Loan | 30,000.00 |
| 9/21/2009 | 2009 | Deposit | Leonard Weiss 36% Loan | 20,000.00 |
| 9/22/2009 | 2009 | Deposit | Spring, Frank and Martha | 50,000.00 |
| 9/22/2009 | 2009 | Deposit | Edwards, Michelle - SW - IRA | 76,271.00 |
| 9/24/2009 | 2009 | Deposit | Sunwest Paul Edwards PN 3 Year | 264,420.00 |
| 9/24/2009 | 2009 | Deposit | Morteza, Jafari | 36,000.00 |
| 9/25/2009 | 2009 | Deposit | Hood, Victoria and Jeffrey | 70,000.00 |
| 9/25/2009 | 2009 | Deposit | Paul Edwards | 230,000.00 |
| 9/25/2009 | 2009 | Deposit | Paul Edwards | 250,000.00 |
| 9/29/2009 | 2009 | Deposit | Jodi Renee Lang PN 1 Year | 40,000.00 |
| 9/29/2009 | 2009 | Deposit | Jodi Renee Lang PN 3 Year | 50,000.00 |
| 10/1/2009 | 2009 | Deposit | Rivas, Aida Margarita | 50,000.00 |
| 10/1/2009 | 2009 | Deposit | Hedges, Don | 30,000.00 |
| 10/6/2009 | 2009 | Deposit | Melvyn Baron PN 3 Year | 15,000.00 |
| 10/6/2009 | 2009 | Deposit | Melissa Leonardson PN 1 Year | 700,000.00 |
| 10/7/2009 | 2009 | Deposit | Frappier, Ray | 50,000.00 |
| 10/7/2009 | 2009 | Deposit | Page, Joe Ben - Zia - IRA | 10,000.00 |
| 10/13/2009 | 2009 | Deposit | Kevin Allen PN 3 Year | 180,000.00 |
| 10/20/2009 | 2009 | Deposit | Zia Harvey Webb PN 3 Year | 8,000.00 |
| 10/20/2009 | 2009 | Deposit | Zia Helga Webb PN 3 Year | 29,000.00 |
| 10/20/2009 | 2009 | Deposit | Zia Rositta Webb PN 3 Year | 8,000.00 |
| 10/20/2009 | 2009 | Deposit | Sunwest Joe Bambinelli PN | 100,000.00 |
| 10/22/2009 | 2009 | Deposit | Gaultney, Susan T. - SW - IRA | 234,277.32 |
| 10/23/2009 | 2009 | Deposit | Bryan Huffaker 36% Loan | 50,000.00 |
| 10/27/2009 | 2009 | Deposit | Sunwest Ed Smyth PN 3 Year | 84,600.00 |
| 10/28/2009 | 2009 | Deposit | Romero, Bernard | 40,574.25 |
| 10/29/2009 | 2009 | Deposit | Tanya Leonard PN 1 Year | 15,000.00 |
| 10/29/2009 | 2009 | Deposit | Gail Verver PN 3 Year | 50,000.00 |
| 11/2/2009 | 2009 | Deposit | Dickey, Donna - SW | 35,559.44 |
| 11/2/2009 | 2009 | Incoming Wire | Pristine Investments, LLC | 10,000.00 |

This schedule is for your use solely in connection with the above-referenced matter, and may not be used for any other purpose.

Patten, MacPhee & Associates, Inc.